Derek A. Miller[1]
Deputy Attorney General
For:  Jeffrey S. Chiesa
Attorney General of the State of New Jersey
Division of Criminal Justice
Financial and Computer Crimes Bureau
5 Executive Campus
Cherry Hill, New Jersey 08002


SILLS CUMMIS & GROSS P.C.                    **Hearing Date and Time:**
Andrew H. Sherman                            **April 1, 2013 at 1:00 p.m.**
Boris I. Mankovetskiy
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
*Special Counsel to the State of New Jersey*


## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Honorable Michael Kaplan |
| BIRDSALL SERVICES GROUP, INC., *et. al.* | Case No. 13-16743 |
| Debtor. | Chapter 11 |

**OBJECTION OF THE STATE OF NEW JERSEY TO FIRST DAY
RELIEF SOUGHT BY THE DEBTORS HEREIN AND CROSS MOTION
TO DISMISS THESE BANKRUPTCY CASES OR FOR A
DETERMINATION THAT THE CONTINUATION OF THE EFFORTS OF
THE STATE OF NEW JERSEY TO SEIZE ASSETS ARE POLICE
POWERS EXEMPT FROM THE AUTOMATIC STAY**

The State of New Jersey (the "State"), by and through its undersigned special counsel,

objects to the relief (the "First Day Relief") requested by the Application for Expedited

Consideration of First Day Matters filed by Debtor Birdsall Services Group, Inc. *et. al.* (the

"Debtors") and cross-moves to dismiss these cases or, alternatively, for a determination that the

---

[1] pro hac vice admission pending.

efforts of the State to enforce the Order to Seize and Restrain Property (the "Seizure Order") of

the New Jersey Superior Court dated March 26, 2013 are police powers excepted from the

automatic stay of 11 U.S.C. § 362.  In support of the Objection and Cross Motion, the State

respectfully represents as follows:

## PRELIMINARY STATEMENT

The filing of these bankruptcy cases was a misguided effort to circumvent the Seizure

Order and indictment of a Grand Jury to invoke this Court's jurisdiction for cases which have no

place in this Court.  By operation of the Seizure Order, N.J.S.A. § 2C:64-1 and N.J.S.A. § 2C:64-

7, Birdsall Services Group, Inc. was divested of its assets prior to the filing of these cases.  As a

result of the pre-petition divestiture of assets, there are no assets to administer in these cases and

no need for the first day relief sought by the Debtors or the continuation of these cases.

Alternatively, to the extent that this Court finds that there are assets to administer or a basis for

these cases to remain in Chapter 11, then the State requests that this Court determine that its

efforts to enforce the Seizure Order are police powers[2] excepted from the automatic stay by

operation of 11 U.S.C. § 362(b)(4).  The United States Court of Appeals for the Third Circuit,

interpreting N.J.S.A. § 2C:64-1, held that "a civil forfeiture action proceeding is an exception to

the automatic stay unwwwder the "police power" exception of section 362(b)(4)." *In re James*,

940 F.2d. 46 (3d. Cir. 1991). The result here should be no different.

This Court is not an "escape hatch" to enable a debtor to evade the implications of a valid

criminal seizure order.  This is a State Court matter which should remain there and not in this

Court.

---

[2] As set forth below, the State is seeking to enforce its police power relating to numerous statutes, including anti-money laundering and campaign finance laws contained in Title 19 to, *inter alia,*  prevent fraud in public contracts and ensure that publicly filed documents are accurate.

## BACKGROUND

1.      On March 29, 2013 (the "Petition Date"), the Debtors filed with this Court

voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").

2.      Prior to the Petition Date, the Division of Criminal Justice Corruption Bureau

obtained a nine-count state grand jury indictment (the "Indictment") charging Birdsall Services

Group, its CEO and largest shareholder Howard C. Birdsall, and other executives on charges that

they conspired in a scheme to avoid the restrictions of New Jersey's Pay-to-Play Act by

disguising illegal corporate political contributions as personal contributions of employees of the

firm.  A copy of the Indictment is attached hereto as Exhibit A.

3.      Under the scheme, instead of Birdsall Services Group making corporate political

contributions to campaigns and political organizations that would disqualify it from public

contracts awarded by certain government agencies, shareholders and employees of the firm

allegedly made personal political contributions of $300 or less, which are deemed unreportable.

Multiple personal checks were bundled together at BSG and sent to the appropriate campaign or

political organization. It is alleged that the shareholders and employees were then illegally

reimbursed by Birdsall, directly or indirectly, through added bonus payments. The firm falsely

omitted the illegally reimbursed contributions in documents filed with the Election Law

Enforcement Commission (ELEC) and with government agencies that awarded the firm

engineering services contracts.  The scheme allegedly continued for more than six years and

involved hundreds of thousands of dollars in contributions.

4.      On Nov. 30, 2012, Philip Angarone, 40, of Hamilton (Mercer County), the former

marketing director for Birdsall, admitted in court that he took part in the scheme, pleading guilty

before Superior Court Judge Wendel E. Daniels in Ocean County to third-degree tampering with

public records or information and fourth-degree prohibited corporation contributions through

employees.

5.        On Feb. 12, 2013, Eileen Kufahl, 48, of Bradley Beach, a former administrative

assistant and later marketing manager for Birdsall, pleaded guilty before Judge Daniels to a

fourth-degree charge of making prohibited corporation contributions through employees.

6.        As a result of the scheme, the State initiated an *in rem* action to seize and restrain

property by operation of N.J.S.A. § 2C:64-1.

7.        Such an action was commenced in the New Jersey Superior Court, Monmouth

County on or about March 26, 2013.

8.        In support of such application, the State submitted the affidavit of Dennis Quinn,

a detective with the New Jersey State Police (the "Quinn Affidavit").  A copy of the Quinn

Affidavit is attached hereto as Exhibit B.

9.        The Quinn Affidavit provides details of the scheme and asserts that the assets

utilized in the scheme were instrumentalities of the crimes under investigation and/or  represents

proceeds of those crimes.  As a result, the assets were subject to seizure and forfeiture to the

State of New Jersey pursuant to N.J.S.A. § 2C:64-1(a)(2), (3) and (4).

10.        On March 26, 2013, Honorable Lawrence M. Lawson, Assignment Judge of the

New Jersey Superior Court, Law Division, Monmouth County, signed the Seizure Order.  A

copy of the Seizure Order is attached hereto as Exhibit C.  The Seizure Order addresses any and

all of the assets of Birdsall Services Group, Inc.

11.        Subsequent to the entry of the Seizure Order, the State took certain actions to

execute upon such Order, including serving a copy of same on Bank of America and seeking the

return of the monies in any such bank accounts.  In an abundance of caution, at this point in time,

the State is no longer continuing those efforts pending a determination by this Court regarding

the breadth of the automatic stay and the viability of these cases.

12.    In addition to executing upon the Seizure Order, the State has been in discussions

with the Debtor regarding compliance with the Order.

13.    The State and the Debtors discussed a resolution of the monetary aspects of the

Seizure Order such that there could be continuity of business operations and compliance with

State statutes to ensure that no further criminal conduct would continue.  Specifically, the State

requested that an impartial auditor be retained to review the Debtors' books and records to

prevent any future misconduct, including the improper dissipation of assets.

14.    The Debtors rejected the retention of an outside auditing firm and, instead, sought

relief in this Court.  The Debtors' rejection of the retention of an independent auditor has raised

concerns regarding evasion of the Seizure Order by the withdrawal and transfer of assets into

other entities to avoid the consequences of the ongoing criminal and civil proceedings.[3]

## OBJECTION

### The Property Addressed in the First Day Relief is Not Property of the Estate

15.    The State objects to the First Day Relief sought by the Debtors herein because the

Debtors were divested of the assets subject to the seizure order prior to the Petition Date.

16.    Section 541 of the Bankruptcy Code provides that the commencement of a

bankruptcy case creates an estate, to be comprised of "all legal and equitable interests" of the

debtor, "wherever located and by whomever held." 11 U.S.C. § 541(a).

---

[3] Nothing contained herein shall be deemed a waiver of any rights to seek relief under 28 U.S.C. § 959  or to seek
the appointment of an independent fiduciary.

