**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**BIRDSALL SERVICES GROUP, INC., et al.,**<br><br>  Debtors. | Chapter 11<br>(Jointly Administered)<br><br>Case No. 13-16743 (MBK) |

**DEBTORS' NOTICE OF MOTION FOR ENTRY OF AN ORDER PURSUANT TO
FED. R. BANKR. P. 9019 APPROVING SETTLEMENT WITH
<u>THE STATE OF NEW JERSEY</u>**

**TO:**

| STATE OF NEW JERSEY<br><br>Andrew H. Sherman, Esq.<br>Sills Cummis & Gross P.C.<br>One Riverfront Plaza<br>Newark, New Jersey 07102<br>Telephone: (973) 643-7000 | UNITED STATES TRUSTEE, REGION 3<br><br>Mitchell B. Hausman, Esq.<br>Trial Attorney<br>One Newark Center, Suite 2100<br>Newark, New Jersey 07102<br>Telephone: (973) 645-3014 |
|---|---|
| BANK OF AMERICA, N.A.<br><br>Scott A. Zuber, Esq.<br>Wilson Elser Moskowitz Edelman & Dicker LLP<br>200 Campus Drive<br>Florham Park, NJ 07932<br>(973) 624-0800 | |

**PLEASE TAKE NOTICE** that on April 15, 2013, at 3:00 p.m. the Debtors, by and through their proposed counsel Gibbons P.C., shall move on shortened time before (i) the United States Bankruptcy Court for the District of New Jersey, the Honorable Michael B. Kaplan, USBJ presiding in the captioned chapter 11 cases, for entry of an emergency Order in the form submitted herewith (the "Order") pursuant to section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, approving the *Settlement Term Sheet* attached as Exhibit 1 to the Order (the "Settlement Agreement") by and between the Debtors and the State of New Jersey as more fully described in the Application filed herewith (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors shall rely upon the Application filed herewith in support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that if no objections to the relief requested in the Motion are presented to the Bankruptcy Court at the hearing, the Court may grant the relief requested in the Motion in its discretion.

Dated: April 15, 2013
      Newark, New Jersey

                Respectfully submitted,

                **GIBBONS P.C.**
                *Proposed Counsel to the Debtors*

                By: */s/ Mark B. Conlan*
                Mark B. Conlan
                Brett S. Theisen
                One Gateway Center
                Newark, New Jersey 07102-5310
                Telephone: (973) 596-4500
                Email: mconlan@gibbonslaw.com
                Email: btheisen@gibbonslaw.com

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| | (Jointly Administered) |
| **BIRDSALL SERVICES GROUP, INC., et al.,** | Case No. 13-16743 (MBK) |
| Debtors. | |

**DEBTORS' APPLICATION IN SUPPORT OF MOTION PURSUANT TO
FED. R. BANKR. P. 9019 TO APPROVE SETTLEMENT WITH
<u>THE STATE OF NEW JERSEY</u>**

TO:   THE HONORABLE MICHAEL B. KAPLAN
      UNITED STATES BANKRUPTCY JUDGE

Birdsall Services Group, Inc. and BSG Engineering, Surveying & Landscape Architecture, LLC, the debtors in the above-captioned chapter 11 cases (together, the "<u>Debtors</u>"), by and through their proposed counsel, Gibbons P.C., respectfully submit this application in support of the Debtors' Motion seeking entry of an Order in the form submitted herewith (the "Order") and pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019, approving the Settlement Term Sheet, attached to the Order as Exhibit 1 (the "Settlement Agreement") by and between the Debtors and the State of New Jersey (the "State") (collectively, the "Parties"). In support of this Motion, the Debtors respectfully state:

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Standing Order of Reference from the United States District Court for the District of New Jersey dated as of September 18, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 9019.

## PRELIMINARY STATEMENT

3. The Debtors provide professional engineering and environmental consulting services, including services to many local counties and municipalities in New Jersey. The Debtors are deeply involved in ongoing rebuilding efforts in the wake of Hurricane Sandy throughout the region and, particularly, in shore communities and barrier islands in Monmouth and Ocean Counties.

4. On March 26, 2013, the State filed an Indictment against Birdsall Services Group, Inc. ("BSG, Inc.") and several of its former executives alleging, *inter alia*, violations of the New Jersey "pay-to-play" statute. In a separate civil action, on March 26, 2013, the State obtained, an Order to Seize and Restrain Property from the Superior Court of New Jersey, Law Division ("Superior Court") that applies to any and all assets of BSG, Inc., including its bank accounts, as property subject to forfeiture (the "Seizure Order").

5. Through the Seizure Order, the State has asserted absolute control over substantially all of the Debtors' assets, necessitating the Debtors' emergency chapter 11 petitions, which were filed on March 29, 2013. The Debtors sought first-day authorization from this Court, among other relief, for the use of cash collateral (the "Cash Collateral Motion") [D.I. 9]. The State opposed the Debtors' Cash Collateral Motion and cross-moved to dismiss

the bankruptcy cases for "cause" pursuant to 11 U.S.C. 1112(b) (the "Motion to Dismiss") [D.I. 14].

6. On April 1, 2013, this Court authorized the Debtors' interim use of cash collateral for one-week to permit the Debtors to fund payroll to its employees and for other critical and necessary business expenses [D.I. 18]. Thereafter, the State filed a Supplemental Objection to the Cash Collateral Motion. [D.I. 29].

