# EXHIBIT "A"

May 2, 2013

**Via Email (ehstier@aol.com) & Mail**
Edwin H. Stier, Esq.
Chapter 11 Operating Trustee for
Birdsall Services Group, Inc.
611 Industrial Way West
Eatontown, NJ 07724

Re:    In re Birdsall Engineering Services Group, Inc.
       13-16743 (MBK)

Dear Mr. Stier:

This letter of intent (the "Letter of Intent") is submitted to you in your capacity as the Chapter 11 Trustee (the "Trustee") appointed in connection with the above referenced case, and sets forth the terms upon which Partner Assessment Corporation, proposes to acquire substantially all of the assets of Birdsall Services Group, Inc. ("Birdsall") in a transaction to be consummated pursuant to Section 363 of the United States Bankruptcy Code. By way of background, Partner Assessment Corporation is a national engineering firm that provides services similar to those of Birdsall and its familiarity with the business will allow it to move quickly to close a transaction, thus preserving value for Birdsall's creditors.

Partner Assessment Corporation is willing to negotiate a "stalking horse" contract with a subsequent auction process subject to higher and better offers and Bankruptcy Court approval and other applicable conditions as set forth in the United States Bankruptcy Code (the "Code") unless otherwise mutually waived by Partner Assessment Corporation and the Trustee (the "Parties"). The following are the terms of Partner Assessment Corporation's non-binding offer:

1.    Purchase and Sale of Assets. Partner Assessment Corporation shall acquire substantially all of the assets, rights and properties of Birdsall (excluding the Excluded Assets, as defined below) of every kind, nature and description (the "Acquired Assets"), free and clear of all liens, claims, encumbrances and interests pursuant to Section 363(f) of the Code, including, but not limited to:

- Accounts receivable;

- Work in Progress;

- Furniture, Fixtures and Equipment;

- Client and project files and records (including records Partner Assessment Corporation deems necessary to collect accounts receivable or complete work in process).

- All current and historical data including project data, maps, customer lists, customer data, and financial data;

- All Birdsall trademarks, logos, tradenames, business names, domain names and patents, including Birdsall, Birdsall Service Groups, Birdsall Engineering, Inc., Lynch, Giuliano and Associates, LGA, Morris Johnson and Associates (MJA), Di Stasio and Van Buren (DVB), PMK Group (PMK), CMX/Schoor Depalma, and CMX Inc. LLC.;

- Software licenses and subscriptions;

- Non-compete and non-solicitation agreements with current BSG shareholders as of the date of this agreement (if transferrable); and

- Other Current Assets and Other Non-current Assets.

The Acquired Assets shall include applicable assets of Birdsall's subsidiaries.

The Acquired Assets shall not include the following (the "Excluded Assets"):

- Those leases and executory contracts, the sale and assignment of which Partner Assessment Corporation has not, in its sole discretion, agreed to accept (the "Excluded Contracts");

- The books and records (including minute books, stock ledgers and tax returns) of Birdsall not related to the Acquired Assets;

- Cash and Equivalents;

- Shareholder Notes Receivable;

- Cash Surrender Value and all other value of Life Insurance Policies;

- Goodwill;

- All Claims against D&O insurance coverage;

- All claims against former employees or shareholders including non-competes and non-solicitation agreements for shareholders that have left the firm before the date of this agreement; and

- All Bankruptcy avoidance claims.

2.    Purchase Price.

(a)     The purchase price for the Acquired Assets shall be the sum of (A) $5.6 million in cash (the "Closing Date Purchase Price") payable at the closing of the transaction (the "Closing"), provided that the Closing occurs by the earlier of (i) not more than 30 days after the date, if any, that Partner Assessment Corporation waives the Due Diligence Condition (as defined below) or (ii) July 1, 2013, plus (B) the Contingent Net Revenue Payment and Contingent A/R Payment (as defined in paragraphs 2(b) and (c) below, respectively). Inasmuch as the proposed Closing Date Purchase Price is based upon an evaluation of Birdsall's balance sheet as of March 31, 2013, the Closing Date Purchase Price will be subject to adjustment on a dollar for dollar basis based upon any reduction or increase in accounts receivable and work in progress during the period between March 31, 2013 and the date of Closing, subject to a no-blood collar of +/- five hundred thousand dollars ($500,000).

(b)     Within thirty (30) days of the first (1st) anniversary of the Closing, Purchaser will make a payment to Seller equal to ten percent (10%) of the dollar amount of "Net Revenue" recorded by Partner Assessment Corporation, if any, during the twelve month period following the Closing (the "Contingent Net Revenue Payment"); provided, however, that in no event shall the Contingent Payment be less than $500,000 or more than $2,500,000. For purposes of this calculation, the term "Net Revenue" shall have the same meaning as in the Birdsall Income Statement as of December 31, 2012 and shall only include revenue generated as a result of new files opened with Partner Assessment Corporation by parties who were clients of Birdsall as of December 31, 2012 or new clients procured primarily through the efforts of former Birdsall employees hired by Partner Assessment Corporation during the period from the from the Closing Date through the first (1st) anniversary of the Closing.

