# EXHIBIT "B"

| UNITED STATES BANKRUPTCY COURT |
|---|
| DISTRICT OF NEW JERSEY |
| Caption in Compliance with D.N.J. LBR 9004-2(c) |
| WASSERMAN, JURISTA & STOLZ, P.C. |
| 225 Millburn Avenue, Suite 207 |
| PO Box 1029 |
| Millburn, New Jersey 07041 |
| Tele: (973) 467-2700 / Fax: (973) 467-8126 |
| Proposed Counsel for Edwin H. Stier, |
| Chapter 11 Trustee |
| **DANIEL M. STOLZ (DS-1827)** |
| In Re: |
| **BIRDSALL SERVICES GROUP, INC.,** *et al.*, |
| Debtors. |

Case No.: 13-16743(MBK)

Honorable Michael B. Kaplan

Chapter: 11

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") that have been approved by the United States Bankruptcy Court for the District of New Jersey (the "**Court**") pursuant to that certain Order dated May ___, 2013 (the "**Bidding Procedures Order**") and which shall govern the bid procedures for the sale of those assets identified in the Asset Purchase Agreement between Partner Assessment Corporation (the "**Stalking Horse Bidder**"), as Purchaser, and Edwin H. Stier, Chapter 11 Trustee for Birdsall Services Group, Inc., as Seller, dated May ___, 2013 (the "**Stalking Horse Agreement**") and defined as the "**Purchased Assets**" and the transactions contemplated by the Stalking Horse Agreement.

I.  **Assets to Be Sold**

The assets to be offered for sale consists of those identified in the LOI and the Stalking Horse Agreement and defined as the "**Purchased Assets**" and are listed in the LOI and the Stalking Horse Agreement. The Purchased Assets shall include:

1

1. All Accounts Receivable and work in progress generated in connection with the Birdsall business through the closing date. Accounts Receivable shall mean accounts that have been invoiced by Birdsall on or before the date of closing which comport both with applicable terms of the contract between Birdsall and the client and with Birdsall's usual and customary practice. Partner and Birdsall acknowledge and agree that it is the intent of the parties that good and collectible Accounts Receivable convey to Partner at closing in the maximum amount feasible taking into consideration Birdsall's minimum cash requirements between the date hereof and closing. Birdsall agrees to manage its collection activities consistent with the forgoing and with its ordinary business practices. In no event shall Birdsall accelerate its collection activities or efforts for the purpose of accumulating surplus cash to be on hand at closing.

2. All past, present and prospective customers, customer lists, list of prospective customers, files and records and rights under client contracts and purchase orders (collectively, the "Client Contracts"), and any other tangible assets related to the Birdsall contracts.

3. All contracts, contract rights, service agreements, licenses, all business relationships related to the Birdsall business, including benefits of any existing non-compete and non-solicitation agreements or similar contractual arrangements.

4. All trademarks, copyrights and goodwill (including any trade names, the name "Birdsall Services Group," Birdsall Engineering, Inc., Lynch, Guiliano and Associates, LGA, Morris Johnson and Associates (MJA), DiStasio and Van Buren (DVB), PMK Group (PMK), CMX/Shoor Depalma, CMX, Inc. or other similar names used in the Birdsall business and goodwill associated with the Birdsall business).

5. All of the Birdsall business's rights to telephone numbers, domain names, website content, project history and all other intangible assets derived from and/or used in the Birdsall business.

6. All fixed assets of the Birdsall business used in connection with the business including vehicles, computer hardware and software, computer systems, furniture, furnishings, machinery, plant or other equipment and supplies.

7. All documents, computer and digital files, records, information and intellectual property rights related to the Birdsall business.

8. Other current Assets and other non-current Assets.

Excluded assets: The following assets are specifically excluded from the transaction:

1. Cash and cash equivalents

2

2. Shareholder notes receivable

3. Life insurance policies

4. All Claims against D&O insurance coverage

5. All claims existing as of May 2, 2013 against former employees or shareholders including non-competes and non-solicitation agreements for shareholders that have left the firm before the date of this agreement; and

6. All Bankruptcy avoidance claims.

## II. Provisions Governing Qualification of Bidders

As a prerequisite to becoming a Qualified Bidder (and thus being able to conduct due diligence), a potential bidder must:

(a) Deliver an executed confidentiality agreement in form and substance acceptable to the Trustee; and

(b) Provide such financial and other information (the "**Financial Information**") as the Trustee shall reasonably deem necessary to provide sufficient support for the ability of the potential bidder to consummate a transaction to purchase the Purchased Assets, if such potential bidder is selected as the Successful Bidder.

The Stalking Horse Bidder is deemed a Qualified Bidder and the StalkingHorse Agreement constitutes a Qualified Bid for all purposes.

