| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br>WINDELS MARX LANE & MITTENDORF, LLP<br>120 Albany Street Plaza, 6th Floor<br>New Brunswick, New Jersey 08901<br>Tel. (732) 846-7600 / Fax. (732) 846-8877<br>Jay Samuels<br>             - and –<br>WINDELS MARX LANE & MITTENDORF, LLP<br>156 West 56th Street<br>New York, New York 10019<br>Tel. (212) 237-1000 / Fax. (212) 262-1215<br>Alan Nisselson (Pro hac vice application pending)<br>Leslie S. Barr (Pro hac vice application pending)<br><br>*Proposed Counsel for The Official Committee of Unsecured Creditors* | |
| In re<br><br>BIRDSALL SERVICES GROUP, INC., *et al.*,<br><br>             Debtors. | Case No.: 13-16743<br><br>Judge:  The Honorable Michael B. Kaplan<br><br>Chapter: 11 |

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION
TO SELL SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

TO THE HONORABLE MICHAEL B. KAPLAN,
UNITED STATES BANKRUPTCY JUDGE:

      The Official Committee of Unsecured Creditors (the "**Committee**") for the chapter 11 debtors Birdsall Services Group, Inc. ("**BSG**") and BSG Engineering, Surveying & Landscape Architecture, LLC ("**BSG Engineering**", and together with BSG, the "**Debtors**"), by its undersigned proposed counsel, Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**"), files this Response in support of the motion dated May 3, 2013 of Edwin H. Stier (the "**Trustee**"), chapter 11 trustee for the Debtors' estates, to sell substantially all of the Debtors' assets (the "**Motion**"), and respectfully represents as follows:

{40449993:1}

**Preliminary Statement**

1. Upon careful review of the Motion and record of this case, and after discussions with the Trustee and his professionals, the Committee agrees with the Trustee that the best interests of creditors and the estates will be served by an expedited auction sale of substantially all of the Debtors' assets. The circumstances that compelled the Debtors' emergency filings for bankruptcy relief continued post-petition to compel the expeditious liquidation of the Debtors' assets. The criminal convictions and pending and potential criminal cases against the Debtors' key employees and principals and the consequent economic disruptions to Debtors' operations has caused great insecurity to the Debtors' employees, clients and customers. The immediate sale of all assets is the best available option to preserve value for the Debtors' estates and creditors.

**Background**

2. In brief, the following facts appear from documents filed with the Court.

3. In or about February 2012, the State of New Jersey Division of Criminal Justice Corruption Bureau (the "**State**") began investigating allegations involving unlawful campaign contributions by BSG, its shareholders, and executives. Four member of BSG's Board of Directors were later indicted.

4. On November 1, 2012, Howard Birdsall retired as BSG's CEO and later relinquished all of his shares of BSG stock.

5. On or about November 20, 2012, Philip Angarone, the former Director of Marketing for BSG between 2008 and July 2012, pled guilty to Tampering with Public Records, and violating Corporate Contributions through Employees.

6. On December 11, 2012, the State obtained an indictment charging Thomas Rospos, BSG's former executive vice-president, with second degree counts of conspiracy, money laundering, making false representations for government contracts, misconduct by a corporate official, tampering with public records or information, falsifying records, prohibited corporation contributions through employees, and concealment or misrepresentation of contributions.

7. On or about February 13, 2013, Eileen Kuhfahl, a former secretary and Marketing Manager of BSG from 2002 – 2011, pled guilty to violating Corporate Contributions through Employees.

8. On March 26, 2013, the State obtained a nine count superseding indictment against BSG and seven of its executives on charges that between January 1, 2006 and May 31, 2012, they conspired in a scheme to avoid the restrictions of the State's Pay-to-Play Act by disguising unlawful corporate political contributions as personal contributions of employees of the BSG.

9. Also on March 26, 2013, in a separate civil action, the State obtained an Order to Seize and Restrain Property from the Superior Court of New Jersey, Law Division, which applied to any and all assets of BSG, including its bank accounts, as property subject to forfeiture.

10. On March 29, 2013, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors also filed several first day motions on that date, including a motion requesting authority to use cash collateral.

11. On March 31, 2013, the State filed an objection to the first day motions and cross moved to dismiss the Debtors' bankruptcy cases. Among other things, the State argued that

all of the Debtors' assets had been forfeited under the Order to Seize and Restrain Property and there were no assets of the estate to administer in the bankruptcy cases. The Bankruptcy Court denied that cross motion by order entered on April 8, 2013. The State filed a notice of appeal.

12.  The District Court temporarily stayed the Debtors' use of cash collateral previously granted by the Bankruptcy Court, which resulted in the furlough of the Debtors' employees.

13.  On April 15, 2013, an Order was entered approving a settlement between the State and the Debtors (the "**Settlement**") that, *inter alia*, resolved the State's civil forfeiture claim by granting it a judgment in the amount of $2.6 million in exchange for a release of such claim, created an escrow account up to $1 million for the satisfaction of any fines, penalties, or restitution claims against the Debtors arising out of the criminal action, authorized the estate to use cash collateral of Bank of America ("**BofA**") and granted to BofA adequate protection. As part of the settlement, the appeal was dismissed by stipulation and order entered by the District Court on April 17, 2013.

