Order Filed on
**06/07/2013**
by Clerk U.S. Bankruptcy
Court District of New Jersey

**UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

WASSERMAN, JURISTA & STOLZ, P.C.
225 Millburn Avenue, Suite 207
PO Box 1029
Millburn, New Jersey  07041
Tele: (973) 467-2700 / Fax:  (973) 467-8126
Counsel for Edwin H. Stier, Chapter 11 Trustee
**DANIEL M. STOLZ (DS-1827)**

In Re:

**BIRDSALL SERVICES GROUP, INC.,** *et al.,*

                Debtors.

Case No.: 13-16743(MBK)

Honorable Michael B. Kaplan

Chapter: 11

**ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH PARTNER ASSESSMENT CORPORATION AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

The relief set forth on the following pages, numbered two (2) through nineteen (19), is hereby

**ORDERED**.

**DATED: 06/07/2013**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Page(2)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

Upon the motion of the Chapter 11 Trustee (the "*Trustee*") on behalf of the Bankruptcy Estate of Birdsall Services Group, Inc., et al. (the "*Debtors*"), (the "*Sale Motion*"), for an order (the "*Sale Order*") under 11 U.S.C. §§ 105, 363 and 1146(c) and Bankruptcy Rule 9019 authorizing the Trustee to sell the Debtors' Assets free and clear of all liens, claims, interests and encumbrances to Partner Assessment Corporation (the "*Buyer*") or its assignee pursuant to the terms and conditions of an Asset Purchase Agreement, dated as of <u>May 24, 2013</u> and annexed hereto as Exhibit A (the "*Asset Purchase Agreement*")[1]; and

Upon this Court's prior order dated <u>May 20, 2013</u> (the "*Bidding Procedures Order*"), scheduling a hearing with respect to the sale of the Assets, prescribing the form and manner of notice thereof, and approving certain auction procedures including the terms and conditions of sale and bidding for the Assets (the "*Bidding Procedures*"); and

Due notice of the proposed sale, the Bidding Procedures Order, the Sale Approval Hearing (as defined below), and the assumption and assignment of the Assumed Contracts and the rejection of the Rejected Contracts having been given to all parties entitled thereto under the Bidding Procedures Order, as evidenced by the certification of service filed with this Court (the "*Certification of Service*"); and

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Asset Purchase Agreement.

*Approved by Judge Michael Kaplan June  07, 2013*

Page(3)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

A hearing having been held before this Court on June 5, 2013 to consider the sale

of the Assets (the "*Sale Approval Hearing*"), at which time all parties in interest were afforded

an opportunity to be heard; and the Court having heard testimony by way of proffer from Trustee

Edwin Stier and Bruce Craig and received evidence in support of approval of the sale of the

Assets;

NOW, THEREFORE, based upon the Court's review of the proofs provided in

support of this Sale Motion; and upon all of the evidence proffered or adduced at, memoranda

and objections, if any, filed in connection with, and arguments of counsel made at the Sale

Approval Hearing; and upon the entire record of the Sale Approval Hearing and this case; and

after due deliberation thereon; and good cause appearing therefore;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

1.      This Court has jurisdiction to hear and determine the Motion pursuant to

28 U.S.C. §§ 157 and 1334.

2.      Venue of this case in this district is proper pursuant to 28 U.S.C.

§ 1409(a).

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be
construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

*Approved by Judge Michael Kaplan June  07, 2013*

Page(4)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

3.     Determination of the Sale Motion is a core proceeding under 28 U.S.C.

§§ 157(b)(2)(A) and (N).  The statutory predicates for the relief requested herein are sections

105, 363 and 1146(c) of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* as amended

(the "*Bankruptcy Code*") and Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*")

2002, 6004, 6006, and 9019.

4.     The Trustee has followed the procedures for giving notice of the Sale

Motion and the Sale Approval Hearing on the sale of the Assets as set forth in the Bidding

Procedures Order.

5.     Proper, timely, adequate and sufficient notice of the Sale Motion, the Sale

Approval Hearing and the sale of the Assets has been provided in accordance with section 102(1)

of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9019 and the Bidding

Procedures Order, and no other or further notice of the Sale Motion, the Sale Hearing or the

entry of this Sale Order is required.

6.     A reasonable opportunity to object or be heard regarding the relief

requested in the Sale Motion has been afforded to all interested persons and entities, including

(a) the Office of the United States Trustee for the District of New Jersey; (b) counsel for the

State of New Jersey; (c) counsel to Bank of America, N.A. ("Bank of America"); (d) counsel to

the Stalking Horse Bidder; (e) counsel for the unsecured creditors' committee; (f) all other

Page(5)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Assets; (g) all Federal, State and local regulatory or taxing authorities that are reasonably known by the Trustee to have an interest in the relief requested by the Sale Motion; (h) all parties known by the Trustee to have expressed a bone fide interest in acquiring the Assets; (i) the Internal Revenue Service; (j) the United States Attorney's Office; (k) all entities who have filed a notice of appearance and request for service of papers in the Debtors' cases.

7.      It is uncontroverted that (a) the Trustee has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and the sale of the Assets by the Trustee has been duly and validly authorized by all necessary corporate action of the Debtors, (b) the Trustee has all the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement and (c) no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Trustee to consummate such transactions.

8.      The sale of the Assets reflects the exercise of the Trustee's sound business judgment.  The sale of the Assets is further justified by the compelling circumstances described in the Sale Motion.

9.      Approval of the Asset Purchase Agreement and consummation of the sale of the Assets at this time are in the best interests of the Debtors, their creditors and the estate.

Page(6)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

The Court finds that the Trustee has articulated good and sufficient business justification for the sale of the Assets pursuant to section 363(b) of the Bankruptcy Code outside of a plan of liquidation in that, among other things:

    a.   In the absence of a prompt sale of the Assets, their value will steadily decline because of a number of factors;

    b.   A sale pursuant to section 363(b) is likely to produce a greater return to creditors in the Debtors' cases than if the Assets were sold in connection with a plan of liquidation, because the unavoidable delay and expense required to confirm such a plan would deprive the Debtors' estate of the opportunity to realize the maximum value of the Assets available through an immediate sale;

    c.   Claims against the Debtor's estate will be minimized as a result of the prompt consummation of a sale of the Assets, and the future assumption and assignment of contracts;

    d.   A sale to the Buyer of the Assets at this time will result in the highest possible sale price; and

    e.   Unless a sale to the Buyer is concluded expeditiously as provided for in the Sale Motion and under the Asset Purchase Agreement, (i) the value of the Assets will

*Approved by Judge Michael Kaplan June  07, 2013*

Page(7)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

decline precipitously and (ii) the Debtors, their estates and their creditors may realize substantially less value for the Assets.

10.    The terms and conditions of the Asset Purchase Agreement are fair and reasonable. The Asset Purchase Agreement represents the highest and best offer for the Assets, and the Purchase Price is fair and reasonable, and constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law.

11.    The Asset Purchase Agreement was negotiated, proposed and entered into by the parties without collusion, in good faith, and from arm's length bargaining positions. The Buyer is a good faith Buyer under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby.  Neither the Trustee, nor the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

12.    In the absence of a stay pending appeal, the Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Asset Purchase Agreement at any time after the entry of this Sale Order.

13.    The transfer of the Assets will be legal, valid and effective transfers of property of the Debtors' estates to the Buyer, and (b)  will vest the Buyer with all right, title, and interest of the Debtors in and to the Assets free and clear of all liens, claims, interests, and

Page(8)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

encumbrances under section 363(f) of the Bankruptcy Code with such liens, claims, interests and encumbrances to attach to the sale proceeds and to be satisfied as set forth in decretal par. 11 hereof.

14.    All amounts, if any, to be paid by the Debtors pursuant to the Asset Purchase Agreement constitute administrative expenses under sections 503(b) and 507(a)(1) of the Bankruptcy Code and are immediately payable if and when the Debtors obligations arise under the Asset Purchase Agreement without further order of the Court.

15.    The transfer of the Assets does not and will not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors, any affiliate of the Debtors, or any other person by reason of such transfers, except as expressly provided in the Asset Purchase Agreement.

16.    All of the provisions of this Sale Order and the Asset Purchase Agreement are nonseverable and mutually dependent.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Sale Motion is granted.

Page(9)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

2.      All objections, if any, to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.      The terms and conditions and transactions contemplated by the Asset Purchase Agreement are hereby approved in all respects, and the sale of the Assets pursuant to the Asset Purchase Agreement are hereby authorized and directed under section 363(b) of the Bankruptcy Code.

4.      Pursuant to sections 363(b) of the Bankruptcy Code, the Trustee is hereby authorized, directed and empowered to fully perform under, consummate and implement the Asset Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Assets, or as may be necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement.

5.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Assets shall be transferred to the Buyer and upon the closing under the Asset Purchase Agreement shall be free and clear of all mortgages, security interests, conditional sale or other title retention

*Approved by Judge Michael Kaplan June  07, 2013*

Page(10)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

agreements, pledges, liens, judgments, demands, encumbrances, easements, restrictions or

charges of any kind or nature, if any, including, but not limited to, any restriction on the use,

voting, transfer, receipt of income or other exercise of any attributes of ownership (the foregoing

collectively referred to as "*Liens*" herein) and all debts arising in any way in connection with any

acts of the Debtor, claims (as that term is defined in the Bankruptcy Code), setoffs, claims of

recoupment, obligations, demands, guaranties, options, rights, contractual commitments,

restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent

to the commencement of these cases, and whether imposed by agreement, understanding, law,

equity or otherwise (the foregoing collectively referred to as "*Claims*" herein), with all such

Liens and Claims to attach to the Purchase Price in the order of their priority, with the same

validity, force and effect which they now have as against the Assets.

6.      Except as expressly permitted by the Asset Purchase Agreement, all

persons and entities holding Liens or Claims of any kind and nature with respect to the Assets

hereby are barred from asserting such Liens and Claims of any kind and nature against the

Buyer, its successors or assigns, or the Assets including, but not limited to, claims of setoff or

recoupment.

7.      Except as provided in the Asset Purchase Agreement, the Buyer is not

assuming nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise,

for any liabilities, debts or obligations of the Debtors or any liabilities, debts or obligations in

Page(11)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

any way whatsoever relating to or arising from the assets or the Debtors operation or use of the

assets including, without limitation, the contracts to be assumed or rejected, prior to

consummation of the transactions contemplated by the Asset Purchase Agreement, or any

liabilities calculable by reference to the Debtors or their assets or operations, or relating to

continuing conditions existing on or prior to consummation of the transactions contemplated by

the Asset Purchase Agreement, which liabilities, debts and obligations are hereby extinguished

insofar as they may give rise to successor liability, without regard to whether the claimant

asserting any such liabilities, debts or obligations has delivered to buyer a release thereof.

Without limiting the generality of the foregoing, except as provided in the Asset

Purchase Agreement, the Buyer shall not be liable or responsible, as a successor or otherwise, for

the Debtors' liabilities, debts or obligations, whether calculable by reference to the Debtors or

their operations, or under or in connection with (i) any employment or labor agreements, (ii) any

pension, welfare compensation or other employee benefit plans, agreements, practices and

programs including, without limitation, any pension plan of the Debtor, (iii) the cessation of the

Debtors' operations, dismissal of employees, or termination of employment or labor agreements

or pension, welfare, compensation or other employee benefit plans, agreements, practices and

programs, obligations which might otherwise arise or pursuant to Employee Retirement Income

Security Act of 1974, as amended, Fair Labor Standards Act, Title VII of Civil Rights Act of

1964, the Age Discrimination and Employment Act of 1967, Federal Rehabilitation Act of 1973,

*Approved by Judge Michael Kaplan June  07, 2013*

Page(12)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

National Labor Relations Act, or Consolidated Omnibus Budget Reconciliation Act of 1985, (iv) Workmen's Compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes) which may be asserted on any basis including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. section 9601 *et. seq.*, (vi) any bulk sales or similar law, (vii) any tax statutes or ordinances including, without limitation, the Internal Revenue Code of 1986, as amended, and (viii) any products liability or similar claims whether pursuant to any state or any federal laws or otherwise.