17.     Whether the debtor has a legal or equitable interest in property such that it becomes "property of the estate" under section 541 is determined by applicable state law. *Butner v. United States*, 440 U.S. 48, 54, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979).

18.     The United States Court of Appeals for the Third Circuit has made clear that "unless federal bankruptcy law has specifically   preempted a state law restriction imposed on property of the estate, the trustee's rights in the property are limited to only those rights that the debtor possessed pre-petition. In other words, without explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy." *Integrated Solutions v. Serv. Support Specialties*, 124 F.3d 487, 492-493 (3d Cir. N.J. 1997).

19.     N.J.S.A. § 2C:64-1 describes property which subject is  to forfeiture and confirms that a debtor does not retain any rights in such property:

a. Any interest in the following shall be subject to forfeiture and **no property right shall exist in them:**

(1) Controlled dangerous substances, firearms which are unlawfully possessed, carried, acquired or used, illegally possessed gambling devices, untaxed or otherwise contraband cigarettes or tobacco products, untaxed special fuel, unlawful sound recordings and audiovisual works and items bearing a counterfeit mark. These shall be designated prima facie contraband.

(2) All property which has been, or is intended to be, utilized in furtherance of an unlawful activity, including, but not limited to, conveyances intended to facilitate the perpetration of illegal acts, or buildings or premises maintained for the purpose of committing offenses against the State.

(3) Property which has become or is intended to become an integral part of illegal activity, including, but not limited to, money which is earmarked for use as financing for an illegal gambling enterprise.

(4) Proceeds of illegal activities, including, but not limited to, property or money obtained as a result of the sale of prima facie contraband as defined by subsection a.(1), proceeds of illegal gambling, prostitution, bribery and extortion.

N.J.S.A. § 2C:64-1 (emphasis added)

20.    N.J.S.A. 2C:64-7 is a "relation back" statute which confirms that the vesting of

title in forfeited property occurs at the time the property was used illegally – long before the

commencement of these cases:

> Title to property forfeited under this chapter shall vest in the entity funding the
> prosecuting agency involved at the time the item was utilized illegally, or, in the
> case of proceeds, when received.

N.J. Stat. § 2C:64-7.

21.    The New Jersey Supreme Court has held that N.J.S.A. 2C:64-1, *et al*, are facially

constitutional and apply to owners who use their property for criminal purposes and to those who

knowingly allow others to use their property for such purposes. *State v. 1979 Pontiac Trans Am*,

98 N.J. 474, 488 (N.J. 1985).

22.    In analyzing a bankruptcy estate's interests in assets which were seized under

federal law, the United States District Court for the District of Oregon held:

> At the time of filing for bankruptcy protection, the debtor in this case did not
> possess the equitable right to direct the seized property for the debtor's benefit.
> Although the debtor had some legal interest in the seized property, any such
> interest was defeasible upon conviction. Further, the debtor's possessory rights
> were lost pursuant to the seizure warrant and procedures incident thereto. In
> essence, the debtor held legal title to the seized property in constructive trust,
> whereby its ability to direct the property's distribution was substantially restricted
> by the issuance of the seizure warrant and the government's valid possession of
> the seized property.   The authority to "use, sell, or lease" the seized property,
> therefore, is not includable as property of the estate under 11 U.S.C. §§ 363 or
> 541, and plaintiffs' complaint for the turnover of the seized property is not
> supported by 11 U.S.C. § 542….
>
> After an examination of the bankruptcy and criminal forfeiture codes, it is
> apparent that Congress did not intend to allow debtors in possession to include in

the estate property over which the debtor did not have equitable control at the time of filing the Chapter 11 petition. Although Chapter 11 does not expressly contemplate whether property seized pre-indictment under a criminal forfeiture statute should be included in the bankruptcy estate, it is evident that the debtors in this instance did not have equitable control over such property at the time the Chapter 11 petition was filed and that Congress did not intend such property to be included in a Chapter 11 estate.

*Diversified Fiber Prods. v. United States (In re Thena, Inc.),* 190 B.R. 407, 412-413 (D. Or.

1995)

23.    In following this case, the United State Bankruptcy Court for the Central District

of California held:

While *Thena* is not binding on this Court, it appears to be well reasoned and allows the Court to prevent a potential bankruptcy abuse. Specifically, if the Court were to hold otherwise, entities subject to forfeiture proceedings could "undo" any prepetition seizures by filing bankruptcy and seeking turnover. In addition, unlike the *IRS in Whiting Pools*, which had a lien on the levied property therein, the Government would appear to be left with a fourth priority distribution claim under 11 U.S.C. § 726 (a)(4), and would arguably be worse off than a general unsecured creditor. In sum, holding otherwise could potentially render the federal forfeiture statutes meaningless.

*In re Timiryan*, 2007 Bankr. LEXIS 1627 (Bankr. C.D. Cal. Mar. 26, 2007)(citations omitted)

24.    Similar to the reasoning of *Thena* and *Timryan*, this Court should not render New

Jersey's seizure statutes meaningless.  This Court should hold that either the Debtor has no

interest in the assets subject to the Seizure Order by operation of section 541 of the Bankruptcy

Code and applicable New Jersey law or hold that the Debtor has no right to use, sell lease any

such assets pursuant to section 363 of the Bankruptcy Code.

25.    Under either formulation, there is no basis for the first day relief sought by the

Debtors herein as there is no right to use the assets subject to the Seizure Order.

**The Relief Granted by the Seizure Order is Exempt from the Automatic Stay**

26.     Section 362(b)(4) of the Bankruptcy Code provides in relevant part that: "[t]he

filing of a petition . . . does not operate as a stay . . . of the commencement or continuation of an

action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police

and regulatory power . . .. 11 U.S.C. § 362(b)(4).

27.     The Third Circuit has held that a civil forfeiture proceeding by a state is excepted

from the automatic stay under Section 362(b)(4) as an exercise of the state's police and

regulatory power. *See, James v. Draper (In re James)*, 940 F.2d 46, 49-52 (3d Cir. 1991). This

approach has been applied by other Circuits faced with the same issue. *See, Smith v. Alabama ex

rel. Littrell (In re Smith)*, 176 B.R. 221, 222 (Bankr. N.D. Ala. 1995) (adopting James' view that

forfeiture action involving alleged proceeds of criminal activity comes within the police power

exception set forth in 11 U.S.C. § 362(b)(4) and holding that the automatic stay does not prohibit

the State of Alabama from proceeding in state court with its forfeiture action); *In re Hann*, 2009

U.S. Dist. LEXIS 79201, 5-7 ( E.D. Mich. 2009) (denying the estate's request for a turn over of

property subject to a forfeiture proceeding) .

28.     In *James*, the State of New Jersey obtained a default judgment for forfeiture under

N.J.S.A. 2C:64-1 in state court against the debtor's property as proceeds of illegal activity, even

though the debtor was not charged with any crime. *See, id*. at 46-47. The bankruptcy court

vacated the state court judgment after determining that James' Chapter 7 bankruptcy filing had

triggered the automatic stay under section 362(b) and that the state forfeiture proceedings did not

fall under the "police power" exception to the automatic stay because the state had no legitimate

interest in the funds seized. *Id*. The district court affirmed the bankruptcy court for different

reasons. *Id*. On appeal, the Third Circuit reversed and held that the forfeiture action was within

the "police powers" exception and that it was improper for the bankruptcy and district courts to

collaterally examine the merits of the state court forfeiture proceedings. *Id*. at 47.

29.     In the instant case, the Seizure Order was properly issued by the State Court

pursuant to N.J.S.A. 2C:64-1(a) and (b) in furtherance of the State's enforcement of its anti-

money laundering,  campaign finance, anti-fraud, and pay-to-play laws.  The State's enforcement

of these laws indisputably constitutes an exercise of its police and regulatory powers directed at

prosecuting the alleged criminal actions perpetuated by the Debtors and their insiders, who used

the Debtors' property as an instrumentality of their alleged crimes.

30.     The Debtor's property was also seized because it is the proceeds of criminal

activity; a fact which cannot be sanitized  by the mere filing of a bankruptcy petition.  The Third

Circuit's holding in *James* that a civil forfeiture proceeding under N.J.S.A. 2C:64-1 was

excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4), leaves no doubt that the

Seizure Order issued under in connection with a criminal prosecution under the same statutory

provision and continued enforcement thereof by the State are within the scope of the "police

powers" exemption of the automatic stay.