7. On April 8, 2013, this Court held a second interim hearing on the Cash Collateral Motion and also heard arguments on (i) the State's Supplemental Objections to the Debtors' use of cash collateral and Motion to Dismiss, (ii) the Debtors' Cross-Motion to enjoin the State's post-petition enforcement of the Restraining Order (the "Section 105 Motion") [D.I. 30], and the United States' Trustee's ("UST") Motion to Appoint a Chapter 11 Trustee [D.I. 34]. This Court granted the Cash Collateral Motion on an interim 2-week basis (the "Second Interim Cash Collateral Order") [D.I. 42] and denied all relief sought by the State. This Court also granted the UST's Motion to Appoint a Chapter 11 Trustee [D.I. 43]. The State requested that the Court stay the Debtors' use of cash collateral pending appeal, which the Bankruptcy Court considered and denied. The State immediately filed a Notice of Appeal [D.I. 36] to the District Court and a filed a Motion to Stay the Second Interim Cash Collateral Order pending the outcome of that appeal (the "Motion to Stay Pending Appeal") in the District Court.

8. The State further requested, and on April 10, 2013, the District Court granted, a "temporary stay" of the Second Interim Cash Collateral Order while the District Court took the State's Motion to Stay Pending Appeal under advisement (the "District Court Order") which the District Court anticipates deciding later today.

9. The Debtors immediately filed an Emergent Motion for Relief from the "temporary stay" in the Third Circuit Court of Appeals. The Third Circuit advised the Parties that it would wait until the District Court issued its decision on April 15, 2013 before taking the Debtors' appeal under advisement.

10. As a result of the District Court Order on April 10, the Debtors were forced to furlough all of their employees that afternoon. The Debtors face a dire and growing threat to their going concern value with each passing hour. The Debtors have received multiple expressions of interest from buyers seeking to purchase all or substantially all of the Debtors' assets. However, in order to quickly close a sale transaction, the Debtors need immediate use of cash collateral, on the terms authorized by this Court in the Second Interim Cash Collateral Order, to restore their business operations and preserve going concern value for all parties in interest. Access to the cash collateral will also enable the UST to immediately appoint a chapter 11 trustee.

11. The Parties have agreed to a resolution of their dispute over the Second Interim Cash Collateral Order on the terms set forth in the Settlement Agreement. The Settlement Agreement also provides for the pledge of additional collateral to Bank of America, the Debtors' secured lender, to address its adequate protection concerns.

**RELIEF REQUESTED**

12. By this Motion, the Debtors request entry of an Order, pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 9019, approving the Settlement Agreement.

13. The Debtors also request that the Order be effective immediately upon its entry notwithstanding any stay of effectiveness provided by Fed. R. Bankr. P. 6004(h) or otherwise.

14.     The Debtors also request that notice of the Motion be limited to (i) the State, (ii) Bank of America, the Debtors secured lender, and (iii) the Office of the United States Trustee.

## BASIS FOR RELIEF

15.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Bankruptcy Rule 9019(b) provides that the Court may "fix a class or classes of controversies and authorize the [debtor in possession] to compromise or settle controversies within such class or classes without further hearing or notice." Fed. R. Bankr. P. 9019(b).

16.     The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *In re Penn Central Transp. Co.*, 596 F.2d 1002 (3d Cir. 1979). Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. *In re Neshaminy Office Bldg. Assocs*, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." *See In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989). In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Penn Central Transp. Co.*, 596 F.2d at 1153; *see also In re Marvel Entm't Group, Inc*., 222 B.R. 243 (D. Del. 1998) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate'" (quoting *In re Louise's Inc*., 211 B.R. 798, 801 (D. Del. 1997)).

17. In particular, the Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved, namely: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

18. In deciding whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor. *Neshaminy*, 62 B.R. at 803. Nor should it decide the numerous questions of law or fact raised by litigation. Rather, it should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.,* 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc*., 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted)).

19. In the Debtors' judgment, the Settlement Agreement satisfies the standards set forth above because it is the only way for the Debtors to obtain the use of cash collateral on the emergent basis necessary to save the Debtors' businesses and going concern value, including the jobs of over 300 rank and file employees. Preserving the Debtors as a going concern will also benefit numerous ongoing public works projects throughout New Jersey, many related to recovery efforts from Hurricane Sandy. This Court has already noted on the record the serious risk to counties and municipalities if the Debtors cannot access their cash collateral. Transcript

of Hr'g., April 1, 2013, at p. 47:14-25—48:1. Approval of the Settlement Agreement will also remove a substantial barrier to the appointment of a Chapter 11 trustee — the present inability to use cash to operate.

## NOTICE

20. Notice of this Motion to: (i) the State, (ii) Bank of America, the Debtors secured lender, and (iii) the United States Trustee. In light of the nature of the relief requested, and under the circumstances, the Debtors submit that no further notice is required or needed.

## CONCLUSION

21. WHEREFORE, the Debtors respectfully request the Court to enter the Order, substantially in the form submitted with the Motion, granting the Motion and such other and further relief as is just and proper.

Respectfully submitted,

**GIBBONS P.C.**
*Proposed Counsel to the Debtors*

By: */s/ Mark B. Conlan*
Mark B. Conlan
Brett S. Theisen
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
Email: mconlan@gibbonslaw.com
Email: btheisen@gibbonslaw.com

Dated: April 15, 2013
Newark, New Jersey