(c)     Within thirty (30) days of the first (1st) anniversary of the Closing, Purchaser will make a payment to Seller equal to fifty percent (50%) of the dollar amount of "Accounts Receivable" above $10 million collected by Partner Assessment Corporation, if any, during the twelve month period following the Closing (the "Contingent A/R Payment")

The Contingent Net Revenue Payment (a) and Contingent A/R Payment (b) shall in no way be construed as an obligation to pay to the Trustee any percentage of revenue generated by Partner Assessment Corporation from any of the following Acquired Assets: (i) Accounts Receivable up to the first $10 million collected, (ii)Work In Process, (iii) Furniture, Fixtures & Equipment, (iv) Other Current Assets or (v) Other Non-Current Assets.

3.     Liabilities to be Assumed. Partner Assessment Corporation will assume liabilities arising under any assumed contracts and leases to the extent arising after the Closing. Other than liabilities under assumed contracts and leases, Partner Assessment Corporation will not assume any liability of Birdsall of any nature, including any tax liability associated with Birdsall's business and the Acquired Assets; however, Partner Assessment Corporation

will consider the assumption of certain vendor payments necessary to complete work in progress under assumed contracts.

4.     Employees. Effective upon the Closing, Partner Assessment Corporation will hire certain key employees of Birdsall.

5.     Due Diligence. The Trustee hereby agrees to allow and/or provide the Purchaser and its financial and legal representatives access at reasonable times to (a) all of Birdsall's facilities, management personnel, independent public accountants, financial and legal representatives, and (b) all of Birdsall's books and records. During the period expiring three (3) business days after the Trustee has provided access to Purchaser and its financial and legal representatives with access to the items described in clauses (a) and (b) above (the "Due Diligence Period"), Partner Assessment Corporation will conduct a due diligence investigation which shall include site visits, meetings with Birdsall management and review of Birdsall's books and records.

6.     Conditions and Consequences of Failure of Conditions.

(a)     The obligations of the Purchasers to consummate the transactions contemplated hereby is expressly subject to the satisfaction of the following conditions, each of which the Purchaser shall be entitled to waive in its sole discretion:

(i)     This Letter of Intent shall be signed by the Trustee on or before May 3, 2013;

(ii)     Partner Assessment Corporation shall be satisfied in all respects with the results of its due diligence investigation (the "Due Diligence Condition");

(iii)     Negotiation and execution of a definitive asset purchase agreement between the Trustee and Partner Assessment Corporation (the "Asset Purchase Agreement"), including therein such representations, warranties, covenants and closing conditions as shall be customary in a transaction of this type;

(iv)     The absence of any material adverse change in the Acquired Assets or Birdsall's business operations following the date of this Letter of Intent through Closing. For the avoidance of doubt, a the departure of one or more current shareholders, as of the date of this agreement, shall not constitute a material adverse change ; and

(v)     On or before May 31, 2013, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") shall have entered an order pursuant to Section 363 of the Bankruptcy Code, in form and substance satisfactory to the Partner Assessment Corporation, authorizing the Trustee to enter into the Asset Purchase Agreement confirming that Partner Assessment Corporation constitutes a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and authorizing

the transfer of the Acquired Assets to Partner Assessment Corporation free and clear of all liens, claims, charges, encumbrances and interests.

7.  Bidding Qualifications.  Within ten (10) days of the date that this Letter of Intent is executed by the Trustee, Partner Assessment Corporation shall provide the Trustee and his representatives proof of Partner Assessment Corporation's ability to consummate this transaction, which shall be held strictly confidential. Partner will provide a $100,000 deposit at the time it executes the Asset Purchase Agreement.