## III. Access to Due Diligence Materials

The Trustee will afford Qualified Bidders the opportunity to conduct reasonable due diligence, subject to parameters that the Trustee, in consultation with its advisors, determine are business sensitive or otherwise not appropriate for disclosure to such Qualified Bidder in order to avoid disclosure of competitively sensitive or proprietary information that could be damaging to the value of the Debtors' estates if disclosed to a potential bidder in actual or potential

3

competition with the Debtors or strategically situated with respect to the Debtors as an actual or potential supplier or customer. The Trustee and its representatives and advisors shall not be obligated to furnish any due diligence information after the Bid Deadline. The Due Diligence Period shall extend through and including the Due Diligence Period shall expire at 5:00 p.m. on **May 30, 2013**.

### IV. Consideration of Bids

Without limiting the foregoing, but subject to the Stalking Horse Agreement, the Trustee may consider bids (each, a "**Bid**") for all of the Purchased Assets in a single bid from a single bidder or multiple bids from multiple bidders. The Trustee shall determine, the Successful Bidder (as defined below) based on, among other things, but not limited to, the assets purchased, the assumption of certain liabilities, the purchase price for the Purchased Assets, and the value to the estate and the other Bid Assessment Criteria (as defined below).

The Purchased Assets shall be sold pursuant to section 363 of the Bankruptcy Code free and clear of all liens and other interests in the Purchased Assets with certain exceptions, which exceptions are to be assumed to the extent so specified under the Stalking Horse Agreement, or satisfied at closing from the cash proceeds received in connection with the purchase of such Assets; provided that liens on any of the Purchased Assets shall attach to the proceeds of such Purchased Assets with the same validity, force, and effect.

### V. Marketing Process and Due Diligence

The Trustee has provided and will continue to provide confidential information regarding the Purchased Assets to potential purchasers (the "**Initial Information**"). Before receiving Initial Information, each potential purchaser must execute a confidentiality agreement, in a form satisfactory to the Trustee.

**VI. Bid Deadline**

All Bids must be served upon and actually received by the Trustee c/o Wasserman, Jurista & Stolz, P.C., Attn: Daniel M. Stolz, Esq., located at 225 Millburn Avenue, Suite 207, Millburn, New Jersey 07041, on or before 4:00 p.m. prevailing Eastern Time, on **May 31, 2013** (the "**Bid Deadline**").

**VII. Qualified Bid Requirements**

The Trustee will determine, in consultation with his professionals, and subject to the Bidding Procedures and the requirements below, whether a Bid is a Qualified Bid and, ultimately a Successful Bid (as these terms are defined below).

Any entity that desires to submit a Bid to purchase the Purchased Assets may do so in writing as follows:

(i) All Bids must state that the Qualified Bidder offers to purchase all or substantially all of the Purchased Assets, or a specified portion of the Purchased Assets, upon the terms and conditions substantially as set forth in the Stalking Horse Agreement or pursuant to an alternative structure that the Trustee determines, is no less favorable than the terms and conditions of the Stalking Horse Agreement, and provided further that the aggregate consideration offered by any bid or combination of bids for all or substantially all of the Debtors' assets satisfies the Initial Overbid requirements set forth below;

(ii) All Bids must be on terms that, in the Trustee's business judgment, are the same or better than the terms of the Stalking Horse Agreement.

(iii) All Bids must include a clean and duly executed asset purchase agreement, blacklined to show any changes from the Stalking Horse Agreement ("**Modified Purchase Agreement**"), clearly setting forth any conditions for closing and stating that the Bid is irrevocable as set forth below;

(iv) all Bids must propose a purchase price equal to or greater than the aggregate of the sum of (i) the actual cash value of the Stalking Horse Bid (as calculated by the Trustee), plus (ii) cash consideration in excess of $300,000.00 over the Stalking Horse Bid;

5

(v) the Bid must identify with particularity each and every unexpired lease or executory contract (each, an "**Assumed And Assigned Contract**") sought to be assumed and assigned, the assumption and assignment of which is a condition precedent to closing;

(vi) a Bid must clearly set forth the purchase price to be paid, and must not request or entitle such Qualified Bidder to any expense reimbursement, breakup fee, termination or other similar type of fee or payment except as to the Stalking Horse Bidder;

(vii) a Bid shall not be contingent upon any due diligence investigation, any permitting requirements (e.g. building permits, licenses, inspections, zoning, approvals, or certificates of any kind), any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(viii) a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit quality support or enhancement reasonably acceptable to the Trustee), sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, franchisor, bid partner, or other sponsor (each, a "**Sponsor**"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(ix) a Bid must contain such financial and/or other information that will allow the Trustee, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Stalking Horse Agreement