14.  On April 7, 2013, the Office of the United States Trustee ("**US Trustee**") filed a motion for the appointment of a chapter 11 trustee for the Debtors' estates. The US Trustee stated in its motion, among other things, that "...a chapter 11 trustee is mandated in light of the alleged criminal activity by the Debtors under the leadership of the indicted former officers and directors." The Bankruptcy Court granted that motion by order entered on April 8, 2013.

15.  On April 15, 2013, the US Trustee filed a Notice of Appointment of the Trustee. On April 16, 2013, the Court entered an Order approving the Trustee's appointment.

16.  On May 1, 2013, the Trustee filed a motion seeking authority for the Debtors to provide retention bonus distributions to certain key employees. In the motion, the Trustee

stated that due to the Debtors' difficulties and the uncertain future and insecurity felt by the employees, a number of employees had resigned and were contemplating resigning. The Trustee stated that the employees and the client contacts make up the vast majority of the total value of the Debtors' assets, which he had agreed in the Settlement would be sold as a going concern. The Trustee therefore proposed making distributions to certain key employees who remain with the Debtors through June 15, 2013. On May 6, 2013, the Court entered an Order granting the motion.

17. Pursuant to the terms of the Settlement, it was contemplated that the Trustee would sell the assets of the Debtors as a going concern within 120 days of the effective date of the Settlement. The Trustee certified in support of the motion to pay key employee bonuses that criminal indictments, employee furloughs, negative publicity, and the continued pressure by the State for debarment of the Debtors and the revocation of the Debtors' charters, the hesitancy of the Debtors' customers to continue with prepetition contracts or to commit to further business with the Debtors, and the threat that employees will find other employment compel the sale of the Debtors as a going concern.

18. Accordingly, on May 3, 2013, the Trustee filed the Motion, seeking an Order approving bidding procedures, scheduling a hearing to consider approving the sale of substantially all of the Debtors' assets and other related relief. According to the Motion, Partner Assessment Corporation ("**Partner**") offered to acquire the Debtors' assets for (i) an initial cash payment of $5,600,000, adjusted up or down by as much as $500,000 based on the changes to the accounts receivable and work in process between March 31, 2013 and closing; (ii) a "Contingent Revenue Net Payment" comprised of 10% of revenue generated by new files opened by Partner with existing Debtor clients as of December 31, 2012 or procured primarily

through the Debtors' employees hired by Partner, in an amount not less than $500,000 or more than $2,500,000; and (iii) payment of 50% of accounts receivable collected within one year after closing, in excess of $10 million. Other terms include Bankruptcy Court approval by May 31, 2013, and "stalking horse bidder protections", including a break-up fee of $200,000.

19. On May 3, 2013, the Court entered an Order approving bidding procedures, notice of auction sale, scheduling the sale approval hearing and granting related relief. Qualifying competing bids are due by May 30, 2013, and the auction will be held on June 4, 2013 at the offices of Trustee's counsel, Wasserman, Jurista in Millburn, New Jersey. Objections to the Motion must be filed and served on or before June 3, 2013. The Court will conduct the sale approval hearing on June 5, 2013 at 2:00 p.m.

## Response in Support of Motion

20. The exigent circumstances of these cases are sufficiently dire to justify the immediate liquidation of the Debtors' assets in the best manner possible. As the Trustee states in the Motion, "[t]he cumulative impact of the indictments, the freezing of the (Debtors') accounts, furloughs (of employees) and Chapter 11 filings had been so catastrophic that it is the Trustee's estimation, that absent an immediate sale of the company assets, the damage cannot be repaired." *See* Motion at paragraph 12. It is beyond cavil that the sale of an ongoing enterprise will yield more than the liquidation of its assets. Nor, as the Trustee's filing indicates, is continued operation of the Debtors as stand-alone entities a viable manner of creating value to pay creditors. Absent a sale of the enterprise, the Debtors' business will likely suffer, and the Trustee's ability to monetize a higher-valued ongoing enterprise will be lost forever. Maintaining operations for the short term pending a prompt sale is the best way to monetize the Debtors' assets for highest or best value for the benefit of creditors. Maintaining employee and customer

loyalty as a necessary prerequisite will become increasingly difficult, if not impossible, as time passes. The exigent circumstances described above, and the State's demand to debar the Debtors from conducting business, have thus strained the Trustee's ability to continue to maintain the goodwill and loyalty of the Debtors' employees and customers in order to sell the business enterprise.

21. All of the foregoing constitutes sound reason and good cause to grant the Motion and the Trustee's request for the immediate sale of substantially all of the Debtors' assets. The Committee fully supports the Trustee's efforts to expedite the sale of substantially all of the Debtors' assets as an ongoing business. The Committee further believes that the 'stalking horse' offer made by Partner are the best terms available to date for the sale of the Debtors' assets and should be approved.

22. No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Committee respectfully requests that the Court enter an Order granting the Motion, authorizing the Trustee to sell substantially all of the Debtors' assets pursuant to the approved procedures, and granting such other and further relief as is just.

Dated: June 3, 2013

        WINDELS MARX LANE & MITTENDORF, LLP

By: _____/s/_____
Jay Samuels
120 Albany Street Plaza, 6th Floor
New Brunswick, New Jersey 08901
Tel. (732) 846-7600 / Fax. (732) 846-8877

- and –

WINDELS MARX LANE & MITTENDORF, LLP

By: _____/s/_____
Alan Nisselson (Pro hac vice application pending)
Leslie S. Barr (Pro hac vice application pending)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215