8.    The recitation, in the immediately preceding paragraph of this Sale Order, of specific agreements, plans or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts or obligations referred to therein.

9.    No person or entity including, without limitation, any federal, state or local governmental agency, department or instrumentality, shall assert against the Buyer or its successors in interest any liability, debt or obligation relating to or arising from the Assets or the Debtors' operations or use of the Assets including, without limitation, any executory contracts to be assumed or rejected, or any liabilities calculable by reference to the Debtors or their assets or

Page(13)

Debtors:  Birdsall Services Group, Inc., et al.

Case No.  13-16743(MBK)

Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

operations, and all persons and entities are hereby enjoined from asserting any such liabilities, debts or obligations against the Buyer.

10.    On and after the date of the Buyer's payment to the Trustee of the Purchase Price as required by the Asset Purchase Agreement (the "*Closing Date*"), each of the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens on or Claims, if any, against the Assets, as such Liens or Claims may have been recorded or may otherwise exist.

11.    Notwithstanding anything set forth in the Asset Purchase Agreement or this Sale Order to the contrary, all Liens and Claims against the Debtors held by Bank of America shall be satisfied in full as soon as practical after the Closing Date in an amount agreed to by Bank of America, the Trustee and the Unsecured Creditors' Committee or otherwise by order of this Court.  The Trustee shall use his best efforts to deliver payment to Bank of America prior to June 28, 2013.

12.    As to the Asset Purchase Agreement and the Assets transferred thereby, this Sale Order (a) is and shall be effective as a determination that, on the Closing Date, all Liens existing as to the Assets prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyance described in Asset Purchase Agreement has been effected, and (b) is and shall be binding upon and govern the acts of all entities including,

Page(14)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

13.    If any person or entity that has filed financing statements or other documents or agreements evidencing Liens on or interests in the Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens or other interests which the person or entity has with respect to the Assets, the Trustee is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets.

14.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of said Assets to the Buyer on the Closing Date.

*Approved by Judge Michael Kaplan June  07, 2013*

Page(15)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES

---

15.    Each and every federal, state, and local governmental agency or department hereby is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

16.    As of the Closing Date, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended and/or modified to the extent required to permit the consummation of the transactions contemplated by the Asset Purchase Agreement including, without limitation, the transfer of the Assets to the Buyer.

17.    This Court retains jurisdiction (i) to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, (ii) to compel delivery of the Assets to the Buyer, (iii) to compel delivery of the Purchase Price, (iv) to resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, and (v) to interpret, implement and enforce the provisions of this Sale Order.

18.    Nothing contained in any potential plan of liquidation confirmed in this case or the order of confirmation confirming any such plan of liquidation shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale order.

19.    The Buyer is a buyer in good faith of the Assets and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

*Approved by Judge Michael Kaplan June  07, 2013*

Page(16)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

20.    In the absence of a stay pending appeal, if the Buyer elects or is required to close under the Asset Purchase Agreement at any time after entry of this Sale Order, then, with respect to the Asset Purchase Agreement, the Buyer shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Sale order or any authorization contained herein is reversed or modified on appeal.

21.    The terms and provisions of the Asset Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Debtors, the estate and creditors, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, persons asserting a claim against or interest in the Debtors' estates or any of the Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement.

22.    The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the efficiency of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

23.    The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in

*Approved by Judge Michael Kaplan June  07, 2013*

Page(17)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
              (i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
              OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
              INTERESTS AND ENCUMBRANCES

accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.

24.    The transfer of the Assets to the Buyer is not subject to taxation under any state or local law imposing a stamp, transfer or similar tax in accordance with section 1146(c) of the Bankruptcy Code.

25.    As provided by Bankruptcy Rule 7062, this Sale Order shall be effective and enforceable immediately upon entry.

26.    Except as provided in the Asset Purchase Agreement, the transfer of the Assets shall not subject the Buyer or Buyer to any debts, liabilities, obligation, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Trustee, the Debtors, any affiliate of the Debtors, or any other person by reason of such transfer, assignment and delivery under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions.

27.    <u>Adequate Protection of the State's Interests.</u>  No later than five (5) days after the payment of the principal and accrued interest due to Bank of America by the Debtors, the Debtors shall pay $1,300,000.00 to the State of New Jersey (the "State") on account of the Debtors' forfeiture judgment obligation pursuant to the Settlement Order.  The remaining

Page(18)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

$1,300,000 (the "Forfeiture Balance") of the Debtors' forfeiture judgment obligation shall be paid by the Debtors to the State as soon as practicable after the Closing Date, but in no event later than July 31, 2013.

28.    The Forfeiture Balance shall continue to be secured by a pledge of the Debtors' interest in fifty percent (50%) of the cash surrender value of the life insurance policies owned by the Debtors (the "CSV") and, upon the satisfaction of the liens and claims of Bank of America against the Debtors' assets, the Forfeiture Balance shall be secured by a pledge of one hundred percent (100%) of the CSV such that the State shall have a first priority perfected lien (the "CSV Lien") on the CSV which shall not be subject to any claims, offsets or charges of any kind or nature.

29.    In addition to securing the Forfeiture Balance, the CSV Lien shall also secure the Debtors' obligations to fund the Escrow, as defined in the Settlement Term Sheet dated April 15, 2013.

30.    This Sale Order shall be sufficient and conclusive evidence of the grant and perfection of the CSV Lien subject to the terms hereof and no further action to effectuate the grant and/or perfection of such security interest shall be necessary.

31.    The aforementioned treatment of the State's interests shall be binding upon the Debtors, their estates and all of their successors and assigns, including without

*Approved by Judge Michael Kaplan June  07, 2013*

Page(19)
Debtors:  Birdsall Services Group, Inc., et al.
Case No.  13-16743(MBK)
Caption:  ORDER UNDER 11 U.S.C. §§ 105, 363 AND 1146(c) AND BANKR. RULE 9019 APPROVING
(i) ASSET PURCHASE AGREEMENT WITH BUYER AND DEBTOR'S ASSUMPTION OF
OBLIGATIONS THEREUNDER, AND (ii) SALE FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES

---

limitation any trustee in these chapter 11 cases or any successor chapter 7 cases.  Further, such

treatment of the State's interests shall survive any dismissal of these or any successor bankruptcy

case(s) and shall be enforceable by this Court.

32.    Except as provided in this section entitled "Adequate Protection of the

State's Interests", notwithstanding anything to the contrary herein or documents related hereto,

nothing in this Sale Order or related documents shall limit, modify or otherwise adversely affect

the rights, interests and protections of the State under the Order Approving the Settlement

Agreement Between the Debtors and the State Pursuant to 11 U.S.C. §105 and Fed.R.Bankr.P.

9019, entered on April 15, 2013 (the "Settlement Order").  To the extent of any conflict between

the Settlement Order and this Sale Order or related documents, except as provided in this section,

the Settlement Order shall control for all purposes.

EXHIBIT ___I-1___

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is made and entered into this 24th day of May, 2013, by and among Edwin H. Stier ("Trustee" or "Seller"), Chapter 11 Trustee for the bankruptcy estate of Birdsall Services Group, Inc. ("BSG"), and BSG Engineering, Surveying & Landscape Architecture LLC ("Landscape") (each of BSG and Landscape a "Debtor" and collectively, the "Debtors") and Partner Assessment Corporation, a California corporation (the "Buyer").

## RECITALS

WHEREAS, the Debtors have commenced a case under Title 11 of the United States Bankruptcy Code (the "Debtors' Bankruptcy Case") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court");

WHEREAS, the Debtors are engaged in the business of providing engineering services in, among other locations, New Jersey, New York and Pennsylvania (the "Business").

WHEREAS, pursuant to the terms and conditions set forth below, Seller wishes to sell or cause to be sold to Buyer, and Buyer wishes to purchase from Seller, substantially all of the assets of the Debtors used in connection with the Business.

NOW, THEREFORE, for and in consideration of the mutual promises herein made, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, IT IS HEREBY AGREED AS FOLLOWS:

## AGREEMENT

## ARTICLE I

## PURCHASE AND SALE OF ASSETS

1.1    Purchased Assets.  Subject to the terms and conditions set forth herein, Seller shall sell, convey, transfer, assign and deliver to Buyer, and the Buyer shall purchase and acquire from Seller all of the Debtors' right, title and interest in the assets and properties of every kind and description which are used or held for use in the Business, whether real, personal or mixed, tangible and intangible, and wherever situated, except only the assets excluded pursuant to Section 1.2 hereof, all as the foregoing may exist as of the Closing Date (hereinafter, all of such assets and properties are referred to as the "Purchased Assets").  The Purchased Assets shall include, without limitation, the following (except to the extent that any of the following assets constitute an Excluded Asset described in Section 1.2 below):

(a)    All accounts receivable;

(b)    Work in progress;

(c)    All furnishings, furniture, tools, machinery, fixtures, leasehold improvements and equipment used in the Business (the "Equipment");

(d)    Except as otherwise set forth in Section 1.2, all prepaid expenses, and contract deposits paid to or deposited with vendors and third parties that are parties to Assumed Contracts or Assumed Leases assumed by Buyer;

(e)    All motor vehicles, including, without limitation, those listed on Schedule 1.1(e) (the "Vehicles");

(f)    The exclusive right to accept, pursuant to Sections 3.1 and 3.2 of this Agreement, an assignment, to the extent transferrable, of all rights of the Debtors pursuant to (i) executory contracts ("Assumed Contracts") and (ii) unexpired leases (the "Assumed Leases") including, without limitation, those identified on Schedule 1.1(f), but excluding those set forth on Schedules 1.1(g) and 1.2(b);

(g)    All rights of the Debtors pursuant to Assumed Contracts and Assumed Leases listed on Schedule 1.1(g);

(h)    All of Debtors' trademarks, logos, tradenames, business names, domain names and patents, including all rights in the names "Birdsall," "Birdsall Services Group," "Birdsall Engineering," "BSG Engineering, Surveying & Landscape Architecture" and all derivatives thereof;

(i)    To the extent transferrable, all governmental and non-governmental licenses, permits, authorizations, registrations, certifications, accreditations, consents and indulgences;

(j)    All office and other supplies;

(k)    To the extent not earned, retainers and deposits paid by clients of Debtors in connection with Assumed Contracts assumed by Buyer;

(l)    All warranty rights, guaranty rights, causes of actions, judgments and claims and similar rights of the Debtors against clients, vendors, suppliers, designers, architects, engineers or other third parties to the extent relating to Purchased Assets;

(m)    All lists of customers, suppliers, vendors and sources; all books, records, journals, computer software and files; all client and project files and records, including records that Buyer deems necessary to collect accounts receivable or complete work in progress); all current and historical data, including project data, maps, customer data and financial data and records; all information, blueprints, engineering data and drawings; and telephone and telecopier numbers and listings;

(n)    Real property located in Barnegat, New Jersey (the "Real Property"); and

(o)    Capital stock and other securities of entities beneficially owned by Debtors in entities that are not Affiliates, as described on Schedule 1.1(o).