31.     In *Raymark Industries, Inc. v. Lai*, the Third Circuit reiterated another important

principle established in *James*:

> Once validly entered in a court of competent jurisdiction, a judgment is
> considered valid until overturned or vacated by that court or an appellate court
> with supervisory powers over that court's system. There appears to be only one
> exception to this hard and fast rule of federal-state comity, and  it comes into play
> only when the state proceedings are considered a legal nullity and thus void ab
> initio. A federal bankruptcy court may intervene only when the state proceedings
> are void ab initio; it lacks the power where it simply disagrees with the result
> obtained in an otherwise valid proceeding.

*Raymark Industries, Inc. v. Lai*, 973 F.2d 1125, 1132 (3d Cir. 1992).

32.    Because the Seizure Order is not subject to the automatic stay, the Bankruptcy

Court lacks any power to stay, alter or modify the relief granted therein. *See, Raymark Industries*

at 1132.  In addition, absent the automatic stay, the Rooker-Feldman doctrine also does not allow

the Debtors to seek relief that, if granted, would prevent the State Court from enforcing its own

orders. *See, In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005).

33.    The relief sought by the Debtors is also prohibited by the Anti-Injunction Act,

which provides in relevant part that "a court of the United States may not grant an injunction to

stay proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The Anti Injunction Act is an absolute prohibition against any injunction of any state court

proceedings, unless the injunction falls within one of the three specifically defined exceptions in

the Act.  *See, Vendo Co. v. Lektro-Vend Corp*., 433 U.S. 623, 630, 53 L. Ed. 2d 1009, 97 S. Ct.

2881 (1977).  "The Act's purpose is to forestall the inevitable friction between the state and

courts that ensues from the injunction of state judicial proceedings by a federal court." *Id.* (citing

*Oklahoma Packing Co. v. Oklahoma Gas & Electric Co*., 309 U.S. 4, 9, 84 L. Ed. 537, 60 S. Ct.

215 (1940).   Here, based on the inapplicability of the automatic stay to the relief granted under

the Seizure Order, none of the exceptions to the Anti-Injunction Act is present and the

Bankruptcy Court may not enjoin or stay the relief granted in the Seizure Order.

34.    Therefore, based on the well-established precedent of the Third Circuit, as

adopted in many other jurisdictions, the State's continued enforcement of the Seizure Order and

prosecution of its action against the Debtors is within the "police powers" exception to the

automatic stay.   As such, the Bankruptcy Court may not take any action that would stay, alter or

otherwise modify the Seizure Order because such action would constitute, among other things, a

violation of the Rooker-Feldman doctrine and the Anti-Injunction Act.   Any relief that the

Debtors wish to seek with respect to the Seizure Order must be requested from the State Court

and not through its improper appellate process under the auspices of this Court.

**Objection to Cash Collateral Motion**

35.     Consistent with the arguments set forth above, the State objects to the Debtors'

use of cash collateral, however, the State is forced to respond to assertions made in the cash

collateral motion.

36.     In its request to utilize cash collateral, the Debtors make bold, albeit frivolous,

allegations that the Seizure Order was a fraudulent conveyance under the Bankruptcy Code and

applicable state law.

37.     The Debtors fail to cite any authority for such a novel theory and fail to explain

how a sovereign could be sued for a fraudulent conveyance in the proper exercise of its police

power.  The value of any consideration to an estate is irrelevant when a state exercises its police

powers to remedy a criminal enterprise.  *State v. 1979 Pontiac Trans Am*, 98 N.J. 474, 479, 487

A.2d 722 (1985).(" Forfeiture is the "divestiture without compensation of title to property used to

further criminal activity.").  Under the Debtors' theory, any time a property owner is divested of

its assets pursuant to New Jersey law, all transfers to the State could be avoided based on a lack

of consideration.  This stretches all bounds of credulity and is a frivolous legal theory.  The

Debtors can and should raise any issues regarding its concerns with the Seizure Order to the New

Jersey Superior Court.

38.    The Debtors also cite to N.J.S.A. 2C:64-5a[4] in the cash collateral motion. This is

an intercreditor statute which does not give the Debtors any rights to use property subject to the

Seizure Order.

39.    To the extent that the Court allows the use of any cash collateral, the State

requests that the Court condition any use in accordance with section 363 (e) of the Bankruptcy

Code.  Section 363(e) provides, in relevant part, that "notwithstanding any other provision of this

section, at any time, on request of an entity that has an interest in property used, sold, or leased,

or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall

prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of

such interest." 11 U.S.C. § 363 (e).

40.    In this matter, it is unclear what, if any, adequate protection can be fashioned in

light of the Seizure Order and the State objects to any use of its property since there is no

available adequate protection.

---

[4] § 2C:64-5. Seized property; rights of owners and others holding interests

  a. No forfeiture under this chapter shall affect the rights of any lessor in the ordinary course of business or any person holding a perfected security interest in property subject to seizure unless it shall appear that such person had knowledge of or consented to any act or omission upon which the right of forfeiture is based. Such rights are only to the extent of interest in the seized property and at the option of the entity funding the prosecuting agency involved may be extinguished by appropriate payment.

b. Property seized under this chapter shall not be subject to forfeiture if the owner of the property establishes by a preponderance of the evidence that the owner was not involved in or aware of the unlawful activity and that the owner had done all that could reasonably be expected to prevent the proscribed use of the property by an agent. A person who uses or possesses property with the consent or knowledge of the owner is deemed to be the agent of the owner for purposes of this chapter.

c. Property seized under this chapter shall not be subject to forfeiture if the property is seized while entrusted to a person by the owner or the agent of the owner when the property has been entrusted to the person for repairs, restoration or other services to be performed on the property, and that person, without the owner's knowledge or consent, uses the property for unlawful purposes.

N.J. Stat. § 2C:64-5

**These Bankruptcy Cases Should be Dismissed**

41.      As set forth above, the Debtors were divested of substantially all of their assets

prior to the Petition Date by operation of the Seizure Order.   The continued enforcement of the

Seizure Order is excepted from the automatic stay by operation of 11 U.S.C. § 362(b)(4).  Thus,

it appears that the Debtors' lack any meaningful assets to administer and have no reasonable

prospect of reorganization through these chapter 11 cases.  Consequently, the State submits that

the dismissal of the Debtors' chapter 11 petition for cause is appropriate under 11 U.S.C. §

1112(b).

WHEREFORE, for the foregoing reasons, the State respectfully requests that the First

Day Relief, to the extent it impacts any of the State's rights, be denied and that the Court grant

such other and further relief as it deems just and proper.

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
973-643-7000
*Special Counsel to the State of New Jersey*


Dated:  March 31, 2013                    By:  /s/ Andrew H. Sherman
                                              Andrew H. Sherman

Exhibit A

**FILED**

MAR 26 2013

State Grand Jury Judge

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - CRIMINAL

State Grand Jury
    Number  SGJ632-13-26-S
Superior Court
Docket Number   13 - 03  00055 -

| | | |
|---|---|---|
| STATE OF NEW JERSEY | ) | |
| v. | ) | SUPERSEDING |
| | | INDICTMENT |
| THOMAS ROSPOS, | ) | |
| HOWARD BIRDSALL, | ) | |
| WILLIAM BIRDSALL, | ) | |
| ALAN HILLA, | ) | |
| SCOTT MACFADDEN, | ) | |
| JAMES JOHNSTON, | ) | |
| ROBERT GERARD, and | ) | |
| BIRDSALL SERVICES GROUP. | ) | |
| | ) | |

The Grand Jurors of and for the State of New Jersey, upon their oaths, present that:

COUNT ONE

(Conspiracy - First Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

and other persons whose identities are known and unknown to the

Grand Jurors, who are coconspirators but who are not named as

defendants herein, between on or about January 1, 2006 and on or

about May 31, 2012, at diverse locations, in the Counties of Ocean,

Monmouth, Mercer, Middlesex and Bergen, elsewhere, and within the

jurisdiction of this Court, with the purpose of promoting or

facilitating the commission of the crimes of False Representation

for a Government Contract, Misconduct by a Corporate Official,

Financial Facilitation of Criminal Activity, Tampering With Public

Records or Information, Falsifying or Tampering with Records,

Corporation, Labor Organization Contributions through Employees,

Prohibited, or Concealment or Misrepresentation of Contributions or

Expenditures, did agree that:

A.    One or more of them knowingly would engage in conduct

which would constitute the aforesaid crime(s), or

B.    One or more of them knowingly would aid in the planning,

solicitation or commission of said crime(s), that is:

1. False Representation for a Government Contract,

in that one or more of them would knowingly make a material

- 2 -

representation that was false in connection with the negotiation, award or performance of one or more government contracts valued in excess of $25,000; that is, that one or more of them would knowingly submit false information to one or more public entities, to wit: false information concerning political contributions previously made, in connection with the negotiation, award or performance of one or more contracts for engineering services, contrary to the provisions of N.J.S.A. 2C:21-34(b);

    2. Misconduct By Corporate Official, in that one or more of them would purposely or knowingly use, control or operate a corporation for the furtherance or promotion of a criminal object, thereby deriving a benefit for himself or another in whom he was interested in excess of $75,000, that is, use, control or operate the said BIRDSALL SERVICES GROUP, a corporation of the State of New Jersey, for the furtherance or promotion of the criminal objects of: (1) False Representation for a Government Contract, in violation of N.J.S.A. 2C:21-34(b); (2) Financial Facilitation of Criminal Activity, in violation of N.J.S.A. 2C:21-25(b); (3) Tampering With Public Records, in violation of N.J.S.A. 2C:28-7(a)(2); (4) Falsifying or Tampering with Records, in violation of N.J.S.A. 2C:21-4(a), (5) Corporation, Labor Organization Contributions through Employees, Prohibited, in violation of N.J.S.A. 19:44A-20.1; or (6) Concealment or Misrepresentation of Contributions or Expenditures, in violation of N.J.S.A. 19:44A-20 and 19:44A-21(a)

and (d), contrary to the provisions of N.J.S.A. 2C:21-9(c);

        3. Financial Facilitation of Criminal Activity, in that one or more of them would engage in one or more transactions involving property, to wit: funds of $500,000 or more, which he/she/it/they knew or which a reasonable person would believe to be derived from criminal activity, to wit: (1) False Representation for a Government Contract, (2) Misconduct by a Corporate Official, (3) Tampering With Public Records or Information, (4) Falsifying or Tampering with Records, (5) Corporation, Labor Organization Contributions through Employees, or (6) Concealment or Misrepresentation of Contributions or Expenditures, with the intent to facilitate or promote the criminal activity, that is, that one or more of them would utilize funds to illegally reimburse himself/ herself or another for political contributions, would obtain government contracts illegally by making one or more material representations that were false in connection with the negotiation, award or performance of said contracts and would then utilize funds obtained from the aforesaid illegally obtained government contracts to continue to illegally reimburse himself/herself or others for subsequent political contributions, the value of all the aforesaid illegal reimbursements for campaign contributions being over $500,000, contrary to the provisions of N.J.S.A. 2C:21-25(b) and N.J.S.A. 2C:21-27;

        4. Financial Facilitation of Criminal Activity, in

- 4 -

that one or more of them would engage in one or more transactions

involving property, to wit: funds of $500,000 or more, which

he/she/it/they knew or which a reasonable person would believe to be

derived from criminal activity, to wit: (1) Misconduct by a

Corporate Official, (2) Corporation, Labor Organization

Contributions through Employees, Prohibited or (3) Concealment or

Misrepresentation of Contributions or Expenditures, with the intent

to facilitate or promote the criminal activity or knowing that the

transactions were designed in whole or in part to conceal or

disguise the nature, location, source, ownership or control of the

property derived from criminal activity, that is, that one or more

of them would pay or cause others to pay income taxes on illegal

reimbursement payments for campaign contributions in order to make

these payments appear to be legitimate and bona fide bonuses, the

value of all the aforesaid illegal reimbursements for campaign

contributions being over $500,000, contrary to the provisions of

N.J.S.A. 2C:21-25(b) and N.J.S.A. 2C:21-27;

          5. Tampering With Public Records or Information, in

that one or more of them would, with purpose to defraud or injure,

make, present, offer for filing or use any record, document or thing

knowing it to be false, and with the purpose that it be taken as a

genuine part of information or records belonging to, received or

kept by, the government for information or record, or required by

law to be kept by others for information of the government, that is,

one or more of them, knowing the same to be false, would make, present, offer for filing or use, one or more false Forms BE, Certifications of Compliance regarding political contributions or other documents reporting political contributions previously made, contrary to the provisions of N.J.S.A. 2C:28-7(a)(2);

6. Falsifying Records, in that one or more of them would, with purpose to deceive or injure another or to conceal a wrongdoing, knowing it to contain a false statement or information, falsify or utter a writing or record, that is, one or more false Forms BE, Certifications of Compliance regarding political contributions or other documents reporting political contributions previously made, contrary to the provisions of N.J.S.A. 2C:21-4(a);

7. Corporation, Labor Organization Contributions Through Employees, Prohibited, in that one or more of them, being an officer, director, attorney, agent or other employee of a corporation, would provide to another employee of that corporation or would use any part of an additional increment of salary, bonus or monetary remuneration of any kind which, in whole or in part, is intended by that corporation to be used for the express and intentional purpose of paying or making a contribution, either directly or indirectly, of money or other thing of value to a candidate, candidate committee, joint candidates committee, political party committee, legislative leadership committee, political committee or continuing political committee, contrary to

the provisions of N.J.S.A. 19:44A-20.1; or

        8. Concealment or Misrepresentation of

Contributions or Expenditures, in that one or more of them would

purposely and with the intent to conceal or misrepresent

contributions given to aid or promote the nomination, election or

defeat of any candidate for public office or party position, or to

aid or promote the passage or defeat of a public question in any

election, or to aid the dissemination of political information in

connection with any election would make one or more contributions of

money or other things of value in his/her own name for another to

support or defeat a candidate in an election or to aid the passage

or defeat of any public question or to provide political information

on any candidate or public question, or would loan or advance to

another or receive a loan or advance from another of money or other

thing of value expressly for the purpose of making a contribution to

a candidate or the candidate committee or joint candidates committee

of a candidate or did contribute or purport to contribute funds or

property which had been given or furnished to him/her by any other

person or group for the purpose of making a contribution to a

candidate, candidate committee, joint candidates committee,

political committee, continuing political committee, political party

committee or legislative leadership committee, contrary to the

provisions of N.J.S.A. 19:44A-20 and N.J.S.A. 19:44A-21(a) and (d).

    All in violation of N.J.S.A. 2C:5-2, and against the peace of

this State, the government and dignity of same.

<u>COUNT TWO</u>

(False Representation for a Government Contract - Second Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at

diverse locations, in the Counties of Ocean, Monmouth, Mercer,

Middlesex and Bergen, elsewhere, and within the jurisdiction of this

Court, knowingly did make a material representation that was false

in connection with the negotiation, award or performance of one or

more government contracts valued in excess of $25,000; that is, the

said THOMAS ROSPOS, HOWARD BIRDSALL, WILLIAM BIRDSALL, ALAN HILLA,

SCOTT MACFADDEN, JAMES JOHNSTON, ROBERT GERARD, BIRDSALL SERVICES

GROUP or other persons whose identities are known and unknown to the

Grand Jurors, who are accomplices or coconspirators but who are not

named as defendants herein, knowingly submitted false information to

one or more public entities, to wit: false information concerning

political contributions previously made, in connection with the

- 9 -

negotiation, award or performance of one or more contracts for
engineering services, contrary to the provisions of <u>N.J.S.A.</u> 2C:21-
34(b) and <u>N.J.S.A.</u> 2C:2-6, and against the peace of this State, the
government and dignity of the same.