8.  Sale Procedures.  Promptly upon execution of this Letter of Intent, the Trustee shall file one or more motions with the Bankruptcy Court seeking entry of an order (the "Sale Order") that: (i) establishes a sale hearing date (the "Sale Hearing Date") no later than May 31, 2013; (ii) establishes deadlines and procedures (collectively the "Bidding Process") for the Trustee, Partner Assessment Corporation, and other interested parties to follow in completing due diligence, and negotiating the Asset Purchase Agreement, submitting competing bids for the Assets acceptable to the successful bidder; (iii) establishes minimum bidding increments of no less than $100,000 and (iv) approves a expense reimbursement/break-up fee of $200,000 payable to Partner Assessment Corporation in the event, and at the time, that all or a substantial portion of Birdsall's business or assets are sold, transferred, assigned or otherwise disposed of (including through the confirmation of a plan of reorganization), for any reason whatsoever, in a manner inconsistent with the terms of this Letter of Intent; provided that the failure of the transactions contemplated hereby are not the result of a material breach by Partner Assessment Corporation.  The Sale Order will establish bid procedures in form and substance reasonably acceptable to Partner Assessment Corporation and will provide that any competing bidders be required to submit to the Trustee no later than five (5) days prior to the Sale Hearing Date: (i) a purchase agreement similar to the Asset Purchase Agreement (with a markup showing the differences between the purchase agreement and the Asset Purchase Agreement) with a purchase price at least $300,000 higher than the Purchase Price; (ii) proof similar to that provided by Partner Assessment Corporation that the competing bidder is qualified to bid and (iii) a deposit of at least $300,000.

9.  Closing.  Provided that Partner Assessment Corporation is the successful bidder, the Trustee shall convey the Acquired Assets at Closing which shall be held no later than three (3) business days following the Sale Hearing Date provided that the Bankruptcy Court enters an order modifying the ten-day stay contained in Bankruptcy Rule 6004(g), failing which such date shall be on the first business day after the stay expires.

10.  Conduct of Business.  From the date of the execution by the Trustee of this Letter of Intent through Closing, the Trustee shall cause Birdsall to: (a) conduct its business and operations in the ordinary course in a manner consistent with reasonable business practices; (b) use its best efforts to maintain its respective business operations, employees, customers, and assets as an ongoing business operation as presently conducted; (c) not enter into any transaction with respect to impair, or place any lien on, any of the Acquired Assets; (d) assume or reject any contract, lease, or other agreement, or enter into any settlement, without the prior written consent of Partner Assessment Corporation, which consent shall not be unreasonably withheld.

5

11. <u>Fees and Expenses.</u> Except as otherwise contemplated in this Letter of Intent, each party agrees that it will pay its respective expenses (including fees and expenses of legal counsel, accountants, financial advisors, investment bankers and other representatives and consultants) in connection with the transactions contemplated hereby.

12. <u>Binding Effect.</u> Upon the Trustee's execution of this Letter of Intent, the Trustee agrees to use his best efforts to comply with the provisions of paragraphs 5, 8, 10, 11 and 14 hereof. All other provisions hereof represent the non-binding expressions of the intent of the parties hereto. The rights and obligations of the parties with respect to the acquisition of the Acquired Assets will only be set forth in the definitive Asset Purchase Agreement executed by Partner Assessment Corporation.

13. <u>Entire Agreement.</u> This Letter of Intent supersedes and replaces all prior understandings and agreements among the parties hereto relating to the subject matter hereof. Except as otherwise provided, this Letter of Intent shall not confer any rights or remedies (including, without limitation, any rights or remedies as a third-party beneficiary) upon any person or entity other than the parties hereto and their respective successors and assigns.

14. <u>Governing Law.</u> All questions concerning the construction, validity and interpretation of this Letter of Intent shall be governed by and construed in accordance with the domestic laws of the State of New Jersey, without giving effect to any choice of law or conflict of law provision (whether the State of New Jersey or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New Jersey. Each of the parties hereto hereby agrees to submit to the jurisdiction of the United States Bankruptcy Court for the District of New Jersey for the purposes of all disputes among the parties over which the Bankruptcy Court otherwise has subject matter jurisdiction arising out of this Letter of Intent.

15. <u>Counterparts.</u> This Letter of Intent may be executed in one or more counterparts (including execution by facsimile transmission if followed by overnight courier of original signatures), all of which taken together shall constitute one and the same instrument.

If this Letter of Intent is adequately acceptable to you, please evidence this agreement by signing and returning a copy of this Letter of Intent to Partner Assessment Corporation, 310-615-4544, (telecopy), attention: Joseph P. Derhake, President. This Letter of Intent will expire without further action by the Purchasers at 5:30 p.m. New Jersey time on May 31, 2013 if Partner Assessment Corporation has not received, at or prior to such time, a copy of this Letter of Intent signed by the Trustee.

We look forward to working with you to effectuate this transaction.

Sincerely,

Partner Assessment Corporation

By:
Name:   Joseph P. Derhake
Title:   President

THE UNDERSIGNED, IN HIS CAPACITY AS THE CHAPTER 11 TRUSTEE OF THE ABOVE REFERENCED DEBTORS, HEREBY AGREES TO AND ACCEPTS THE TERMS AND CONDITIONS OF THIS LETTER OF INTENT.

By:
Edwin H. Stier, Chapter 11 Trustee

cc: Daniel Stolz, Esq.

Docs #1271859-v2