(x) a Bid must fully disclose the identity of the Qualified Bidder's organization, including confirmation that the competing Bid is made as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any);

(xi) a Bid must include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of such bidder's Modified Purchase Agreement;

(xii) a Bid must state that the bidder is willing and able to consummate and fund the proposed transaction by no later than July 1, 2013;

(xiii) a Bid must include a cashier's check or be accompanied by a wire transfer payable or delivered to the Trustee, or other agreed upon escrow agent, in

6

    an amount equal to $300,000.00 (the "**Good Faith Deposit**"); a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the Purchased Assets or with respect to any possible transaction involving the Debtors; and

 (xiv) a Bid must clearly state that it is irrevocable through the conclusion of the Sale Hearing, provided that if such bid is accepted as the Successful Bid or the Backup Bid (as defined below), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures, throughout the closing of the Sale.

Notwithstanding anything to the contrary in these Bidding Procedures, the Bid of the Successful Bidder (as defined below) must remain irrevocable in accordance with the terms of the Modified Purchase Agreement executed by the Successful Bidder. Except with respect to the Stalking Horse Bidder, all other Bids must be irrevocable until the earlier to occur of (a) 25 days after entry of a Sale Order (as defined below) approving the sale of all or substantially all of the Debtors' assets and (b) closing of the sale of all or substantially all of the Debtors' assets in accordance with the Successful Bid (as defined below).

Notwithstanding anything to the contrary in these Bidding Procedures, the Trustee reserves the right, to reject any and all Bids, including Qualified Bids (other than the Qualified Bid of the Stalking Horse Bidder).

**VIII. The Auction**

If one or more Qualified Bids (other than the Stalking Horse Agreement submitted by the Stalking Horse Bidder) are received by the Bid Deadline, the Trustee will conduct an auction (the "**Auction**") to determine the highest and best Qualified Bid. This determination shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid to the estate, including, among other things, the following: (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to any asset purchase agreement

7

requested by each bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Debtors' Assets and the cost to the Debtors' estates of such modifications or delay; (d) the total consideration to be received by the Debtors; (e) the likelihood of the bidder's ability to close a transaction and the timing thereof; (f) the net benefit to the estate, taking into account the Stalking Horse Bidder's rights to the Stalking Horse Protections; (g) the impact of the transaction on any actual or potential litigation; and (h) the net after-tax consideration to be received by the Debtors' estates (collectively, the "**Bid Assessment Criteria**"). Unless otherwise agreed to by the Trustee, only Qualified Bidders may participate in the Auction.

If an Auction is held, it will be conducted on **June 4, 2013** at 10:00 a.m. prevailing Eastern Time (the "**Auction Date**") at the offices of Wasserman, Jurista & Stolz, P.C., located at 225 Millburn Avenue, Suite 207, Millburn, New Jersey 07041, and shall be conducted according to the following procedures:

1. **The Trustee Shall Conduct the Auction.**

The Trustee and his professionals shall direct and preside over the Auction. The Auction shall be recorded by video tape. At the start of the Auction, the Trustee shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline (the "**Auction Baseline Bid**"). Each Qualified Bidder participating in the Auction must again confirm that it has not engaged in any collusion with respect to the bidding or sale of the Assets.

2. **Terms of Overbids.**

An "**Overbid**" is any bid made at the Auction subsequent to the Trustee's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

a. **Minimum Overbid Increment.**

8

An Overbid after the Auction Baseline Bid shall be made in an initial minimum increment of $100,000 and minimum Overbid increments of not less than $100,000.

**b.    Remaining Terms Are the Same as for Qualified Bids.**

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Trustee accepts a higher Overbid.

To the extent not previously provided (which shall be determined by the Trustee), a Bidder submitting an Overbid (other than the Stalking Horse Bidder) must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Trustee) demonstrating such Bidder's ability to close all proposed transactions contemplated in and proposed by such Overbid.

**c.    Announcing Overbids.**

The Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

**d.    Consideration of Overbids.**

The Trustee reserves the right, in its reasonable business judgment to make one or more continuances of the Auction over the course of the day to, among other things: facilitate discussions between the Trustee and individual bidders; allow individual bidders to consider how they wish to proceed; and give bidders the opportunity to provide the Trustee with such additional evidence as the Trustee in his reasonable business judgment may require that the bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or

equity funding commitments, to consummate the proposed competing transaction represented by the Overbid at the prevailing Overbid amount.

At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Trustee, in consultation with his professionals (the "**Successful Bid or Bids**"), and the backup Bid or Bids shall be selected and announced by the Trustee, (the "**Backup Bid or Bids**").