1.2    Excluded Assets. The Purchased Assets shall not include, and the Debtors shall retain, the following assets (the "Excluded Assets"):

2

*Approved by Judge Michael Kaplan June 07, 2013*

(a)     Cash and cash equivalents including, without limitation, all funds deposited into escrow or accounts of a similar nature or function by the Debtors;

(b)     The rights of the Debtors under Assumed Contracts and Assumed Leases that Buyer has elected not to accept, including, without limitation, those identified on Schedule 1.2(b);

(c)     The books and records (including minute books, stock ledgers and Tax Returns) of Debtors not related to the Purchased Assets;

(d)     Notes receivable from shareholders or former shareholders of Debtors and "due from shareholder" accounts of Debtors;

(e)     Goodwill;

(f)     Cash surrender value and other value of life insurance policies (including, without limitation, the life insurance contracts relating thereto);

(g)     All claims under director and officer liability policies;

(h)     All claims against former employees or shareholders of Debtors, including, without limitation, to the extent arising from acts or events occurring prior to the Closing Date, claims under non-compete and non-solicitation agreements with shareholders of BSG that ceased to be employed by BSG prior to the Closing Date;

(i)     All bankruptcy avoidance claims;

(j)     All prepaid expenses and contract deposits paid to or deposited with vendors, suppliers and other third parties, other than those prepaid expenses and contract deposits relating to Assumed Contracts and Assumed Leases that are assumed by Buyer, including, without limitation, those listed on Schedule 1.2(j);

(k)     Claims for and rights to receive Tax refunds;

(l)     All insurance policies of Debtors and all rights to applicable claims, refunds and proceeds thereunder;

(m)     All benefit plans of Debtors and trusts or other assets attributable thereto;

(n)     All outstanding capital stock in each of Birdsall Engineering, Inc., LGA Engineering, Inc., Morris, Johnson & Associates, Inc., PMK Group, Inc., Distasio & Van Buren, Inc. and The TBCSC Corporation;

(o)     All of the Debtors' and Seller's rights under this Agreement and the Ancillary Agreements;

(p)     The Purchase Price payable pursuant to Article II hereof; and

Approved by Judge Michael Kaplan June 07, 2013

(q)     The excluded off-balance sheet doubtful accounts listed on Schedule 1.2(q).

1.3   Closing. The closing (the "Closing") of the purchase and sale of the Business and the Purchased Assets shall take place at 10:00 a.m., local time, on the Closing Date, at the offices of Giordano, Halleran & Ciesla, 125 Half Mile Road, Suite 300, Red Bank, New Jersey or if the parties mutually agree, by the delivery and exchange of all required closing deliverables by overnight courier and/or by the electronic transmission if deliverable in pdf or a comparable format. The Closing shall be held on a date as soon as practicable after entry of the Bankruptcy Court Sale Order and the satisfaction of the conditions set forth in Articles IX and X below (the "Closing Date").

1.4   Bankruptcy Court Approval.

(a)     Buyer acknowledges that the Trustee has been appointed pursuant to an order of the Bankruptcy Court to serve as the Chapter 11 Trustee in the Debtors' Bankruptcy Case filed with the Bankruptcy Court. As a result, the Trustee is acting hereunder solely in his capacity as a Chapter 11 Trustee of the estate of the Debtors, and not in his individual capacity. Buyer acknowledges that this Agreement shall be subject to higher and better offers to be solicited at an auction ("Auction") held in accordance with bidding procedures substantially in the form attached as Exhibit A hereto (the "Bidding Procedures"), which Bidding Procedures have been approved by the Bankruptcy Court. Changes in the Bidding Procedures are subject to Buyer's consent, not to be unreasonably withheld or delayed. The Parties further acknowledge that Seller's and Buyer's obligations under this Agreement are contingent upon Bankruptcy Court approval (which Seller shall promptly seek) and upon such requirements as may be determined by the Bankruptcy Court as are reasonably acceptable to Buyer. If the Bankruptcy Court denies approval of this Agreement for any reason (except because of a default by Seller or Buyer), this Agreement shall automatically terminate and the Deposit shall promptly be refunded to Buyer, and the parties shall have no further rights or obligations hereunder.

(b)     If a higher and better offer of a third-party competing bidder (the "Competing Bidder") in a Competing Transaction is accepted by Seller and approved or authorized by the Bankruptcy Court, Seller shall pay to Buyer the sum of Two Hundred Thousand Dollars ($200,000) as an agreed "break-up fee" (the "Break-Up Fee") (i) out of the proceeds of the sale, if and when Seller closes on a sale of the Purchased Assets to such Competing Bidder in such Competing Transaction, or (ii) out of the deposit made by such Competing Bidder in connection with such Competing Transaction, if such Competing Bidder breaches its obligations to complete such Competing Transaction and Seller retains its deposit as a result thereof. This obligation shall survive the cancellation, termination or other expiration of this Agreement; provided, however, that no Break-Up Fee shall be due and payable to Buyer if the sale of the Purchased Assets to Buyer is not consummated due to a termination of this Agreement by Seller and Buyer under Section 11.1(a), by the Buyer under Section 11.1(b) if Seller is not then in breach of this Agreement, by the Seller under Section 11.1(b) if Buyer is then in breach of this Agreement or by Seller pursuant to Section 11.1(d)(i). However, if Buyer is determined

4

*Approved by Judge Michael Kaplan June 07, 2013*

to be the highest and best bidder on the sale of the Purchased Assets, then no Break-Up Fee shall be payable by Seller unless this Agreement is terminated by Buyer pursuant to Section 11.1(c)(i). Seller shall use commercially reasonable efforts to obtain an order of the Bankruptcy Court in a form reasonably satisfactory to Buyer that provides that the Break-Up Fee shall be an allowed administrative expense claim under Sections 503(b) and 507(a)(1) of the Bankruptcy Code and shall be paid by Seller to Buyer in cash or immediately available funds upon the closing of the sale of the Purchased Assets in accordance with the conditions set forth in this Section 1.4(b), without further order of the Bankruptcy Court or otherwise. If Seller is unable to obtain such an order of the Bankruptcy Court, (i) this Agreement shall be null and void, (ii) the Deposit shall be returned to Buyer, and (iii) neither party shall have any further rights or obligations hereunder, except rights or obligations under this Agreement which expressly survive the Closing or other termination of this Agreement.

(c)    The sale of the Purchased Assets by Seller under this Agreement is expressly conditioned upon entry of an order pursuant to Section 363 of the Bankruptcy Code by the Bankruptcy Court approving and authorizing this Agreement or approving and authorizing Seller to execute, deliver and perform this Agreement and containing substantially the same the terms described herein (the "Bankruptcy Court Sale Order"). Buyer shall at its own expense reasonably cooperate with Seller's efforts to obtain the Bankruptcy Court Sale Order, and shall execute such affidavits, appear and testify in the Bankruptcy Court, and take such other actions as may be reasonably required to obtain entry of such order. However, such cooperation shall not require the Buyer to incur expenses (other than customary costs, including, without limitation, legal fees, for monitoring and participating in the approval, auction and sales process) or engage in any other legal proceedings.

(d)    Seller shall make a motion (the "Sale Motion") to the Bankruptcy Court for the Bankruptcy Court Sale Order. The Bankruptcy Court Sale Order shall (i) be in a form reasonably acceptable to Seller and Buyer, and Buyer shall, in writing, express its reasonable comments or consent to Seller within five (5) days of its receipt of any draft Bankruptcy Court Sale Order from Seller, (ii) provide for sale of the Purchased Assets free and clear of all Liens and other interests whatsoever, including claims of successor liability, with any and all Liens to attach to the sale proceeds with the same validity, priority, extent and effect as such Liens may have had immediately prior to the sale, (iii) to the extent permissible under Section 1146(a) of the Bankruptcy Code, provide for the exemption of any deed or other instrument made or delivered in accordance with the terms of this Agreement from the imposition of any state or other taxes in connection with this sale, (iv) contain a finding that the Buyer purchased the Purchased Assets in good faith and is entitled to the protections of Section 363(m) of the Bankruptcy Code, (v) contain a waiver of any obligation to comply with "bulk-transfer" Laws (the "Bulk Sale Waiver"), and (vi) contain language which provides that the sale of the Purchased Assets to Buyer is not subject to any state or local tax imposing a stamp, transfer or similar tax in accordance with Section 1146(a) of the Bankruptcy Code. Seller shall use reasonable efforts to obtain the Bankruptcy Court Sale Order. Both Buyer's and Seller's obligations to consummate the transactions contemplated by this Agreement shall be conditioned upon the Bankruptcy Court's entry of the Bankruptcy Court Sale Order in

05/24/13

*Approved by Judge Michael Kaplan June 07, 2013*

form satisfactory to both of the parties. Subject to Sections 11.1 and 11.2, if (i) the Bankruptcy Court refuses to issue the Bankruptcy Court Sale Order, (ii) a third party purchaser for the Purchased Assets or any material portion thereof is approved by the Bankruptcy Court at the hearing on the Sale Motion, or (iii) the Bankruptcy Court Sale Order is for any other reason not entered on or before June 5, 2013 (or such other date as Seller and Buyer may agree) other than by reason of an adjournment of the hearing on the Sale Motion, then in any such event, this Agreement shall automatically terminate and Seller and Buyer shall be relieved of any further Liabilities hereunder, except, in the case of clause (ii) of this sentence above, as provided in Section 1.4(b).

1.5  Possession.  The right to possession of the tangible Purchased Assets shall transfer to Buyer on the Closing Date. Seller shall transfer and deliver to Buyer on the Closing Date such items as Buyer may reasonably require to obtain control and possession of the Purchased Assets, and shall also make available to Buyer at their then existing locations the originals of all documents in Seller's possession that are required to be transferred to Buyer by this Agreement. The Seller shall cooperate with the Buyer to allow the Buyer to take possession of the Purchased Assets, but shall have no duty to deliver possession.  All proceedings to be taken, and all documents to be executed and delivered by the parties at the Closing shall be deemed to have been taken and executed simultaneously, and no proceedings shall be deemed to have been taken nor documents executed or delivered until all have been taken, executed and delivered.

## ARTICLE II

## CONSIDERATION FOR TRANSFER

2.1  Purchase Price.  The purchase price (the "Purchase Price") for the Purchased Assets shall be the sum of:

(a)  Five Million Six Hundred Thousand Dollars ($5,600,000), which amount (the "Base Purchase Price") shall be subject to adjustment pursuant to Section 2.2 below, and paid (less the Deposit described in Section 2.4 below) to the Seller at the Closing by wire transfer of immediately available funds;

(b)  An amount equal to ten percent (10%) of the dollar amount of Net Revenue recorded by Buyer during the twelve (12) month period following the Closing (the "Contingent Net Revenue Payment") which shall be payable by Buyer to Seller, by wire transfer of immediately available funds, within thirty (30) days of the date of the one (1) year anniversary of the Closing Date; provided, however, that in no event shall the Contingent Net Revenue Payment be less than Five Hundred Thousand Dollars ($500,000) or more than Two Million Five Hundred Thousand Dollars ($2,500,000); and

(c)  An amount equal to fifty percent (50%) of the dollar amount of the Debtors' accounts receivable (determined as of the Closing Date) above Ten Million Dollars ($10,000,000) collected by Buyer, if any, during the twelve (12) month period following the Closing Date, which amount (the "Contingent A/R Payment") shall be

6

*Approved by Judge Michael Kaplan June 07, 2013*

payable by Buyer to Seller, by wire transfer of immediately available funds, within thirty (30) days of the one (1) year anniversary of the Closing Date.