COUNT THREE

(Misconduct By Corporate Official - Second Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at
diverse locations, in the Counties of Ocean, Monmouth, Mercer,
Middlesex and Bergen, elsewhere, and within the jurisdiction of this
Court, purposely or knowingly did use, control or operate a
corporation for the furtherance or promotion of a criminal object,
thereby deriving a benefit for himself or another in whom he was
interested in excess of $75,000, that is, the said THOMAS ROSPOS,
HOWARD BIRDSALL, WILLIAM BIRDSALL, ALAN HILLA, SCOTT MACFADDEN,
JAMES JOHNSTON, or ROBERT GERARD, each being an officer, a high
managerial employee, an employee or a shareholder, did use, control
or operate BIRDSALL SERVICES GROUP, a corporation of the State of
New Jersey, for the furtherance or promotion of the criminal objects
of: (1) False Representation for a Government Contract, in violation

of N.J.S.A. 2C:21-34(b); (2) Financial Facilitation of Criminal

Activity, in violation of N.J.S.A. 2C:21-25(b); (3) Tampering With

Public Records, in violation of N.J.S.A. 2C:28-7(a)(2); (4)

Falsifying or Tampering with Records, in violation of N.J.S.A.

2C:21-4(a), (5) Corporation, Labor Organization Contributions

through Employees, Prohibited, in violation of N.J.S.A. 19:44A-20.1;

or (6) Concealment or Misrepresentation of Contributions or

Expenditures, in violation of N.J.S.A. 19:44A-20 and 19:44A-21(a)

and (d), contrary to the provisions of N.J.S.A. 2C:21-9(c) and

N.J.S.A. 2C:2-6, and against the peace of this State, the government

and dignity of same.

<u>COUNT FOUR</u>

(Financial Facilitation of Criminal Activity - First Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at

diverse locations, in the Counties of Ocean, Monmouth, Mercer,

Middlesex and Bergen, elsewhere, and within the jurisdiction of this

Court, engaged in one or more transactions involving property, to

wit: funds of $500,000 or more, which the said THOMAS ROSPOS, HOWARD

BIRDSALL, WILLIAM BIRDSALL, ALAN HILLA, SCOTT MACFADDEN, JAMES

JOHNSTON, ROBERT GERARD, or BIRDSALL SERVICES GROUP knew or which a

reasonable person would believe to be derived from criminal

activity, to wit: (1) False Representation for a Government

Contract, (2) Misconduct by a Corporate Official, (3) Tampering With

Public Records or Information, (4) Falsifying or Tampering with

Records, (5) Corporation, Labor Organization Contributions through

Employees, Prohibited or (6) Concealment or Misrepresentation of

- 13 -

Contributions or Expenditures, with the intent to facilitate or promote the criminal activity, that is, the said THOMAS ROSPOS, HOWARD BIRDSALL, WILLIAM BIRDSALL, ALAN HILLA, SCOTT MACFADDEN, JAMES JOHNSTON, ROBERT GERARD, or BIRDSALL SERVICES GROUP did utilize funds to illegally reimburse himself or another for political contributions, did obtain government contracts illegally by making one or more material representations that were false in connection with the negotiation, award or performance of said contracts and did then utilize funds obtained from the aforesaid illegally obtained government contracts to continue to illegally reimburse himself or others for subsequent political contributions, the value of all the aforesaid illegal reimbursements for campaign contributions being $500,000 or more, contrary to the provisions of N.J.S.A. 2C:21-25(b), N.J.S.A. 2C:21-27 and N.J.S.A. 2C:2-6, and against the peace of this State, the government and dignity of same.

<u>COUNT FIVE</u>

(Financial Facilitation of Criminal Activity - First Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at diverse locations, in the Counties of Ocean, Monmouth, Mercer, Middlesex and Bergen, elsewhere, and within the jurisdiction of this Court, engaged in one or more transactions involving property, to wit: funds of $500,000 or more, which the said THOMAS ROSPOS, HOWARD BIRDSALL, WILLIAM BIRDSALL, ALAN HILLA, SCOTT MACFADDEN, JAMES JOHNSTON, ROBERT GERARD, or BIRDSALL SERVICES GROUP knew or which a reasonable person would believe to be derived from criminal activity, to wit: (1) Misconduct by a Corporate Official, (2) Corporation, Labor Organization Contributions through Employees, Prohibited or (3) Concealment or Misrepresentation of Contributions or Expenditures, with the intent to facilitate or promote the criminal activity or knowing that the transactions were designed in

- 15 -

whole or in part to conceal or disguise the nature, location,

source, ownership or control of the property derived from criminal

activity, that is, the said THOMAS ROSPOS, HOWARD BIRDSALL, WILLIAM

BIRDSALL, ALAN HILLA, SCOTT MACFADDEN, JAMES JOHNSTON, ROBERT

GERARD, or BIRDSALL SERVICES GROUP did himself/itself/themselves pay

or cause others to pay income taxes on illegal reimbursement

payments for campaign contributions in order to make these payments

appear to be legitimate and bona fide employee bonuses, the value of

all the aforesaid illegal reimbursements for campaign contributions

being $500,000 or more, contrary to the provisions of N.J.S.A.

2C:21-25(b), N.J.S.A. 2C:21-27 and N.J.S.A. 2C:2-6, and against the

peace of this State, the government and dignity of same.

<u>COUNT SIX</u>

(Tampering With Public Records or Information - Third Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at diverse locations, in the Counties of Ocean, Monmouth, Mercer, Middlesex and Bergen, elsewhere, and within the jurisdiction of this Court, with purpose to defraud or injure, did make, present, offer for filing or use any record, document or thing knowing it to be false, and with the purpose that it be taken as a genuine part of information or records belonging to, received or kept by, the government for information or record, or required by law to be kept by others for information of the government, that is, the said THOMAS ROSPOS, HOWARD BIRDSALL, WILLIAM BIRDSALL, ALAN HILLA, SCOTT MACFADDEN, JAMES JOHNSTON, ROBERT GERARD, BIRDSALL SERVICES GROUP or other persons whose identities are known and unknown to the Grand Jurors, who are accomplices or coconspirators but who are not named

as defendants herein, knowing the same to be false, did make,

present, offer for filing or use, one or more false Forms BE,

Certifications of Compliance regarding political contributions or

other documents reporting political contributions made, contrary to

the provisions of <u>N.J.S.A.</u> 2C:28-7(a)(2) and <u>N.J.S.A.</u> 2C:2-6, and

against the peace of this State, the government and dignity of same.

<u>COUNT SEVEN</u>

(Falsifying Records - Fourth Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at diverse locations, in the Counties of Ocean, Monmouth, Mercer, Middlesex and Bergen, elsewhere, and within the jurisdiction of this Court, with purpose to deceive or injure another or to conceal a wrongdoing, knowing it to contain a false statement or information, did falsify or utter a writing or record, that is, one or more false Forms BE, Certifications of Compliance regarding political contributions or other documents reporting political contributions previously made, contrary to the provisions of <u>N.J.S.A.</u> 2C:21-4(a) and <u>N.J.S.A.</u> 2C:2-6, and against the peace of this State, the government and dignity of same.

<u>COUNT EIGHT</u>

(Corporation, Labor Organization Contributions Through Employees,

Prohibited - Fourth Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at

diverse locations, in the Counties of Ocean, Monmouth, Mercer,

Middlesex and Bergen, elsewhere, and within the jurisdiction of this

Court, being an officer, director, attorney, agent or other employee

of a corporation, that is, the said THOMAS ROSPOS, HOWARD BIRDSALL,

WILLIAM BIRDSALL, ALAN HILLA, SCOTT MACFADDEN, JAMES JOHNSTON, or

ROBERT GERARD, being an officer, a high managerial employee, an

employee or a shareholder of the said BIRDSALL SERVICES GROUP, did

provide to another employee of that corporation or did use any part

of an additional increment of salary, bonus or monetary remuneration

of any kind which, in whole or in part, was intended by that

corporation to be used for the express and intentional purpose of

paying or making a contribution, either directly or indirectly, of money or other thing of value to a candidate, candidate committee, joint candidates committee, political party committee, legislative leadership committee, political committee or continuing political committee, contrary to the provisions of <u>N.J.S.A.</u> 19:44A-20.1 and <u>N.J.S.A.</u> 2C:2-6, and against the peace of this State, the government and dignity of same.