Within 24 hours of completion of the Auction, the entity or entities that made the Successful Bid or Bids (the "**Successful Bidder**") and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Backup Bid or Bids were made.

If no Qualified Bids are received for the Purchased Assets, the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Purchased Assets, and the Trustee shall seek Court approval of the Stalking Horse Agreement without offering the Purchased Assets for sale at the Auction.

The Auction may be adjourned or canceled as the Trustee deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants.

### IX. Selection of Successful Bid or Bids

The Trustee reserves the right, to base the selection of the Successful Bid and Backup Bid (as defined below) on the Bid Assessment Criteria, among others. Except with respect to the Bid of the Stalking Horse Bidder set forth in the Stalking Horse Agreement, the Trustee may, (a) reject any Bid (other than the Stalking Horse Bid) that is (i) inadequate or insufficient, (ii) not in

conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and/or (b) refuse to consider any Bid (other than the Stalking Horse Bid) that fails to comply with the Bidding Procedures or any other procedures established by the Trustee.

Within twenty four hours after conclusion of the Auction, the Trustee shall file a notice identifying the Successful Bidder with the Bankruptcy Court.

X. **Backup Bids**

If the Successful Bidder fails to consummate the sale, breaches the applicable asset purchase agreement or otherwise fails to perform, the Trustee may consummate the proposed sale with the next highest or best bidder at the Auction (i.e., the Backup Bidder, which hereafter shall be included in the definition of "**Successful Bidder**") without the need for further Court approval.

XI. **Damages for Failure to Close**

If the Successful Bidder fails to consummate the sale in accordance with the terms of its Successful Bid and applicable asset purchase agreement: (a) the Trustee will retain the Deposit of such bidder, to the extent provided by the applicable asset purchase agreement, and (b) the Trustee will maintain the right to pursue all available remedies against such bidder, to the extent provided by the applicable asset purchase agreement.

Notwithstanding anything to the contrary in these procedures, the Deposit of the Successful Bidder will be retained and credited against the purchase price by the Trustee in accordance with the terms of the applicable asset purchase agreement executed by the Successful Bidder. Deposits of all other bidders (other than the Stalking Horse Bidder) will be retained by

the Trustee until the earlier to occur of (i) twenty-five days after entry of a Sale Order approving the sale of the Assets or (ii) closing of the sale of Assets in accordance with the Successful Bid.

XII.    **Sale Hearing**

A hearing with respect to the Sale Motion will be conducted by the Court on **June 5, 2013**, at 2:00 p.m. prevailing Eastern Time (the "**Sale Hearing**"). At the Sale Hearing, the Trustee will request that the Court enter an order (the "**Sale Order**"): (1) approving (a) the Successful Bid(s), (b) the applicable asset purchase agreement(s), and (c) the proposed assumption and assignment of any Assumed Agreements, and (2) authorizing the Trustee to consummate the proposed transactions. At the Sale Hearing, the Court shall also determine: any Cure Amount required under 11 U.S.C. §365(b) with regard to any contract to be assumed and assigned, and if applicable, whether the Trustee has demonstrated adequate assurance of future performance under 11 U.S.C. § 365.

XIII.    **"As Is, Where Is"**

The proposed transfer of any of the Purchased Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Trustee, its agents or estates, except to the extent set forth in the applicable asset purchase agreement of the Successful Bidder as accepted by the Trustee and approved by the Court. Except as otherwise provided in an applicable asset purchase agreement, all of the Trustee's rights, title and interest in and to the respective Assets will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with section 363 of the Bankruptcy Code. Any other claim, lien, charges or encumbrance, as set forth in the applicable asset purchase agreement, will attach to the net proceeds of the sale of the particular Asset.

Each bidder for any of the Purchased Assets will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct such due diligence regarding the Purchased Assets prior to making its offer as provided in the applicable asset purchase agreement, (b) has relied solely upon its own independent review, investigation and/or inspection of any document including, without limitation, executory contracts and unexpired leases in making its Bid, and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Purchased Assets, or the completeness of any information provided in connection with the Asset sale or the Auction, except as expressly stated in the particular asset purchase agreement.

## XIV. Reservation of Rights

Notwithstanding the Trustee's determination of a Stalking Horse Bidder and/or receipt of any Qualified Bids for any particular Asset, the Trustee may continue to negotiate and solicit Bids. Formal approval of a Bid will not occur unless and until the Court enters an order approving the applicable asset purchase agreement and authorizing the Trustee to consummate the applicable transactions.

The Trustee reserves the right to implement additional procedural rules, provided such additional rules do not prejudice or adversely affect the Stalking Horse Bidder and are not inconsistent with the Bidding Procedures Order, these Bidding Procedures and the Stalking Horse Agreement.