2.2    Adjustment of Base Purchase Price.

(a)    The Parties acknowledge and agree that the Base Purchase Price set forth in Section 2.1 above is based, in part, upon the value of the Debtors' accounts receivable and work-in-progress as of March 31, 2013. The Base Purchase Price shall be increased dollar-for-dollar to the extent that the aggregate dollar value of Debtors' accounts receivable and work-in-progress as of the Closing Date exceeds Nineteen Million Six Hundred Ninety-Six Thousand Dollars ($19,696,000), and shall be decreased dollar-for-dollar to the extent that the aggregate dollar value of Debtors' accounts receivable and work-in-progress as of the Closing Date is less than Eighteen Million Six Hundred Ninety-Six Thousand Dollars ($18,696,000). For purposes of this Section 2.2(a), accounts receivable and work in progress shall be determined in accordance with United States Generally Accepted Accounting Principles and the accounting principles used to prepare BSG's consolidated balance sheet as of December 31, 2012.

(b)    The Seller shall cause its Financial Advisor to prepare and submit to the Buyer, not later than three (3) business days prior to the Closing Date, a good faith estimate of the Base Purchase Price, as adjusted by the provisions set forth in Section 2.2(a) above (the "Adjusted Base Purchase Price") based upon Debtors' estimated accounts receivable and work-in-progress as of the Closing Date (the "Seller's Calculation"), accompanied by detailed supporting documents for the calculations set forth therein. After the delivery of the Seller's Calculation and prior to the Closing, Buyer and Seller shall endeavor to resolve any disputes between the Seller and Buyer with respect to the Seller's Calculation. In connection therewith, Buyer shall have access to all records related to the Sellers' Calculation. No later than one (1) business day after the delivery of the Seller's Calculation, Buyer shall advise Seller in writing as to any dispute Buyer has with the Sellers' Calculation and provide Seller with Buyer's calculation of the Adjusted Base Purchase Price based upon accounts receivable and work-in-progress as of the Closing Date (the "Buyer's Calculation"), accompanied by supporting documents to the extent the same are available to Buyer. In the event that the Buyer's Calculation of the Adjusted Base Purchase Price is not more than Fifty Thousand Dollars ($50,000) less than the Seller's Calculation of the Adjusted Base Purchase Price, the Closing will proceed with the Adjusted Base Purchase Price based on the Sellers' Calculation. In the event the Buyer's Calculation of the Adjusted Base Purchase Price is more than Fifty Thousand Dollars ($50,000) less than the Sellers' Calculation of the Adjusted Base Purchase Price, then the mid-point between the Sellers' Calculation of the Adjusted Base Purchase Price and the Buyer's Calculation of the Adjusted Base Purchase Price shall be used to determine the Adjusted Base Purchase Price for purposes of the Closing.

(c)    No later than thirty (30) days after the Closing, Seller's Financial Advisor shall cause to be prepared and delivered to Buyer a final statement of the Adjusted Base Purchase Price based upon Debtors' accounts receivable and work-in-progress as of the close of business on the Closing Date (the "Base Purchase Price Statement"). During

7

*Approved by Judge Michael Kaplan June  07, 2013*

the thirty (30) day period after the date on which Buyer receives the Base Purchase Price Statement (the "Review Period"), Buyer and its representatives shall be afforded access to all records and workpapers used in connection with the preparation of the Base Purchase Price Statement. The Base Purchase Price Statement as so delivered to Buyer shall become final and binding upon Seller and Buyer unless on or before 5:00 p.m., New Jersey time, on the last day of the Review Period, written notice is given by Buyer to Seller of the Buyer's dispute with the Base Purchase Price Statement, which notice shall set forth in reasonable detail the Buyer's basis for such objection. Notwithstanding the foregoing, if the last day of the Review Period is not a business day, then, for purposes of this Section 2.2(c), the last day of the Review Period shall be the next succeeding Business Day. If notice of dispute is timely given by Buyer, Buyer and Seller shall work together in good faith to resolve such dispute.

(d)      If Buyer and Seller are unable to resolve the dispute within thirty (30) days after notice of dispute has been received by Seller, then the dispute shall be resolved by the Bankruptcy Court through the institution of an adversary proceeding.

(e)      If the final Adjusted Base Purchase Price, as determined pursuant to the procedures set forth in Sections 2.2(a) through 2.2(d) above, is greater than the Adjusted Base Purchase Price paid on the Closing Date, Buyer shall pay in full such difference to Seller within ten (10) business days of such final determination. If the final Adjusted Base Purchase Price as determined pursuant to the procedures set forth in Sections 2.2(a) through 2.2(d) above is less than the Adjusted Base Purchase Price paid on the Closing Date, Seller shall refund the difference to Buyer within ten (10) business days of such final determination.

2.3   Payment of Contingent Net Revenue Payment and Continent/A/R Payment.

(a)      Within thirty (30) days of the one (1) year anniversary of the Closing, Buyer shall pay to Seller each of the Contingent Net Revenue Payment and the Contingent A/R Payment (each a "Contingent Payment"), in each case accompanied by a statement setting forth in reasonable detail the manner in which each such Contingent Payment was calculated (each a "Contingent Payment Statement"). Seller and its representatives shall be afforded access to all records and workpapers used in connection with the calculation of the Contingent Payment. In addition, Buyer shall provide Seller with monthly statements calculating the Net Revenue and the accounts receivable collected during the prior month. If Seller disagrees in any respect with the calculation of a Contingent Payment, it may, within thirty (30) days of the receipt of the Contingent Payment Statement relating thereto (the "Contingent Payment Review Period"), deliver a notice to Buyer setting forth each disputed item or amount and the basis for such disagreement. If no such dispute notice is received by the Buyer before 5:00 p.m., New Jersey time, on the last day of the applicable Contingent Payment Review Period, the Contingent Payment Statement shall be deemed accepted by Seller. If notice of a dispute is timely given, Buyer and Seller shall work together in good faith to resolve such dispute. Seller's receipt and negotiation of a Contingent Payment shall not be deemed to be evidence of acceptance by Seller of the aggregate amount of the Contingent Payment relating thereto.

05/24/13

*Approved by Judge Michael Kaplan June  07, 2013*

(b)     If Buyer and Seller are unable to resolve the dispute within thirty (30) days of the notice of dispute has been received by Buyer, then the dispute shall be resolved by the Bankruptcy Court through the institution of an adversary proceeding.

(c)     If the final amount of a Contingent Payment, as determined pursuant to the procedures set forth in Sections 2.3(a) and 2.3(b) above, is greater than the Contingent Payment paid by Buyer, Buyer shall pay such difference to Seller within ten (10) business days of such final determination.

2.4    Deposit. Buyer has delivered One Hundred Thousand Dollars ($100,000) of the Base Purchase Price (the "Deposit") to Seller to be held by Seller's counsel, Wasserman, Jurista & Stolz, P.C. ("WJS") as a deposit pursuant to the terms of an escrow agreement among WJS, Buyer and Seller, in the form in the form set forth in Exhibit B hereto (the "Escrow Agreement"). Upon termination of this Agreement for any reason other than a termination by Seller pursuant to Section 11.1(d)(i), Seller's counsel shall return the Deposit to Buyer. If this Agreement is terminated by Seller pursuant to Section 11.1(d)(i), the Deposit shall be provided to Seller and shall not be returnable to Buyer.

2.5    Purchase Price Allocation. The parties acknowledge and agree that the Purchase Price was negotiated and concluded on the basis of the component prices set forth on Schedule 2.5 in accordance with the fair market value of the Purchased Assets. The parties agree to report and allocate, for all federal, state and local tax purposes (including IRS Form 8594), the Purchase Price as so allocated and will not take any inconsistent or contrary position therewith for any other purpose.

2.6    Bulk Sales Laws. Buyer and Seller hereby waive compliance by Buyer, Seller and Debtors with the requirements and provisions of any "bulk-transfer" Laws of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of any or all of the Purchased Assets to Buyer; provided however, that Buyer may file a Form C-9600 with the New Jersey Division of Taxation if the Bankruptcy Court Sale Order approved by the Bankruptcy Court does not contain the Bulk Sale Waiver in substance.

## ARTICLE III

## LIABILITIES AND CERTAIN OBLIGATIONS

3.1    Assignment and Assumption of Executory Contracts.

(a)     During the ninety day (90) day period commencing on the Closing Date (the "Contract Review Period"), Buyer shall notify Seller as to the Assumed Contracts as to which the Buyer wishes to seek an assignment and the Assumed Contracts as to which the Buyer will not seek an assignment (the "Rejected Contracts"). During the Contract Review Period, Buyer will perform and fully discharge (including, without limitation, providing Seller with certificates of insurance naming Seller as a loss payee and/or additional insured) on a timely basis the obligations of the applicable Debtor under each Assumed Contract listed on Schedule 1.1(f) and Schedule 1.1(g) which are to

9

*Approved by Judge Michael Kaplan June  07, 2013*

be performed or discharged, under the terms of such Assumed Contract, on or after the Closing Date, but only to the extent that the Hired Employees (as defined in Section 7.1 of this Agreement) are capable of performing and discharging such duties and obligations, and as to any payment obligation, only to the extent that the payment is for goods, services or other types of consideration that are delivered, performed or provided during the Performance Period (as defined below).  With respect to each Rejected Contract, Buyer shall, at the request of Seller and for a period of no more than thirty (30) days after Buyer notifies the Seller that such an Assumed Contract is a Rejected Contract , continue to perform and fully discharge the obligations of the applicable Debtor under such Rejected Contract under the terms and subject to the conditions set forth above.  With respect to each Assumed Contract listed on Schedule 1.1(f) and Schedule 1.1(g), the period commencing on the Closing Date and ending on the date that Buyer is no longer required to, and ceases to, perform and fully discharge the obligations of the applicable Debtor thereunder, as provided above, is referred to herein as the "Performance Period" for such Assumed Contract. Buyer shall be entitled to retain the accounts receivable resulting from the performance by Buyer of the obligations of the applicable Debtor under each such Assumed Contract during the Performance Period as described above.

     (b)    Upon receipt of notice from Buyer that Buyer wishes to seek an assignment of an Assumed Contract, Seller shall promptly cure all defaults under the Assumed Contract existing as of the Closing Date and move before the Bankruptcy Court for authorization to assign and assume such Assumed Contract, and upon entry of an order of the Bankruptcy Court, Buyer and Seller shall execute and deliver to each other an Assignment and Assumption Agreement, substantially in the form annexed as Exhibit C hereto, pursuant to which Seller shall assign, pursuant to section 365 of the Bankruptcy Code, all of the rights and interests of the Debtors in such Assignable Contract to Buyer, and Buyer shall assume and agree to perform and discharge the written obligations of Debtors under such Assumed Contract which are to be performed or discharged, under the terms of such Assumed Contract, on or after the Closing Date, but as to any payment obligation, only to the extent that the payment is for goods, services or other types of consideration that are delivered, performed or provided on or after the Closing Date.

     (c)    Buyer agrees to indemnify Seller from all claims, losses, damages, expenses and liabilities arising from Buyer's failure to perform and discharge in any material respect, the obligations of the Debtors under an Assumed Contract, but only to the extent that any such claim, loss, damage expense or liability arises out of acts, events or omissions occurring during the Performance Period; provided, that the foregoing indemnity shall not cover claims of Seller solely for any decrease in the Contingent Net Revenue Payment caused by the termination of an Assumed Contract by the counterparty thereto as a result of Buyer's failure to perform and discharge the obligations of a Debtor under such Assumed Contract. The foregoing proviso shall not be deemed to limit the obligations of Buyer to perform and fully discharge the obligations of the applicable Debtor under each Assumed Contract under, and subject to the terms of, Section 3.1(a), or the right of Seller to assert a claim for a breach by Buyer of such obligations.