## COUNT NINE

(Concealment or Misrepresentation of Contributions or Expenditures -

Fourth Degree)

THOMAS ROSPOS

HOWARD BIRDSALL

WILLIAM BIRDSALL

ALAN HILLA

SCOTT MACFADDEN

JAMES JOHNSTON

ROBERT GERARD

and

BIRDSALL SERVICES GROUP

between on or about January 1, 2006 and on or about May 31, 2012, at
diverse locations, in the Counties of Ocean, Monmouth, Mercer,
Middlesex and Bergen, elsewhere, and within the jurisdiction of this
Court, purposely and with the intent to conceal or misrepresent
contributions given to aid or promote the nomination, election or
defeat of any candidate for public office or party position, or to
aid or promote the passage or defeat of a public question in any
election, or to aid the dissemination of political information in
connection with any election did make one or more contributions of
money or other things of value in his own name for another to
support or defeat a candidate in an election or to aid the passage
or defeat of any public question or to provide political information

- 22 -

on any candidate or public question, or did loan or advance to
another or receive a loan or advance from another of money or other
thing of value expressly for the purpose of making a contribution to
a candidate or the candidate committee or joint candidates committee
of a candidate or did contribute or purport to contribute funds or
property which had been given or furnished to him by any other
person or group for the purpose of making a contribution to a
candidate, candidate committee, joint candidates committee,
political committee, continuing political committee, political party
committee or legislative leadership committee, contrary to the
provisions of N.J.S.A. 19:44A-20, N.J.S.A. 19:44A-21(a) and (d) and
N.J.S.A. 2C:2-6, and against the peace of this State, the government
and dignity of same.

Elie Honig, Director
Division of Criminal Justice

A TRUE BILL:

Foreperson

Dated: 3/26/2013

- 23 -

**FILED**

MAR 26 2013

**State Grand Jury Judge**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - CRIMINAL

State Grand Jury
Number SGJ632-13-26-S
Superior Court
Docket Number ___13 - 03 - 00 0 5 5 - S___

STATE OF NEW JERSEY        )

         v.        )        ORDER OF VENUE

THOMAS ROSPOS        )

HOWARD BIRDSALL        )

WILLIAM BIRDSALL        )

ALAN HILLA        )

SCOTT MACFADDEN        )

JAMES JOHNSTON        )

ROBERT GERARD        )

     and        )

BIRDSALL SERVICES, GROUP        )


    An Indictment having been returned to this Court by the
State Grand Jury in the above captioned matter,

    IT IS ORDERED on this 26th day of March        , 2013,
pursuant to paragraph 8 of the State Grand Jury Act, that the
County of Ocean be and hereby is designated as the County of venue
for the purpose of trial.

IT IS FURTHER ORDERED that the Clerk of the Superior Court shall transmit forthwith the Indictment in this matter and a certified copy of this Order to the Criminal Division Manager of the County of Ocean for filing.

Thomas W. Sumners, Jr., J.S.C.

# Exhibit B

DEREK A. MILLER
DEPUTY ATTORNEY GENERAL
FOR:  JEFFREY S. CHIESA
        ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF CRIMINAL JUSTICE
FINANCIAL AND COMPUTER CRIMES BUREAU
5 EXECUTIVE CAMPUS
SUITE 201
CHERRY HILL, NEW JERSEY 08002
(856) 486-3108

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MONMOUTH COUNTY
DOCKET NO. MON-L-

IN THE MATTER OF THE
APPLICATION OF THE STATE OF        :
NEW JERSEY FOR AN ORDER            :
AUTHORIZING THE SEIZURE AND
RESTRAINT OF                       :

ANY AND ALL ASSETS OF              :
BIRDSALL SERVICES GROUP, INC.,
INCLUDING, BUT NOT                 :
LIMITED TO:

                                   :

        BANK OF AMERICA ACCOUNT
        9419979116, HELD IN THE NAME:
        OF BIRDSALL SERVICES
        GROUP, INC.                :

        BANK OF AMERICA ACCOUNT  :
        4880845656, HELD IN THE NAME
        OF BIRDSALL SERVICES       :
        GROUP, INC.

                                   :

AS PROPERTY SUBJECT TO             :
FORFEITURE AND AS EVIDENCE
PENDING CRIMINAL PROSECUTION,      :
PURSUANT TO N.J.S.A. 2C:64-1a
AND b.                             :

CIVIL ACTION

**AFFIDAVIT IN SUPPORT OF THE
STATE'S APPLICATION TO SEIZE
AND RESTRAIN PROPERTY**
(N.J.S.A. 2C:64-1b et seq.)

STATE OF NEW JERSEY          )
                                           ss
COUNTY OF MONMOUTH        )

      Dennis A. Quinn, of full age, being duly sworn according to law, upon his oath, deposes and says:

      1.    I am a Detective with the New Jersey State Police.  I am empowered by law to investigate crimes including: money laundering, that is, the financial facilitation of crime, pursuant to N.J.S.A. 2C:21-25; false representation for a government contract, pursuant to N.J.S.A. 2C:21-34(b) and N.J.S.A. 2C:2-6; misconduct by a corporate official, pursuant to N.J.S.A. 2c:21-9(c); tampering with public records or information, pursuant to N.J.S.A. 2C:28-7; falsifying records, pursuant to N.J.S.A. 2c:21-4(a); corporation contributions through employees, pursuant to N.J.S.A. 19:44A-20.1; concealment or misrepresentation of contributions, pursuant to N.J.S.A. 19:44A-20, N.J.S.A. 19:44-21(a) and (d); and conspiracy to commit the aforementioned crimes, pursuant to N.J.S.A. 2C:5-2, as well as other violations of the criminal laws of the State of New Jersey.

      2.    I have been a member of the New Jersey State Police for the past eight and half years. I am presently assigned to the Organized Crime Control South Bureau, Official Corruption Unit. In such capacity, I am responsible for the investigation of Official Misconduct and corruption, along with other investigations designated by the New Jersey State Police.  During the eight and a half years I have been a member of the New Jersey State Police, I have been involved in various investigations involving the specified crimes as well as criminal investigations for robberies, burglaries, thefts, frauds, assaults, weapons offenses, sex crimes, and conspiracies to commit various criminal offenses.  I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal those activities from

detection by law enforcement. My investigations have resulted in both indictments and
convictions for the aforesaid crimes. I have testified in various Superior Courts, as well as before
County and Statewide Grand Juries relating to these investigations. I have executed and assisted
in the execution of numerous search warrants resulting in the seizure of contraband and evidence
related to these investigations. My formal training includes the New Jersey State Police
Academy and various advanced courses relating to the field of criminal investigation. These
courses include an eighty hour course on basic criminal investigation given by the New Jersey
State Police. I regularly attend seminars and in-service training conducted by the New Jersey
State Police which provide an update on the current techniques of crime detection, enforcement,
and changes in the existing body of criminal and motor vehicle law.

     3.      Based on the evidence detailed below, I have probable cause to believe, and do in
fact believe, that the captioned  property is subject to seizure and forfeiture to the State of New
Jersey, pursuant to N.J.S.A. 2C:64-1a(2), (3) and (4) and N.J.S.A. 2C:64-1b.

     4.      The evidence detailed in the following paragraphs establishes that the captioned
property is the instrumentality of the crimes under investigation and/or represents the proceeds of
those crimes. As such, the said property is subject to seizure and forfeiture to the State of New
Jersey, pursuant to N.J.S.A. 2C:64-1a(2), (3) or (4), and is subject to seizure as evidence pending
criminal prosecution, pursuant to N.J.S.A. 2C:64-1b and N.J.S.A. 2C:64-4.

     5.      In or about February, 2012, the State of New Jersey began investigating
allegations involving illegal campaign contributions by Birdsall Services Group, Inc. (hereinafter
"Birdsall"), its shareholders, and executives. Birdsall is an engineering, planning, and consulting
company based in Monmouth County, New Jersey, and does business throughout the State.

     6.      New Jersey law closely regulates political contributions of companies that

contract with the State and its municipalities.

7.      Political candidates and committees must report all contributions in excess of

$300 to the New Jersey Election Law Enforcement Committee, pursuant to N.J.S.A. 19:44A-8(d)

and 16(d).