10

*Approved by Judge Michael Kaplan June  07, 2013*

(d)   Any assignment to Buyer of any Assumed Contract that shall, notwithstanding the provisions of Section 365 of the Bankruptcy Code, require the consent or approval of any Person for such assignment shall be made subject to such consent or approval being obtained. Seller shall use all commercially reasonable efforts to assist Buyer in obtaining such consent or approval, but Seller does not guarantee the consent or approval.

3.2   Assignment and Assumption of Assumed Leases.

(a)   During the thirty (30) day period commencing on the Closing Date (the "Lease Review Period"), Buyer shall notify Seller as to the Assumed Leases as to which the Buyer wishes to seek an assignment and the Assumed Leases as to which the Buyer does not wish to seek an assignment (the "Rejected Leases"). Upon receipt of notice from Buyer that Buyer will accept an assignment of an Assumed Lease, Seller shall promptly cure all defaults under the Assumed Lease existing as of the Closing Date and move before the Bankruptcy Court for an order authorizing assignment and assumption of such Assumed Lease, and upon entry of an order of the Bankruptcy Court, Buyer and Seller shall execute and deliver to each other an Assignment and Assumption of Lease, substantially in the form annexed as Exhibit D hereto, pursuant to which Seller shall assign, pursuant to section 365 of the Bankruptcy Code, all of the rights and interests of the Debtors in such Assumed Lease to Buyer, and Buyer shall assume and agree to perform and discharge, on a timely basis, the written obligations of Debtors under such Assumed Lease, which are to be performed or discharged, under the terms of such Assumed Lease on or after the Closing Date, but as to any payment obligation, Buyer shall be required to satisfy such payment obligation (such as common area maintenance charges and real property taxes) only to the extent that it pertains to periods after the Closing Date.

(b)   If Buyer provides notice to Seller that it will not accept an assignment of an Assumed Lease, Buyer shall, promptly after the provision of such notice to the Seller, abandon any equipment and vacate all premises subject to the Rejected Lease. Until the later of (i) the date that the Buyer notifies the Seller that it does not wish to seek an assignment of the Assumed Lease and (ii) the date that Buyer abandons the property or vacates the premises which is subject to a Rejected Lease, Buyer shall perform and fully discharge on a timely basis, the written obligations of the applicable Debtor under such Rejected Lease, but as to any payment obligation, Buyer shall be required to satisfy such payment obligation (such as common area maintenance charges and real property taxes) only to the extent that it pertains to the period from and after the Closing Date through the later of (i) the date that the Buyer notifies the Seller that it does not wish to seek an assignment of the Assumed Lease and (ii) the date that Buyer abandons the property or vacates the premises which is the subject of the Rejected Lease.

(c)   Buyer agrees to indemnify Seller from all claims, losses, damages, expenses and liabilities arising from Buyer's failure to perform and discharge in any material respect, the obligations of the Debtors under an Assumed Lease, but only to the extent that any such claim, loss, damage expense or liability arises out of acts, events or omissions occurring during the period from the Closing Date to the later of (i) the date

11

*Approved by Judge Michael Kaplan June 07, 2013*

that Buyer provides notice that Buyer will not accept an assignment of the Assumed Lease and (ii) the date that Buyer abandons the property or vacates the premises which is the subject of the Rejected Lease.

(d)   Any assignment to Buyer of any Assumed Lease that shall, notwithstanding the provisions of Section 365 of the Bankruptcy Code, require the consent or approval of any Person for such assignment shall be made subject to such consent or approval being obtained. Seller shall use all commercially reasonable efforts to assist Buyer in obtaining such consent or approval, but Seller does not guarantee the consent or approval.

3.3   <u>Tax Returns.</u>   Seller shall prepare or cause to be prepared all Tax Returns relating to the Purchased Assets for the periods ending on or prior to the Closing Date.  Buyer shall prepare and file all Tax Returns relating to all real property Taxes, personal property Taxes, or similar ad valorem obligations levied with respect to the Purchased Assets for any taxable period beginning on or before and ending after the Closing Date (a "Straddle Period," and such Taxes, "Straddle Period Taxes"), whether imposed or assessed before or after the Closing Date, other than Straddle Period Tax Returns that the Seller is required to file by applicable Law. The liability for payment of each such Straddle Period Tax shall be prorated between Buyer and Seller as of the Closing Date based on 100% of the amount of such Straddle Period Tax imposed for the prior taxable period.  The portion of each such Straddle Period Tax that is allocable to Seller shall be the product of (i) 100% of the amount of such Tax for the prior taxable period and (ii) a fraction, the numerator of which is the number of days in the Tax period ending on the Closing Date and the denominator of which is the number of days in the entire Tax period.  Buyer shall be responsible for remitting all Straddle Period Taxes to the appropriate taxing authority when due.

3.4   <u>Non-Assumption of Liabilities.</u>   Except only as provided in Sections 3.1, 3.2 and 3.3 hereof, Buyer shall not assume, pay, perform, discharge, or accept any liabilities, debts or obligations of the Debtors or the Business of any kind whatsoever, whether actual, contingent, accrued, known or unknown, including, without limitation, any relating to accounts payable, taxes, employee compensation, pension, profit-sharing, severance, vacation, health insurance, disability insurance or other employee benefit plans and programs, workers' compensation, breach or negligent performance of any contract, or breach of warranty relating thereto, liabilities resulting from breach of contract, torts, illegal activity, unlawful employment or business practice, or any other liability or obligation whatsoever.  Buyer shall not assume, honor or accept any collective bargaining agreement related to Debtors' employees or any employee pension benefit plan of any Debtor.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF DEBTORS AND SELLER

Seller hereby makes the representations and warranties to Buyer set forth in Sections 4.1, 4.2, 4.3 and 4.7 below as of the date hereof and as of the Closing Date.  The Debtors hereby make the representations and warranties to Buyer set forth in Sections 4.4, 4.5, 4.6 and 4.8 below, as of the date hereof and, except where limited to a specific date, as of the Closing Date.

12

*Approved by Judge Michael Kaplan June 07, 2013*

4.1   Authorization; Validity of Agreement; Action of Seller.   Subject to entry and effectiveness of the Bankruptcy Court Sale Order, the Seller has the power and authority (a) to execute and deliver this Agreement and each Ancillary Agreement to which the Seller is or will be a party to at Closing, (b) to perform his obligations hereunder and thereunder, and (c) to consummate the transactions contemplated hereby and thereby. This Agreement has been, and each Ancillary Agreement to which the Seller is or will be a party will be, duly and validly executed and delivered by the Seller and (assuming this Agreement and each such Ancillary Agreement constitutes a valid and binding obligation of Buyer) constitutes, or will constitute, as the case may be, the legal, valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, except (i) as enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium and other Laws affecting the enforcement of creditors' rights generally from time to time in effect and by general equitable principles relating to enforceability (the "Enforceability Exceptions"), and (ii) that enforceability of the provisions hereof requiring consummation of the transactions contemplated hereby is subject to entry and effectiveness of the Bankruptcy Court Sale Order or any other action by the Bankruptcy Court (the "Bankruptcy Exceptions").

4.2   Standing.   The Trustee is the duly appointed Chapter 11 Trustee of the Debtors and has all requisite authority under the Bankruptcy Code to carry out his duties as the Chapter 11 Trustee of the Debtors.

4.3   Title to Purchased Assets.   To the Knowledge of the Seller, the Debtors have valid title to, or the rights to use (as currently used), the Purchased Assets, subject only to the Liens set forth on Schedule 4.3.

4.4   Absence of Certain Changes.   As of the date hereof, except (i) as a result of the commencement of the Debtors' Bankruptcy Case, (ii) as set forth on Schedule 4.4, and (iii) as contemplated by this Agreement, since March 29, 2013, the Seller has not:

(a)   paid or loaned any amount to, or sold, transferred or leased any properties or assets (real, personal or mixed, tangible or intangible) to, or entered into any agreement or arrangement with, any of the officers or directors of any of the Debtors or any Affiliate or "associate" (within the meaning set forth in Rule 12b-2 promulgated under the Securities Exchange Act of 1934, as amended) of any of the officers, directors, members or managers of any of the Debtors except for distributions to members/shareholders and compensation of officers and employees in the ordinary course of business, and retention bonuses to certain officers and employees;

(b)   mortgaged, pledged or subjected to any other Lien any of the Purchased Assets except in the ordinary course of business and consistent with past practice; or

(c)   except as provided in this Agreement, agreed, whether in writing or otherwise, to take any action described in this Section 4.4.

4.5   Assumed Contracts.   To the Knowledge of the Debtors and subject to the approval of the Bankruptcy Court pursuant to the Bankruptcy Court Sale Order, each Assumed Contract and Assumed Lease is in full force and effect and, except as limited by the Bankruptcy Code

13

*Approved by Judge Michael Kaplan June  07, 2013*

and other applicable Law, is a valid and binding obligation of the Debtor that is a party thereto, enforceable against such Debtor in accordance with its terms.

4.6    Litigation and Claims.  Except as set forth on Schedule 4.6, as of the date hereof, there is no action, suit, demand, inquiry, proceeding, claim, hearing or investigation by or before any Government Entity pending or, to the Knowledge of the Debtors, threatened in writing against or involving any of the Purchased Assets. Except as set forth on Schedule 4.6, the Purchased Assets are not subject to any judgment, writ, award, injunction, order of any Governmental Entity (other than the Bankruptcy Court) or decree that is related to the Business.

4.7    Brokers or Finders.  Except as set forth in the order of the Bankruptcy Court authorizing the Trustee's engagement of England Securities, LLC in the Debtors' Bankruptcy Case, no agent, broker, investment banker, financial advisor or other firm or Person is or will be entitled to any brokers' or finder's fee or any other commission or similar fee in connection with the transactions contemplated hereby as a result of any action taken by Seller.

4.8    Operation of the Business.  To the Knowledge of the Debtors, except for the business conducted by the Affiliates of the Debtors set forth in Section 1.2(n), (a) the Business is conducted only through the Debtors and not through any other Person, division or any Affiliate of a Debtor, (b) no material part of the Business is operated by any Person other than a Debtor, and (c) no Person other than a Debtor owns or possesses any material assets or properties that are primarily used or held for use in connection with, primarily arising from or primarily relating to the Business (other than Excluded Assets).

4.9    Disclaimer of All Other Representations and Warranties.  Except as otherwise specifically stated in this Article IV, the Seller and each of the Debtors and their respective employees, agents and representatives hereby disclaim any warranty, guaranty or representation, express or implied, or arising by operation of law, oral or written, past, present, or future, including, but not limited to those concerning the Purchased Assets, the Business, any Liabilities (including, without limitation, the Assumed Liabilities), the prospects of the Business, including, without limitation, with respect to merchantability or fitness for a particular purpose or non-infringement. The sale of the Purchased Assets is on an "AS IS, WHERE IS, WITH ALL FAULTS," basis.

## ARTICLE V

## BUYER'S REPRESENTATIONS

In order to induce Seller to enter into this Agreement, Buyer makes the following representations and warranties to Seller, as of the date hereof and as of the Closing Date.

5.1    Organization.  Buyer is a corporation duly organized and validly existing under the laws of the State of California.