8.      Businesses that enter into contracts with the State in excess of $17,500, are

forbidden from contributing funds prior to the completion of the contract, and within eighteen

months of the opening of negotiations for the contract, to any candidate for Governor or

Lieutenant Governor, County Political Party Committee, State Political Party Committee,

Municipal Committee, or Legislative Leadership committee under N.J.S.A. 2C:19-44a-20.

9.      Businesses holding contracts for more than $17,500, which are not awarded

through a fair and open bidding process, are forbidden from making contributions prior to the

completion of the contract,  and within one year of the opening of negotiations for the contract,

to:

-       any candidate for the legislature, joint candidate committee of a Presiding Offer, a
        Legislative Leadership committee established by a presiding officer, or presiding
        officer's state political party committee (N.J.S.A. 19:44A-20.3)

-       any county political party Committee, or candidate or joint candidate committee
        of any person in an elective public office in the county (N.J.S.A. 19:44A-20.4)

-       any candidate or joint candidate committee of any person serving in an elective
        public office, or an municipal political party committee (N.J.S.A. 19:44A-20.5).

10.     Business entities submitting bids or quotes for projects exceeding $17,500 with

State and local entities, are required to disclose to the contracting agency,  all political

contributions made within the prior 12 months to any State, county, or municipal committee of a

political party, legislative leadership committee, candidate committee, or an continuing political

committee under N.J.S.A. 19:44A-20.26.

11.     Individuals and corporations are expressly prohibited from making political

contributions on behalf of another within the State, as well as from loaning or advancing funds to

another for contribution to a political candidate or committee, pursuant to N.J.S.A. 2C:19-44a-

20.

12.     The deliberate concealment or misrepresentation of the source of political

contribution by an individual or corporation is a crime under N.J.S.A. 2C:19:44A-21(a) and (d).

13.     The State's investigation if this matter arose after New Jersey Division of

Criminal Justice officials were provided with an audio of recording of Philip Angarone

(hereinafter "Angaraone"), Director of Marketing for Birdsall. In the recording, Angarone told

his soon to be ex-wife that his reportable income was substantially higher than his actual income

because a portion of his company bonus actually represented reimbursements for political

contributions he made on behalf of Birsdall.

14.     Angarone acknowledged in the recording that the reimbursements were "illegal."

He further stated that Executive Vice President Thomas Rospos loaned him $30,000 to make

campaign contributions on behalf of Birdsall.

15.     On April 30, 2012, the Hon. Thomas F. Scully, J.S.C. authorized search warrants

for Birdsall offices located at 611 Industrial Way West, Eatontown, NJ, and 2100 Route 25,

Sea Girt, New Jersey.

16.     Execution of the search warrants in paragraph 15, supra, revealed a record of

bonuses paid to senior Birdsall executives in 2008. These documents show both "Senior

Management bonuses and "O & D" bonuses paid to Robert Gerard ($53,000 O&D), Philip

Angaraone ($85,000 O&D), Gerald Perricone ($21,000 O&D), and James Johnston ($31,000

O&D).

17.   Angaraone was the Director of Marketing for Birdsall Services Group from 2008

until July, 2012. On December 3, 2012, Angarone gave a sworn statement to Detectives of the

New Jersey Division of Criminal Justice.

18.   In his statement, Angarone advised that the there was a conspiracy by Birdsall

shareholders and executives to obtain public contracts in New Jersey by making large donations

to political candidates and committees.

19.   The conspiracy set about to circumvent pay-to-play provisions by coordinating

individuals to make political contributions on Birdsall's behalf, which were later reimbursed to

the individuals by the company in the form of "O & D Bonuses." In some cases, high level

company officials would receive an O & D bonus for two or more employees, and then

personally remit a correct percentage of the bonus to the other employee. Angaraone's statements

regarding the O& D Bonuses are corroborated by the payroll records referenced in paragraph 16,

supra.

20.   Birdsall made, disguised, and reimbursed illegal political contributions in

substantial amounts. Angarone provided State investigators a copy of Birdsall's 2009 and 2010

itemized Marketing Budget. The document reveals that in 2009, Birdsall reimbursed

approximately $430,000 in illegal contributions, by way of O & D bonuses. It further reveals that

Birdsall planned to reimburse $540,000 in illegal contributions for 2010.

21.   Angarone stated that Birdsall made donations in its own name up to the legal

limit, and then shareholder and employees were instructed to make additional contributions on

the company's behalf. He acknowledged that 75% of Birsdall's political contributions were

illegally made through its employees.

22.  Angarone advised that the principal shareholders of Birdsall are Thomas Rospos,

Alan Hilla, Jr., William Birdsall, and Howard Birdsall, and that each of these individuals made

political contributions on behalf of Birdsall from as far back as to 2004, and continuing to 2012.

Angarone further advised that the following senior executives also made regular personal

contributions on behalf of Birdsall: Robert Collins, Jerry Freda, Chris Morris, Michael Guiliano,

Ralph Johnson, Clare Broderick, Scott McFadden, David Erickson, James Johnston, and John

Hess.

23.  Angarone explained that the purpose of the illegal contributions was to curry

favor with elected officials and gain a competitive advantage in obtaining State and municipal

contracts.

24.  According to Angarone, Birdsall executives and shareholders were directed to

make contributions to political candidates and committees for $299.00 because this amount falls

below the threshold for mandatory recording by political candidates and committees. The checks

were also written in $299.00 increments to signal to recipients that the funds represented

"unofficial" Birdsall contributions.

25.  On November 20, 2012, Angarone pled guilty to Tampering with Public Records,

in violation of N.J.S.A. 2C:28-7(a)(2) and Corporate Contributions Through Employees, in

violation of N.J.S.A. 19:44A-20.1.

26.  Eileen Kuhfahl (hereinafter "Kuhfahl") was employed as a secretary at Birdsall

from 2002-2011, and thereafter as Marketing Manager for Birdsall.

27.  Kuhfahl provided a sworn statement to New Jersey officials on January 31, 2013.

In her statement, Kuhfahl corroborated Angarone's account of the Birsdall conspiracy.

28.    Kuhfahl advised that the illegal reimbursement of political contributions for Birsdall had been ongoing since at least 2004, and that she attended weekly meetings to decide which individual would make a specific contribution, and how they would be reimbursed.

29.    Kuhfahl further advised that Birdsall's shareholder and executives continued their systematic illegal campaign contributions because they regularly won contracts because of them. She explained that after Birdsall made their contributions, they would be rewarded with public works projects. For example, if there were three upcoming bridge projects in a particular county, one would be allotted to Birsdall following a contribution to a county candidate or committee. Birdsall would be awarded the allotted project so long as their bid represented a "decent price," and not "double" the amount of a competing bid, or something "unreasonable."

30.    Kuhfahl also admitted making individual contributions to political candidates and committees, for which she was reimbursed by Birdsall and its executives.

31.    On February 13, 2013, Kuhfahl pled guilty to Corporate Contributions Through Employees, in violation of N.J.S.A. 19:44A-20.1.

32.    On December 11, 2013, Thomas Rospos, former Executive Vice President of Birsdall, was indicted for: money laundering, in violation of N.J.S.A. 2C:21-25; false representation for a government contract, in violation of N.J.S.A. 2C:21-34(b) and N.J.S.A. 2C:2-6; misconduct by a corporate official, in violation of N.J.S.A. 2c:21-9(c); tampering with public records or information, in violation of N.J.S.A. 2C:28-7; falsifying records, in violation of N.J.S.A. 2c:21-4(a); corporation contributions through employees, in violation of N.J.S.A. 19:44A-20.1; concealment or misrepresentation of contributions, in violation of N.J.S.A. 19:44A-20, N.J.S.A. 19:44-21(a) and (d); and conspiracy to commit the aforementioned crimes, in violation of  N.J.S.A. 2C:5-2.

33.    Birdsall obtained a substantial portion of its revenues from its business New

Jersey and its municipalities. Birdsall's filings with the New Jersey Election Law Enforcement

Commission for show State and local contracts for $28,394,516.23 in 2011, $7,069,797.58 in

2010, and $27,703,530.53 in 2009.

34.    The State was recently supplied with a memorandum from William Barron,

C.F.O. of Birdsall to counsel for Birdsall, Joseph A. Hayden, Esq. In this memorandum, Barron

acknowledges that approximately half of the company's 3,500 projects per year are public

contracts, and that public works accounts for "more than 50%" of the company's business.