5.2    Authorization; Validity of Agreement; Buyer Action.  Buyer has the corporate power and authority (a) to execute and deliver this Agreement and each Ancillary Agreement to which Buyer is or will be a party to at Closing, (b) to perform its obligations hereunder and

14

*Approved by Judge Michael Kaplan June 07, 2013*

thereunder, and (c) to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance of this Agreement by Buyer and of each Ancillary Agreement to which Buyer is or will be a party to at Closing, and the consummation by Buyer of the transactions contemplated hereby and thereby, have been duly authorized by all necessary corporate action on the part of Buyer and no other corporate actions or proceedings on the part of Buyer are necessary to authorize this Agreement, any Ancillary Agreement or any of the transactions contemplated hereby and thereby. This Agreement has been, and each Ancillary Agreement to which the Buyer is or will be a party will be, duly and validly executed and delivered by or on behalf of Buyer and (assuming this Agreement and each such Ancillary Agreement constitutes a valid and binding obligation of the Seller) constitutes, or will constitute, as the case may be, the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium and other Laws affecting the enforcement of creditors' rights generally from time to time in effect and by general equitable principles relating to enforceability.

   5.3   Consents and Approvals; No Conflicts.   The execution and delivery of this Agreement and Ancillary Agreements by Buyer, the consummation of the transactions herein and therein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof and thereof by Buyer do not and will not: (a) conflict with or result in a breach of the articles of incorporation or by-laws of Buyer; (b) violate any statute, Law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; (c) violate or conflict with or constitute a default under any material agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or "properties may be bound; or (d) require any Consent from, or notice to, any third party.

   5.4   Brokers.   No agent, broker, investment banker, financial advisor or other firm or Person is or will be entitled to any brokers' or finder's fee or any other commission or similar fee in connection with the transactions contemplated hereby as a result of any action taken by Buyer.

   5.5   Acknowledgement of Disclaimer.   The Buyer hereby acknowledges and agrees that (i) the Seller, the Debtors, and England Securities, LLC and their respective employees, agents and representatives, make no warranty or representation, express or implied, or arising by operation of law, including, but not limited to, any warranty of condition, habitability, merchantability or fitness for a particular purpose, with respect to the Purchased Assets; (ii) the Buyer is purchasing the Purchased Assets based on its own investigation and acknowledges that it has conducted such investigation as it has deemed necessary or advisable and that it is not relying upon any representations of Trustee, any Debtor, England Securities, LLC or their employees, agents and representatives whatsoever, except as set forth in Article IV; and (iii) the Buyer's decision to purchase the Purchased Assets is based solely on its own investigation, due diligence, estimates and studies.

   5.6   Financing.   The Buyer has on hand, or readily available, or will have on hand on or prior to the Closing Date, cash and cash equivalents or financial commitments therefor in an amount sufficient to enable it to consummate the transactions contemplated in this Agreement

15

*Approved by Judge Michael Kaplan June  07, 2013*

without violating the provisions of any material contract or agreement to which the Buyer is a party, including, without limitation, any solvency requirements contained therein.

## ARTICLE VI

## COVENANTS OF SELLER

Seller covenants and agrees with Buyer as follows:

6.1   Access. From and after the date of this Agreement until the Closing Date, subject to any confidentiality agreement entered into between Buyer and Seller, and subject to any limitations ordered by the Bankruptcy Court or otherwise in connection with the Debtors' Bankruptcy Case, Seller shall afford to Buyer's officers, independent public accountants, counsel, lenders, consultants and other representatives, reasonable access for examination at all reasonable times to the Purchased Assets and all records pertaining to the Purchased Assets. Buyer expressly acknowledges that nothing in this Section 6.1 is intended to give rise to any contingency to Buyer's obligations to proceed with the transactions contemplated herein.

6.2   Non-Compete/Non-Solicitation. Seller agrees that (i) during the two (2) year period following the Closing Date the Debtors shall not engage in the business of providing engineering services in the States of New Jersey, New York and Pennsylvania and (ii) during the one (1) year period following the Closing Date, Seller shall, if requested in writing by Buyer, (a) take such actions as Buyer may reasonably request, including the imposition of legal proceedings, to enforce, at Buyer's cost (including, without limitation, all fees, costs and expenses incurred by the Seller and the Debtors), the rights of the Debtors under any non-compete or non-solicitation provisions contained in agreement between a Debtor and any shareholder, former shareholder, employee or former employee of such Debtor ("Enforcement Action") and (b) assign all rights to damages and settlement amount received pursuant to such Enforcement Actions. Buyer shall indemnify, defend and hold Seller and/or Debtors, and their respective successors and assigns, harmless from and against any cross claims and/or counter-claims and any related actions and damages, fines, penalties or other losses in connection with an Enforcement Action.

6.3   Management of Purchased Assets Pending Closing. Subject to any obligations of the Trustee under the Bankruptcy Code, or any order of the Bankruptcy Court and other applicable Laws, the Seller covenants and agrees that, after the date hereof and prior to the Closing Date, except as expressly provided in this Agreement or as may be agreed in writing by Buyer:

(a)   Absent an agreement to allow the Buyer to manage the Purchased Assets prior to Closing, Seller shall use commercially reasonable efforts to manage the Purchased Assets in substantially the same manner as currently managed and Seller shall use commercially reasonable efforts to (i) preserve (subject to normal wear and tear and use or other disposition in the ordinary course of business) the Purchased Assets, (ii) subject to the effect of the Debtors' Bankruptcy Case, maintain the existing relationships with employees, contractors, suppliers, business partners and others having current business dealings with the Business;

16

*Approved by Judge Michael Kaplan June 07, 2013*

(b)    Prior to the Closing, subject to Debtors' continuing ability to perform and discharge its obligations under the Assumed Contracts, Seller shall not modify, amend or terminate any of the Assumed Contracts, except (i) in the ordinary course of business or (ii) as necessary to assume and assign the Assumed Contracts pursuant to Section 365 of the Bankruptcy Code;

(c)    Seller shall not lease, license, mortgage, pledge or encumber any Purchased Assets or transfer, sell or dispose of any Purchased Assets, except in the ordinary course of business;

(d)    Seller shall not enter into any Contract or transaction relating to the Purchased Assets, other than in the ordinary course of business; and

(e)    Seller shall not apply any retainer or deposit amounts provided by clients of Debtors to work that has not been performed with respect to Assumed Contracts.

## ARTICLE VII

## COVENANTS OF BUYER

Buyer covenants and agrees with Seller as follows:

7.1    <u>Employees</u>. As of the Closing Date, Buyer shall offer employment to certain employees of Debtors (the "Hired Employees"), at positions and initial base salaries comparable to those in effect immediately prior to the termination of such employees by the applicable Debtor. The Hired Employees shall be entitled to participate immediately upon Closing and without any limitations in benefit plans made generally available to Buyer's employees.

7.2    <u>Financing</u>. The Buyer expressly acknowledges and agrees that (i) the Buyer's obligation to consummate the transactions contemplated in this Agreement is not subject to the Buyer's receipt of financing, (ii) it is not a condition to the Buyer's obligation to consummate the transactions contemplated in this Agreement that the Buyer obtain any financing, and (iii) the Buyer shall be liable to the Seller and the Debtors as provided in Section 11.2 if the transactions contemplated in this Agreement are not consummated by the Closing Deadline (as defined in Section 11.1(b) below) due to the Buyer's failure to obtain financing or inability to pay the portion of the Purchase Price due at Closing.

7.3    <u>Collection of Accounts Receivable</u>. The Buyer shall use all commercially reasonable efforts to collect all of the Debtors' accounts receivable within the twelve (12) month period following the Closing Date.

7.4    <u>Transfer Taxes and Recording Fees</u>. All sales, use, excise, value-added, goods and services, transfer, recording, documentary, registration and similar taxes that may be imposed on the sale and transfer of the Purchased Assets (including, without limitation, any stamp, duty or other tax chargeable, and any recording fees or expenses payable in respect of, any instrument transferring property), shall be paid by Buyer. Buyer and Seller shall cooperate

17

*Approved by Judge Michael Kaplan June  07, 2013*

in timely making all filings, returns, reports and forms as may be required to comply with the provisions of applicable law in connection with the payment of any of the foregoing amounts.

7.5 Operation of the BSG Division. For a period of no less than one (1) year following Closing, Buyer shall operate the Business utilizing the Purchased Assets, the Hired Employees and additional employees and/or consultants hired or engaged in the ordinary course of business as a separate operating division with its own financial statements (the "BSG Division").

## ARTICLE VIII

## DELIVERIES AT CLOSING

8.1 Deliveries by Buyer. At the Closing, the Buyer shall deliver to the Seller the following:

(a) wire transfer of the Base Purchase Price (less the amount of the Deposit held by Seller's counsel);

(b) to the extent any Assumed Contracts are to be assumed at Closing, the Assignment and Assumption Agreement, duly executed by Buyer; provided, however, that the Assignment and Assumption Agreement need not be delivered by Buyer as to any Assumed Contract with respect to which the Bankruptcy Court has not issued an order prior to the Closing Date authorizing assumption and assignment;

(c) to the extent any Assumed Leases are to be assumed at Closing, an Assignment and Assumption of Lease with respect to each Assumed Lease, in each case duly executed by Buyer; provided, however, that no Assignment and Assumption of Lease need be delivered by Buyer as to any Assumed Lease with respect to which the Bankruptcy Court has not issued in order prior to the Closing Date authorizing assumption and assignment;

(d) the Escrow Agreement, duly executed by Buyer;

(e) resolutions of the Board of Directors of Buyer approving the transactions contemplated by this Agreement, charter documents of Buyer and incumbency of officers of Buyer, duly certified by the Secretary of Buyer;

(f) a Certificate, duly executed by the President of Buyer, certifying that the representations and warranties of Buyer set forth in this Agreement are true and correct in all material respects as of the Closing Date;

(g) such other customary instruments of transfer, assumptions, filings or documents, in form and substance reasonably satisfactory to Seller, as may be required to effect this Agreement and the transactions contemplated hereby.

8.2 Deliveries by Seller. On the Closing Date, Seller shall make or cause to be made the following deliveries to Buyer:

18

(a)      a certified copy of the Bankruptcy Court Sale Order, which shall not, prior to the entry by the Bankruptcy Court, have been modified or amended in any material manner that has not been agreed to in writing by Buyer in its sole discretion;

(b)      a bill of sale, duly executed by Seller, in substantially the form annexed as Exhibit E hereto (the "Bill of Sale");

(c)      the Escrow Agreement, duly executed by Buyer;

(d)      Certificates of title to the Vehicles sufficiently endorsed to transfer ownership of the Vehicles to the Buyer;

(e)      to the extent any Assumed Contracts are to be assumed at Closing, the Assignment and Assumption Agreement, duly executed by Seller; provided, however, that the Assignment and Assumption Agreement need not be delivered by Seller as to any Assumed Contract with respect to which the Bankruptcy Court has not issued an order prior to the Closing Date authorizing assumption and assignment;

(f)      to the extent any Assumed Leases are to be assumed at Closing, an Assignment and Assumption of Lease with respect to each Assumed Lease, in each case duly executed by Seller; provided, however, that no Assignment and Assumption of Lease need be delivered by Seller as to any Assumed Lease with respect to which the Bankruptcy Court has not issued in order prior to the Closing Date authorizing assumption and assignment;

(g)      certified copies of the orders of the Bankruptcy Court obtained on or prior to the Closing Date approving the assignment and assumption of the Assumed Contracts and the Assumed Leases, which shall not, prior to entry by the Bankruptcy Court, have been modified or amended in any material manner that has not been agreed to in writing by Buyer in its sole discretion;

(h)      A trustee's deed relating to the Real Property in the form attached as Exhibit F hereto;

(i)      a FIRPTA Affidavit in the form attached as Exhibit G hereto;

(j)      a Certificate, duly executed by Seller, certifying that the representations and warranties of Seller set forth in this Agreement are true and correct in all material respects as of the Closing Date (except where expressly limited to a specific date); and

(k)      such other customary instruments of transfer, assumptions, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to effect this Agreement and the transactions contemplated hereby.