35.    Birdsall is the instrumentality, and principal means of facilitating the pay-to-play

conspiracy of Thomas Rospos, Alan Hilla, Jr., William Birdsall, and Howard Birdsall, and their

fellow co-conspirators.

36.    Under New Jersey law, Birdsall was: (1) forbidden from making contributions to

candidates and committees within one year of opening negotiations for non-fair-and-open public

contracts; (2) required to disclose any qualifying contributions to the State or local agency

offering the contract; and (3) expressly forbidden from making contributions through nominees.

37.    However, since at least 2004, Birdsall's shareholders and executives regularly

made illegal contributions to candidates while bidding on and performing public contracts.

38.    Birdsall's shareholders and executives also systematically submitted fraudulent

documents to State and local agencies, certifying that they had not made any disqualifying

political contributions for each non fair-and-open contract they obtained. Each contract obtained

with fraudulent representations is tainted by the criminal conspiracy.

39.    The conspirators also utilized company accounts to launder money, by way of

reimbursing illegal political contributions through official company bonuses. In addition, the

company was utilized to collect monies owed, and to distribute illegally obtained income through salaries, dividends, etc. to the conspirators.

40.    Thus, under N.J.S.A. 2C:64-1(2), Birdsall and its assets, are subject to forfeiture as having been the primary facilitating instrumentality of the criminal scheme set forth herein.

41.    In addition to being subject to forfeiture as an instrumentality of criminal activity, the assets of the company obtained through illegally obtained public contracts are also subject to forfeiture as the proceeds of illegal activity under N.J.S.A. 2C:64-1(4).

42.    Thus, the investigation has established probable cause to believe that the captioned  assets were used in furtherance of criminal activity, formed an integral part of criminal activity and represent the proceeds of criminal activity --money laundering, that is, the financial facilitation of crime, pursuant to N.J.S.A. 2C:21-25; false representation for a government contract, pursuant to N.J.S.A. 2C:21-34(b) and N.J.S.A. 2C:2-6; misconduct by a corporate official, pursuant to N.J.S.A. 2c:21-9(c); tampering with public records or information, pursuant to N.J.S.A. 2C:28-7; falsifying records, pursuant to N.J.S.A. 2c:21-4(a); corporation contributions through employees, pursuant to N.J.S.A. 19:44A-20.1; concealment or misrepresentation of contributions, pursuant to N.J.S.A. 19:44A-20, N.J.S.A. 19:44-21(a) and (d); and conspiracy to commit the aforementioned crimes, pursuant to N.J.S.A. 2C:5-2 -- and are subject to forfeiture pursuant to N.J.S.A. 2C:64-1.

43.    As such, I seek an order authorizing the seizure and restraint of the captioned property.

44.    I also request that this Affidavit be sealed until such time as the Order to Seize and Restrain Assets is fully executed and the State's investigation of criminal activity in this matter is concluded.  Release of this Affidavit prior to the conclusion of the related criminal investigation

is likely to jeopardize the integrity of the said investigation, and may place investigating law

enforcement officers at risk.   Because of the official misconduct alleged herein, this application

is being made outside the county in which the defendant-in-rem assets are sited.


    WHEREFORE, I seek an order from the Court authorizing New Jersey law enforcement

officers to effectuate seizure and restraint of the captioned property pursuant to N.J.S.A. 2C:64-1

*et seq.*   I respectfully request that the Court seal this Affidavit until the captioned property has

been seized or restrained pursuant to the terms of the Order and the related criminal investigation

has concluded.


_____
Det. Dennis A. Quinn #6424
New Jersey State Police


Sworn to and subscribed
before me this 26th day of March, 2013


Hon. Francis J. Vernoia, P.J.Cr.
LAWRENCE W. LAWSON, A.S.S.C.

# Exhibit C

DEREK A. MILLER
DEPUTY ATTORNEY GENERAL
FOR:  JEFFREY S. CHIESA
        ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF CRIMINAL JUSTICE
FINANCIAL AND COMPUTER CRIMES BUREAU
5 EXECUTIVE CAMPUS
SUITE 201
CHERRY HILL, NEW JERSEY 08002
(856) 486-3108

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION - MONMOUTH COUNTY
DOCKET NO. MON-L-

IN THE MATTER OF THE                          :
APPLICATION OF THE STATE OF                          CIVIL ACTION
NEW JERSEY FOR AN ORDER          :
AUTHORIZING THE SEIZURE AND                 **ORDER TO SEIZE AND**
RESTRAINT OF                            :         **RESTRAIN PROPERTY**

ANY AND ALL ASSETS OF              :
BIRDSALL SERVICES GROUP, INC.,
INCLUDING, BUT NOT                     :
LIMITED TO:
                                       :
        BANK OF AMERICA ACCOUNT
        9419979116, HELD IN THE NAME:
        OF BIRDSALL SERVICES
        GROUP, INC.                    :

        BANK OF AMERICA ACCOUNT  :
        4880845656, HELD IN THE NAME
        OF BIRDSALL SERVICES          :
        GROUP, INC.
                                       :

AS PROPERTY SUBJECT TO            :
FORFEITURE AND AS EVIDENCE
PENDING CRIMINAL PROSECUTION,  :
PURSUANT TO N.J.S.A. 2C:64-1a
AND b.                                 :

THIS MATTER having been opened to the Court by the application of the State of New Jersey, Jeffrey S. Chiesa, Attorney General, by Derek A. Miller, Deputy Attorney General, for an order authorizing the seizure and restraint of property; and the Court, having considered the affidavit of New Jersey State Police Detective Dennis A. Quinn, and good and probable cause appearing for believing that the captioned property is property that (1) has been and is intended to be used in furtherance of unlawful activity, (2) has become or is intended to become an integral part of illegal activity or (3) is property that represents the proceeds of illegal activity -- including but not limited to, money laundering, that is, the financial facilitation of crime, pursuant to N.J.S.A. 2C:21-25; false representation for a government contract, pursuant to N.J.S.A. 2C:21-34(b) and N.J.S.A. 2C:2-6; misconduct by a corporate official, pursuant to N.J.S.A. 2c:21-9(c); tampering with public records or information, pursuant to N.J.S.A. 2C:28-7; falsifying records, pursuant to N.J.S.A. 2c:21-4(a); corporation contributions through employees, pursuant to N.J.S.A. 19:44A-20.1; concealment or misrepresentation of contributions, pursuant to N.J.S.A. 19:44A-20, N.J.S.A. 19:44-21(a) and (d); and conspiracy to commit the aforementioned crimes, pursuant to N.J.S.A. 2C:5-2 -- and which property is, therefore, subject to forfeiture and is evidence pending criminal prosecution, pursuant to N.J.S.A. 2C:64-1(a) and (b); and for good cause shown;

IT IS, ON THIS ___26___ day of March, 2013 ORDERED that:


1.      The captioned assets shall be seized and restrained by the State of New Jersey, through its law enforcement officers, as property subject to forfeiture and as evidence pending

criminal prosecution, pursuant to N.J.S.A. 2C:64-1a and b, pending the determination of

forfeiture proceedings to be instituted within 90 days of the seizure and restraint of the captioned

property, pursuant to N.J.S.A. 2C:64-1 *et seq.*; the owners, licensees, agents, employees and

attorneys of the captioned property are restrained from directly or indirectly withdrawing,

assigning, pledging, encumbering, disposing of, transferring, relocating, dissipating, concealing

or otherwise removing the captioned property without prior approval of the Court;

      2.      To effectuate the seizure of the captioned assets, the State shall take possession of

the property upon execution of this Order; the property holder(s) and its (their) agents shall

refrain from withdrawing, pledging or otherwise alienating the property; the holder of the

property shall refrain from disbursing any of the property and shall provide to representatives of

the New Jersey Division of Criminal Justice all records respecting the captioned property,

whenever requested during normal business hours;

      3.      The Affidavit of New Jersey State Police Detective Dennis A. Quinn, shall be

sealed pending execution of this order and until further Order of the Court.

A.J-S-C.

Hon. ~~Hon. Francis J. Vernoia, P.J.Cr~~

LAWRENCE M. LAWSON, A.J.S.C.