## ARTICLE IX

## CONDITIONS TO BUYER'S OBLIGATION TO CLOSE

19

*Approved by Judge Michael Kaplan June 07, 2013*

The obligation of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction and fulfillment, prior to and on the Closing Date, of the following express conditions precedent:

9.1    <u>Representation and Warranties</u>.    The representations and warranties in this Agreement made by Seller shall be true and correct in all material respects as of and at the Closing Date (except where expressly limited to a specific date, and except with respect to representations and warranties that are already qualified by materiality which shall be true and correct in all respects).

9.2    <u>Performance of Covenants and Obligations</u>.    Seller shall have performed and complied in all material respects with all of his covenants and obligations under this Agreement which are to be performed or complied with by him prior to or on the Closing Date.

9.3    <u>Deliveries</u>.    Seller shall have made the deliveries described in Section 8.2.

9.4    <u>No Litigation</u>.    No action, suit or other proceeding shall be pending before any court, tribunal or Government Entity seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain material damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any Law, decree or regulation of any Government Entity having appropriate jurisdiction.

9.5    <u>Sale Order</u>.    The Bankruptcy Court shall have entered the Bankruptcy Court Sale Order in form and substance reasonably acceptable to Buyer, in accordance with Section 1.4 and the Bankruptcy Court Sale Order shall have not been stayed as of the Closing Date.

9.6    <u>Approval of Assignment and Assumptions</u>.    The Bankruptcy Court shall have entered the orders approving the assignment and assumption of the Assumed Contracts and Assumed Leases to be assumed as of the Closing Date, in form and substance reasonably acceptable to Buyer, and such orders shall not have been stayed as of the Closing Date.

9.7    <u>Cures and Adequate Assurance</u>.    Seller shall have cured all defaults under the Assumed Contracts and Assumed Leases to be assumed as of the Closing Date and provided adequate assurance of the Buyer's future performance of such Assumed Contracts and Assumed Leases to be assumed as of the Closing Date in compliance with Section 365 of the Bankruptcy Code.

The foregoing conditions are for the sole benefit of the Buyer and may be waived by the Buyer, in whole or in part, at any time and from time to time in the sole discretion of the Buyer. In the event that the Closing shall occur, all of the foregoing conditions shall be of no further force or effect from and after the Closing.

## ARTICLE X

## CONDITIONS TO SELLER'S OBLIGATION TO CLOSE

05/24/13

*Approved by Judge Michael Kaplan June  07, 2013*

The obligation of Seller to consummate the transactions contemplated by this Agreement shall be subject to the satisfaction and fulfillment, prior to and on the Closing Date, of the following express conditions precedent:

10.1 <u>Representations and Warranties</u>.  The representations and warranties in this Agreement made by Buyer shall be true and correct in all material respects as of and at the Closing Date (except with respect to representations and warranties that are already qualified by materiality which shall be true and correct in all respects).

10.2 <u>Performance of Covenants and Obligations</u>.  Buyer shall have performed and complied in all material respects with all of its covenants and obligations under this Agreement which are to be performed or complied with by it prior to or on the Closing Date.

10.3 <u>Deliveries</u>.  Buyer shall have made the deliveries described in Section 8.1.

10.4 <u>No Litigation</u>.  No action, suit or other proceedings shall be pending before any court, tribunal or Government Entity seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain material damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any Law, decree or regulation of any Government Entity having appropriate jurisdiction.

10.5 <u>Sale Order</u>.  The Bankruptcy Court shall have entered the Bankruptcy Court Sale Order in accordance with Section 1.4, and the Bankruptcy Court Sale Order shall not have been stayed as of the Closing Date.

10.6 <u>Approval of Assignment and Assumptions</u>.  The Bankruptcy Court shall have entered the orders approving the assignment and assumption of the Assumed Contracts and Assumed Leases to be assumed as of the Closing Date, and such orders shall not have been stayed as of the Closing Date.

10.7 <u>Good Standing Certificate</u>.  The Seller shall have received a certificate of the Secretary of State of the jurisdiction in which the Buyer is organized and of the States of New Jersey and New York, dated as of a recent date, as to the good standing of the Buyer and as to the charter documents of the Buyer on file (if any) in the office of the Secretary of State.

The foregoing conditions are for the sole benefit of the Seller and may be waived by the Seller, in whole or in part, at any time and from time to time in the sole discretion of the Seller. In the event that the Closing shall occur, all of the foregoing conditions shall be of no further force or effect from and after the Closing.

## ARTICLE XI

## TERMINATION

11.1 <u>Termination</u>.  This Agreement may be terminated at any time prior to the Closing:

    (a)    by mutual written consent of Buyer and Seller;

21

*Approved by Judge Michael Kaplan June 07, 2013*

(b)      by Buyer or Seller if the Closing shall not have occurred by July 1, 2013 (the "Closing Deadline"); *provided, however,* that the right to terminate this Agreement pursuant to this Section 11.1(b) shall not available to any party hereto whose failure to perform any of its obligations under this Agreement results in the failure of the Closing to be consummated by such date;

(c)      by Buyer, if (i) the Seller shall have breached or failed to perform in any material respect any of its representations, warranties, covenants or other agreements contained in this Agreement, which breach or failure to perform (x) would give rise to the failure of a condition set forth in Sections 9.1 or 9.2, and (y) is incapable of being cured by Seller or is not cured by Seller at least one (1) day before the Closing Deadline, following receipt of written notice from Buyer of such breach or failure to perform, or (ii) the Bankruptcy Court enters an order authorizing a Competing Transaction;

(d)      by Seller, if (i) Buyer shall have breached or failed to perform in any material respect any of its representations, warranties, covenants or other agreements contained in this Agreement, which breach or failure to perform (x) would give rise to the failure of a condition set forth in Sections 10.1 or 10.2, and (y) is incapable of being cured by Buyer or is not cured by Buyer at least one (1) day before the Closing Deadline following receipt of written notice from Sellers of such breach or failure to perform, or (ii) the Bankruptcy Court enters an order authorizing a Competing Transaction; or

(e)      by Buyer or Seller if any Governmental Entity with jurisdiction over such matters shall have issued an order, decree, ruling or injunction restraining, enjoining or otherwise prohibiting the sale of the Purchased Assets hereunder and such order, decree, ruling or injunction shall have become final and non-appealable.

11.2    <u>Effect of Termination</u>.

(a)      If this Agreement is terminated prior to Closing in accordance with Section 11.1, this Agreement shall become null and void and of no further force and effect, without any Liability or obligation on the part of any party, other than the provisions of: (i) this Section 11.2 (Effect of Termination); and (ii) Sections 1.4(b) (with regard to the payment of the Break-Up Fee), 12.9 (Notices), 12.13 (Entire Agreement), 12.12 (Amendment and Modification), 12.8 (Expenses), 12.6 (Applicable Law) and 12.7 (Bankruptcy Court Jurisdiction), which provisions shall survive such termination.

(b)      In the event this Agreement is terminated by Seller pursuant to Section 11.1(d)(i), the Seller shall retain the Buyer's Deposit.

(c)      In connection with any termination of this Agreement, each party shall use its commercially reasonable efforts to cause all filings, applications and other submissions made by such party to any Government Entity or Person pursuant to this Agreement, to the extent practicable, to be withdrawn from such Government Entity or Person to which made.

## ARTICLE XII

05/24/13

*Approved by Judge Michael Kaplan June 07, 2013*

## MISCELLANEOUS

12.1  <u>Loss or Destruction</u>.  Seller shall notify Buyer immediately upon the Knowledge of the Seller of the occurrence of any material loss or destruction of the Purchased Assets which occurs prior to the Closing Date. In the event of any material loss or destruction of all or a material portion of the Equipment that is not subject to an operating lease, Vehicles and/or Real Property, all insurance proceeds relating to the lost or damaged Equipment that is not subject to an operating lease, Vehicles and/or Real Property collected by the Seller prior to the Closing Date, together with an amount equal to all deductible amounts under the insurance policies covering such loss or destruction and amounts not covered by insurance (which amounts shall be agreed upon in good faith by Seller and Buyer and approved by the Bankruptcy Court), shall be credited against the Purchase Price on Buyer's account, and all entitlement to all other insurance proceeds arising out of such loss or destruction and not collected prior to the Closing Date shall be transferred to Buyer to the extent transferrable by Seller.

12.2  <u>Collection of Receivables.</u>  In the event that after the Closing Date, cash or other payments are received by Buyer in respect of amounts due Debtors, all such cash and payments shall be promptly remitted to Seller.  In the event that, after the Closing Date, cash or other payments are received by Seller or Debtors in respect of receivables or other amounts due to Buyer, all such cash and payments shall be promptly remitted to Buyer.

12.3  <u>Cooperation</u>.  For twenty four (24)  months following the Closing, Seller and Buyer agree to furnish to each other upon request, as promptly as practicable, such information and assistance (including, without limitation, the right to review books and records and make copies of same during normal business hours and access to and use of Hired Employees) relating to the Purchased Assets and the Business (including access to Books and Records Related to the Business) as is reasonably necessary for the administration of the Debtors' bankruptcy estate, the performance of the Trustee's duties, the filing of all Tax Returns and other Tax filings, the making of any election related to Taxes, the preparation for any audit by any taxing authority, and the prosecution or defense of any claim, suit or proceeding relating to any Tax Return or the Business.  Seller and Buyer shall use reasonable efforts to cooperate with each other in the conduct of any audit or other proceeding related to Taxes and each shall execute and deliver such other documents as are reasonably necessary to carry out the intent of this Section 12.3.  Seller and Buyer shall provide timely notice to each other in writing of any pending or threatened Tax audits, assessments or litigation with respect to the Purchased Assets or the Business for any taxable period for which the other party may have liability under this Agreement.

12.4  <u>Further Assurances</u>.  Each party hereto from time to time hereafter, and upon request, shall execute, acknowledge and deliver such other instruments as reasonably may be required to more effectively transfer and vest in the Buyer the Purchased Assets or to otherwise carry out the terms and conditions of this Agreement.

12.5  <u>Assignment</u>.  This Agreement shall not be assigned by either party hereto without the prior written consent of the other party hereto; *provided*, the Buyer may assign all or any part of its rights, interests and obligations hereunder (a) to any Affiliate of Buyer and (b) for

23

05/24/13

the purpose of securing any financing of the transactions contemplated hereby; *provided, further,* that if Buyer makes any assignment referred to in (a) or (b) above, Buyer shall remain liable under this Agreement. This Agreement shall inure to the benefit of, and be binding upon the parties hereto and their respective successors and permitted assigns.

12.6 Applicable Law. This Agreement shall be construed in accordance with the laws of the State of New Jersey.

12.7 Bankruptcy Court Jurisdiction. **EACH OF BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (A) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO; AND/OR (B) THE PURCHASED ASSETS AND/OR ASSUMED LIABILITIES, AND BUYER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.**

12.8 Expenses. Except as otherwise herein provided, all expenses incurred in connection with this Agreement or the transactions herein provided for shall be paid by the party incurring such expenses and costs.

12.9 Notices. Any and all notices, demands, and communications provided for herein or made hereunder shall be given in writing and shall be deemed given to a party at the earlier of (i) when actually delivered to such party, (ii) in the case of a "copy to" when facsimile transmitted to such party to the facsimile number indicated for such party below (or to such other facsimile number for a party as such party may have substituted by notice pursuant to this Section) or (iii) when mailed to such party by registered or certified U.S. Mail (return receipt requested) or sent by overnight courier, confirmed by receipt, and addressed to such party at the address designated below for such party (or to such other address for such party as such party may have substituted by notice pursuant to this Section):

|  |  |
|---|---|
| (a) If to Seller: | Edwin H. Stier, Esq., Chapter 11 Trustee for the bankruptcy estate of Birdsall Services Group, Inc. and BSG Engineering, Surveying & Landscape Architecture LLC<br>Stier & Anderson, LLC<br>30 Vreeland Drive, Suite 303<br>Skillman, New Jersey 08558<br>Facsimile No. (609) 497-2909 |
| With copy to: | Wasserman, Jurista & Stolz, P.C.<br>225 Millburn Avenue, Suite 207<br>Millburn, New Jersey 07041<br>Attention: Daniel M. Stolz, Esq.<br>Facsimile No. (973) 467-8126 |

24

*Approved by Judge Michael Kaplan June  07, 2013*

(b) If to Buyer:              Partner Assessment Corporation
                             2154 Torrance Boulevard, Suite 200
                             Torrance, California 90501
                             Attention: Joseph Derhake, President
                             Facsimile No. (310) 615-4544


With a copy to:              Giordano, Halleran & Ciesla, P.C.
                             125 Half Mile Road, Suite 300
                             Red Bank, New Jersey 07701
                             Attention: Philip D. Forlenza, Esq.
                             Facsimile No. (732) 224-6599


12.10    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, provided that all such counterparts, in the aggregate, shall contain the signatures of all parties hereto.

12.11    Headings. All Section headings herein are inserted for convenience only and shall not modify or affect the construction or interpretation of any provision of this Agreement.

12.12    Amendment, Modification and Waiver. This Agreement may not be modified, amended or supplemented except by mutual written agreement of all the parties hereto. Any party may waive in writing any term or condition contained in this Agreement and intended to be for its benefit; provided, however, that no waiver by any party, whether by conduct or otherwise, in any one or more instances, shall be deemed or construed as a further or continuing waiver of any such term or condition. Each amendment, modification, supplement or waiver shall be in writing signed by the party or the parties to be charged.

12.13    Entire Agreement. This Agreement, the Exhibits attached hereto and Schedules delivered by Seller herewith represent the full and complete agreement of the parties with respect to the subject matter hereof and supersede and replace any prior understandings and agreements among the parties with respect to the subject matter hereof and no provision or document of any kind shall be included in or form a part of such agreement unless signed and delivered to the other party by the parties to be charged. Each of the parties hereto agree that the Letter of Intent between Buyer and Seller dated as of May 2, 2013 is null and void and of no further force or effect.

12.14    Third-Party Beneficiaries. No third parties are intended to benefit from this Agreement, and no third-party beneficiary rights shall be implied from anything contained in this Agreement.

12.15    Publicity. Buyer and Seller agree that no publicity announcements or disclosures of any kind concerning the terms of this Agreement or concerning the transactions contemplated hereby shall be made without the mutual consent of Buyer and Seller, except to the extent that disclosure is required by legal process or to accountants, counsel, other

25

*Approved by Judge Michael Kaplan June 07, 2013*

professionals and to lenders on a "need to know" basis who similarly agree to maintain the confidentiality of the Agreement and its terms.

12.16    Survival of Representations and Warranties. The representations and warranties of the parties contained in this Agreement or in any certificate or other writing delivered pursuant hereto or in connection herewith shall not survive the Closing.

# ARTICLE XIII

## DEFINITIONS

For purposes of this Agreement, accounts receivable, work-in-progress and all other references to accounting terms shall be determined in accordance with United States Generally Accepted Accounting Principles and the accounting principles used to prepare BSG's consolidated balance sheet as of December 31, 2012.

As used in this Agreement, the following terms shall have the following meanings:

13.1 "Affiliate" means a Person that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the Person specified. For purposes of this definition, the term "control" of a Person means the possession, direct or indirect, of the power to (i) vote 50% or more of the voting securities of such Person or (ii) direct or cause the direction of the management and policies of such Person, whether by contract or otherwise, and the terms and phrases "controlling," "controlled by" and "under common control with" have correlative meanings.

13.2 "Agreement" has the meaning set forth in the Preamble.

13.3 "Ancillary Agreements" means (i) the Assignment and Assumption Agreement; (ii) the Assignment and Assumption of Leases, (iii) the Bill of Sale, (iv) the Escrow Agreement, and (v) any other certificates, instruments or agreements referred to in Sections 8.1 or 8.2 above.

13.4 "Bankruptcy Court" has the meaning set forth in the Recitals.

13.5 "Bankruptcy Court Sale Order" has the meaning set forth in Section 1.4(c).

13.6 "Bankruptcy Exceptions" has the meaning set forth in Section 4.1.

13.7 "BSG Division" has the meaning set forth in Section 7.5.

13.8 "Business" has the meaning set forth in the Recitals.

13.9 "Buyer" has the meaning set forth in the Preamble.

13.10 "Books and Records" means all books of account, ledgers, files, reports, plans, records, manuals and other materials (in any form or medium) related to the Business.

13.11 "Closing" has the meaning set forth in Section 1.3.

26

*Approved by Judge Michael Kaplan June 07, 2013*

13.12 "Closing Date" has the meaning set forth in Section 1.3.

13.13 "Closing Deadline" has the meaning set forth in Section 11.1(b).

13.14 "Competing Transaction" means any financing, refinancing, acquisition, divestiture, business combination or reorganization or similar transaction between the Seller and any third party involving the Business, the Purchased Assets or substantially all of the business, assets, Contracts, operations or equity securities of the Debtors.

13.15 "Consent" means any approval, authorization, clearance, consent, exemption, ratification or waiver of, declaration, filing or registration with or notice to any Person.

13.16 "Contracts" means all agreements, contracts, leases and subleases, purchase orders, arrangements, commitments and licenses (other than this Agreement and any instruments executed or delivered in connection herewith) that are Related to the Business as of the Closing, or to which any of the Purchased Assets are subject, whether written or oral, except to the extent included in the Excluded Assets.

13.17 "Debtors" has the meaning set forth in the Preamble.

13.18 "Enforceability Exceptions" has the meaning set forth in Section 4.1.

13.19 "Excluded Assets" has the meaning set forth in Section 1.2.

13.20 "Government Entity" means any federal, state or local court, administrative body or other governmental entity with competent jurisdiction.

13.21 "Governmental Authorizations" means all licenses, Permits, certificates and other authorizations and approvals related to the Business and issued by or obtained from a Governmental Entity.

13.22 "Knowledge of the Seller" or a phrase of similar meaning shall be deemed to mean the actual knowledge of the Trustee without any independent investigation.

13.23 "Knowledge of the Debtors" or a phrase of similar meaning shall be deemed to mean the actual knowledge of Ralph Orlando, in his capacity as CEO and President of BSG, John Wuestneck, in his capacity as COO of BSG, and William Barron, in his capacity as CFO of BSG, without any independent investigation.

13.24 "Law" means any law, statute, ordinance, rule, regulation, code, order, judgment, writ, injunction or decree enacted, issued, promulgated, enforced, or entered by a Government Entity.

13.25 "Lease" means each lease pursuant to which Debtor leases any real property or personal property, either as lessor or lessee.

13.26 "Liabilities" means any and all debts, liabilities, commitments and obligations of any kind, whether fixed, contingent or absolute, matured or unmatured, liquidated or

27

*Approved by Judge Michael Kaplan June 07, 2013*

unliquidated, accrued or not accrued, asserted or not asserted, known or unknown, determined, determinable or otherwise, whenever or however arising (including whether arising out of any contract or tort based on negligence or strict liability).

13.27 "Lien" means any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction).

13.28 "Net Revenue" means the net revenue (as determined in accordance with the accounting principles used to prepare BSG's consolidated income statement for the year ended December 31, 2012) derived as a result of the operations of the BSG Division.

13.29 "Person" means a natural person, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Government Entity or other entity or organization.

13.30 "Permits" means permits, concessions, grants, franchises, licenses and other authorizations and approvals required or issued by any Government Entity and primarily used or held for use in connection with the Business.

13.31 "Purchased Assets" has the meaning set forth in Section 1.1.

13.32 "Purchase Price" means the consideration to be paid by Buyer to Seller for the Purchased Assets set forth in Section 2.1.

13.33 "Related to the Business" means required for, or primarily used in connection with, the Business as conducted by Debtors prior to the Closing.

13.34 "Sale Motion" has the meaning set forth in Section 1.4(d).

13.35 "Seller" has the meaning set forth in the Preamble.

13.36 "Straddle Period" has the meaning set forth in Section 3.3.

13.37 "Straddle Period Taxes" has the meaning set forth in Section 3.3.

13.38 "Tax" means all taxes, charges, fees, duties, levies, penalties, or other assessments imposed by any federal, state, local or foreign governmental authority, including income, gross receipts, excise, property, sales, gain, use, license, custom duty, unemployment, capital stock, transfer, franchise, payroll, withholding, social security, minimum estimated, profit, gift, severance, value added, disability, premium, recapture, credit, occupation, service, leasing, employment, stamp, and other taxes, any amounts attributable to any failure to comply with any requirements regarding Tax Returns and any transferee or secondary liability in respect of taxes, including, in any case, any interest, penalty, or addition thereto, whether disputed or not.

28

*Approved by Judge Michael Kaplan June 07, 2013*

13.39 "Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any such document prepared on a consolidated, combined or unitary basis and also including any schedule or attachment thereto, and including any amendment thereof.

*[Signature page follows]*

05/24/13

*Approved by Judge Michael Kaplan June  07, 2013*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date and year first above written.

EDWIN H. STIER, CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF BIRDSALL SERVICES GROUP, INC. AND BSG ENGINEERING, SURVEYING & LANDSCAPE ARCHITECTURE LLC

Edwin H. Stier

Buyer:

PARTNER ASSESSMENT CORPORATION

By: _____
Name: _____
Title: _____

SIGNATURE PAGE FOR ASSET PURCHASE AGREEMENT

*Approved by Judge Michael Kaplan June 07, 2013*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date and year first above written.

EDWIN H. STIER, CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF BIRDSALL SERVICES GROUP, INC. AND BSG ENGINEERING, SURVEYING & LANDSCAPE ARCHITECTURE LLC

_____
Edwin H. Stier

Buyer:

PARTNER ASSESSMENT CORPORATION

By: _____
Name: _____
Title: _____

SIGNATURE PAGE FOR ASSET PURCHASE AGREEMENT

## Schedule of Exhibits

| | |
|---|---|
| Exhibit A | Bidding Procedures |
| Exhibit B | Escrow Agreement |
| Exhibit C | Assignment and Assumption Agreement |
| Exhibit D | Assignment and Assumption of Lease |
| Exhibit E | Bill of Sale |
| Exhibit F | Trustee's Deed |
| Exhibit G | FIRPTA Affidavit |

Docs #1307411-v1

05/24/13

*Approved by Judge Michael Kaplan June  07, 2013*